# Exhibit A

## STATE OF NORTH CAROLINA

**File No.** 22CV500306

**CRAVEN** County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>HENRY BLAND, KENDELL JACKSON, et al, | **CIVIL SUMMONS**<br>☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| *Address*<br>c/o Lapas Law Offices, PLLC | |
| *City, State, Zip*<br>Goldsboro, NC 27530 | |

**VERSUS**

G.S. 1A-1, Rules 3 and 4

| *Name Of Defendant(s)*<br>CAROLINA LEASE MANAGEMENT GROUP, LLC<br>CTH RENTALS, LLC and<br>OLD HICKORY BUILDINGS, LLC | *Date Original Summons Issued* |
|---|---|
| | *Date(s) Subsequent Summons(es) Issued* |

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1*<br>Carolina Lease Management Group, LLC<br>c/o Registered Agents, Inc., Reg. Agent<br>4030 Wake Forest Road, Ste. 349<br>Raleigh, NC 27609 | *Name And Address Of Defendant 2*<br>CTH Rentals, LLC<br>c/o Registered Agents, Inc., Reg. Agent<br>4030 Wake Forest Road, Ste. 349<br>Raleigh, NC 27609 |
|---|---|

⚠️ **IMPORTANT!** You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE!** ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Lapas Law Offices, PLLC<br>Post Office Box 10688<br>Goldsboro, NC 27532<br>Telephone: (919) 583-5400 | *Date Issued*<br>3.10.22 | *Time*<br>1:56 ☐ AM ☒ PM |
|---|---|---|
| | *Signature*<br>CSD | |
| | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (If corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (If corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

**CRAVEN** County

**File No.** 22CV500306

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>HENRY BLAND, KENDELL JACKSON, et al, | **CIVIL SUMMONS** |
| *Address*<br>c/o Lapas Law Offices, PLLC | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| *City, State, Zip*<br>Goldsboro, NC 27530 | |

**VERSUS**

G.S. 1A-1, Rules 3 and 4

| | |
|---|---|
| *Name Of Defendant(s)*<br>CAROLINA LEASE MANAGEMENT GROUP, LLC<br>CTH RENTALS, LLC and<br>OLD HICKORY BUILDINGS, LLC | *Date Original Summons Issued*<br><br>*Date(s) Subsequent Summons(es) Issued* |

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1*<br>Old Hickory Buildings, LLC<br>c/o Cogency Global, Inc., Reg. Agent.<br>212 S. Tryon Street, Ste. 1000<br>Charlotte, NC 28281 | *Name And Address Of Defendant 2* |
|---|---|

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**

**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Lapas Law Offices, PLLC<br>Post Office Box 10688<br>Goldsboro, NC 27532<br>Telephone: (919) 583-5400 | *Date Issued* 3-10-22 | *Time* 1:56 ☐ AM ☒ PM |
|---|---|---|
| | *Signature* ___ | |
| | ☒ *Deputy CSC* ☐ *Assistant CSC* ☐ *Clerk Of Superior Court* | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ *Deputy CSC* ☐ *Assistant CSC* ☐ *Clerk Of Superior Court* | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| | | ☐ AM ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | | Name Of Defendant |
|---|---|---|---|
| | | ☐ AM ☐ PM | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (If corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| **Date Received** | **Name Of Sheriff (type or print)** |
| **Date Of Return** | **County Of Sheriff** |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
                                          SUPERIOR COURT DIVISION
COUNTY OF CRAVEN          FILED    FILE No.: 22 CvS _____

HANK BLAND, KENDELL          2022 MAR 10 P 1: 56          22CV500306
JACKSON, *on behalf of themselves*
*and all others similarly situated,* CRAVEN CO., C.S.C.

          Plaintiffs,  BY_____

v.                                           )          **COMPLAINT**
                                             )          *Jury Trial Demanded*
CAROLINA LEASE                               )
MANAGEMENT GROUP, LLC,                        )
CTH RENTALS, LLC, and                         )
OLD HICKORY BUILDINGS, LLC,                    )
                                             )
          Defendants.                         )

NOW COME the Plaintiffs, Hank Bland and Kendell Jackson, by and

through counsel, and submit this Complaint on behalf of themselves and all others

similarly situated in North Carolina and pursuant to Rule 23 of the North Carolina

Rules of Civil Procedure. The Plaintiffs seek, on behalf of themselves and all others

similarly situated, redress arising from purported "rent-to-own" transactions for a

storage shed or portable building (hereinafter "personal property") pursuant to a

form contract substantially similar to theirs. Plaintiffs' claim, in brief, is that these

contracts, although written in the form of a lease, violate North Carolina's Retail

Installment Sales Act (RISA) set forth in Chapter 25A of the North Carolina

General Statutes.

The Plaintiffs further seek, on behalf of themselves and all others similarly

situated, damages for the unfair debt collection practices of Defendant Carolina

1

Lease Management Group, LLC, and a declaration that the Defendants' practices violate RISA and constitute unfair trade practices under Chapter 75 of the North Carolina General Statutes.

## INTRODUCTION AND
## SUMMARY OF CLAIM UNDER RISA

1.     The Plaintiffs submit, on behalf of themselves and all others similarly situated, that each Plaintiff and class member entered into an agreement for the purchase of a portable storage shed or portable building (hereinafter "Personal Property") through a "rent to own" agreement properly deemed a "consumer credit sale" under North Carolina's Retail Installment Sales Act (RISA) and the terms of which violated RISA.

2.     The Plaintiffs and the putative class members, each sought to acquire a portable storage shed from a dealer for Defendant Old Hickory Buildings, LLC (hereinafter "Old Hickory") who advertised and maintained on its sales lots that if a customer did not wish to pay the "cash price" for its portable storage sheds, a "rent to own" option was available.

3.     The Plaintiffs' respective "rent to own" transactions were processed on the Old Hickory dealers' lots. Ownership was transferred to CTH Rentals, LLC (hereinafter "CTH Rentals") and ultimately to Carolina Lease Management Group, LLC (hereinafter "Carolina Lease" or "CLMG") who became the "lessor" in the Plaintiffs' "rent to own" agreements.

4.     The Plaintiffs submit that the "rent to own" agreements and the credit extended or arranged by the Defendants Old Hickory, CTH Rentals, and CLMG

2

violate the North Carolina Retail Installment Sales Act (RISA). N.C. Gen. Stat. § 25A-1 *et seq.*

5. In a nutshell and as set out in more detail below, RISA's definition of a "consumer credit sale" includes a bailment or lease if the lessee agrees to pay over the life of the lease the value of the goods and services involved and if the lessor must transfer ownership at the end of the lease for no other compensation or for nominal compensation. *See* N.C. Gen. Stat. § 25A-2(b).

6. RISA's definition of a "consumer credit sale" further includes a contract in the form of a lease, including a lease that is terminable at will by the lessee where the lease is renewed periodically by making the required payments and if the lessor must transfer ownership for no other or nominal consideration after making a specified number of payments. Nominal consideration is defined as no more than 10% of the cash price of the property at the time of the transaction. An additional requirement is that the lessee must pay more than 10% of the value of the property and services over the life of the lease to acquire ownership. N.C. Gen. Gen. Stat. § 25A-2(b)(1) and (b)(2).

7. These provisions in RISA reflect a legislative intent to protect North Carolina consumers and to protect the equity those consumers acquire in the purchased property by ensuring that sellers do not evade the statutory limits on finance charges for credit sales by structuring a transaction that is in reality a credit sale as a terminable lease.

3

8.     When a transaction meets RISA's definition of a credit sale, RISA's other provisions will also govern the transaction such as capping the maximum finance charge and interest payable to the lessor. N.C. Gen. Stat. § 25A-15.

9.     RISA further mandates remedies and penalties should a seller or lessor violate the applicable provisions. For example, if a transaction requires payment of more than two times what is allowed under RISA, the contract shall be void and the seller shall not recover anything under the contract. The purchaser is also allowed to retain the goods without liability. N.C. Gen. Stat. § 25A-44(2).

10.     The Plaintiff Hank Bland further seeks for himself and a subclass of individuals against whom Carolina Lease Management engaged in debt collection activities statutory damages under North Carolina's debt collection statute codified in Article Two, Chapter 75 of the North Carolina General Statutes.

## PARTIES

11.     The Plaintiff Hank Bland is an individual and is a citizen and resident of Craven County, North Carolina.

12.     The Plaintiff Kendell Jackson is an individual and is a citizen and resident of Cumberland County, North Carolina.

13.     Carolina Lease Management Group, LLC is a foreign limited liability company formed under the laws of the State of Tennessee and is authorized to do business in North Carolina by the North Carolina Secretary of State (SOS #1095248) and may be served with process directed to its registered agent

4

Registered Agents, Inc., located at 4030 Wake Forest Road, Ste. 349, Raleigh, NC 27609.

14. CTH Rentals, LLC is a foreign limited liability company formed under the laws of the State of Tennessee and is authorized to do business in North Carolina by the North Carolina Secretary of State (SOS #1088370) and may be served with process directed to its registered agent Registered Agents, Inc., located at 4030 Wake Forest Road, Ste. 349, Raleigh, NC 27609.

15. Old Hickory Buildings, LLC is a foreign limited liability company formed under the laws of the State of Tennessee and is authorized to do business in North Carolina by the North Carolina Secretary of State (SOS #1067070) and may be served with process directed to its registered agent Cogency Global, Inc. located at 212 S. Tryon Street, Ste. 1000, Charlotte, NC 28281-0001.

## JURISDICTION and VENUE

16. This Court may properly exercise jurisdiction over the Defendants pursuant to N.C. Gen. Stat. § 1-75.4 in that all defendants are registered with the North Carolina Secretary of State to do business within the state and are, in fact, engaged in substantial activity within this State.

17. Venue is proper pursuant to N.C. Gen. Stat. § 1-82 in that the plaintiff Hank Bland is a citizen and resident of Craven County, North Carolina.

5

## FACTUAL ALLEGATIONS

18.    The Plaintiffs Hank Bland and Kendell Jackson each sought to acquire a portable storage shed from an Old Hickory Buildings, LLC dealer doing business within the State of North Carolina.

19.    On or about August 20, 2018, the Plaintiff Hank Bland visited an Old Hickory dealer located at 7610 NC 11 North in Ayden, North Carolina and doing business as "East Side Storage Sales".

20.    On or about September 9, 2018, the Plaintiff Kendell Jackson visited an Old Hickory dealer located at 14298 Hwy 210 South in Spring Lake, North Carolina and doing business as "West Storage Company".

21.    After viewing the inventory on each dealers' lots, the Plaintiffs were either unable or unprepared to pay the requested "cash price" to purchase their desired portable storage shed at that time.

22.    On information and belief, Old Hickory, which maintains a network of independent dealers in North Carolina, advertises through its marketing brochures as well as with signs and other "informational flyers" located on the dealers' lots that there is a "rent to own" program in place for those people who may not be able to pay the cash price for a desired portable storage shed. If the "rent to own" option was pursued by a potential customer, the Old Hickory dealer would process the transaction immediately right there on the sales lot through a computer terminal or other equipment located on the dealer's sales lot.

6

23.     The Plaintiffs both elected to pursue the "rent to own" option to purchase their respective portable storage sheds. Paperwork was prepared on the spot and both Plaintiffs initialed and signed form documents on the Old Hickory dealers' lots.

24.     A "work order" dated August 20, 2018, referencing Old Hickory was prepared and initialed by Mr. Bland.

25.     A "work order" dated September 7, 2018, referencing Old Hickory was prepared and initialed by Mr. Jackson.

26.     An additional document dated August 20, 2018, prepared by CTH Rentals and initialed by Mr. Bland, appears to be a "bill of sale" and documents the sale of the portable building that Mr. Bland was interested in purchasing. See Exhibit A.

27.     An additional document dated September 7, 2018, prepared by CTH Rentals and initialed by Mr. Jackson, appears to be a "bill of sale" and documents the sale of a portable storage building to Mr. Jackson.

28.     A "Rental Purchase Agreement and Disclosure Statement" indicating that the Defendant Carolina Lease Management was the lessor of the Personal Property and dated August 20, 2018, was signed by Mr. Bland and appears as a "rent to own" transaction. The "cash price" is listed as $4,730.00 plus sales tax and Mr. Bland would achieve ownership of the Personal Property after making 48 payments of $210.88 ($197.08 + $13.80 sales tax) for a total cost $10,122.24. The Agreement may be renewed each month wherein Mr. Bland makes his monthly

7

payment and only Mr. Bland may terminate the Agreement. As long as Mr. Bland makes the payments under the Agreement, the Agreement will remain in force until Mr. Bland achieves ownership after the specified number of payments.

29.     A "Rental Purchase Agreement and Disclosure Statement" indicating that the Defendant Carolina Lease Management was the lessor of the Personal Property and dated September 7, 2018, was signed by Mr. Jackson and appears as a "rent to own" transaction. The "cash price" is listed as $6,000.75 plus sales tax and Mr. Jackson would achieve ownership of the Personal Property after making 48 payments of $267.37 ($249.88 + $17.49 sales tax) for a total cost $12,833.76. The Agreement may be renewed each month wherein Mr. Jackson makes his monthly payment and only Mr. Jackson may terminate the Agreement. As long as Mr. Jackson makes the payments under the Agreement, the Agreement will remain in force until Mr. Jackson achieves ownership after the specified number of payments.

30.     Under the agreements signed by both Mr. Bland and Mr. Jackson, once the final payments of $210.88 and $267.37 respectively are paid by the Plaintiffs, then the Defendant Carolina Lease Management as "Lessor" under the agreements is obligated to transfer ownership of the property to the Plaintiffs.

31.     A copy of the "Rental Purchase Agreement and Disclosure" (hereinafter "the Agreement") dated August 20, 2018, and signed by the Plaintiff Hank Bland along with the "work order" and purported "bill of sale" referenced in the preceding Paragraphs are attached hereto as Exhibit A and incorporated by reference.

8

32.   A copy of the "Rental Purchase Agreement and Disclosure" (hereinafter "the Agreement") dated August 20, 2018, and signed by the Plaintiff Kendell Jackson along with the "work order" and purported "bill of sale" referenced in the preceding Paragraphs are attached hereto as Exhibit B and incorporated by reference.

33.   Neither Plaintiff had any input as to the terms of the transaction nor was either plaintiff presented with any options as to other companies available that could finance the proposed "rent to own" transaction or that would be acceptable as alternatives by the Defendant Old Hickory.  Upon information and belief, all "rent to own" transactions entered into by an Old Hickory dealer in North Carolina are funneled through Defendants CTH Rentals and Carolina Lease Management.

34.   Once the agreements for the "rent to own" transaction were signed by the Plaintiffs herein, the portable storage sheds were delivered to each Plaintiff's respective property.

35.   Since the Plaintiffs entered into the Agreements for the "rent to own" transaction described herein, both Mr. Bland and Mr. Jackson have paid a substantial amount to Defendant Carolina Lease Management pursuant to these "rent to own" agreements--upon information and belief, Mr. Bland has paid approximately $7,500 and Mr. Jackson has paid approximately $10,700.

36.   The Plaintiffs are informed and believe that the Defendants Old Hickory, CTH Rentals and Carolina Lease Management work together to arrange and enter into numerous "rent to own" transactions across the State of North

9

Carolina through the use of standard "form" contracts substantially similar to the ones entered into by the Plaintiffs Mr. Bland and Mr. Jackson.

37.    The Plaintiffs further allege, on information and belief, that Old Hickory, through its network of independent dealers across the State of North Carolina, establishes and sets for its dealers the prices and procedures as to how each dealer is to handle "cash sales" and "rent to own" sales.

38.    The Plaintiffs allege, upon information and belief, that for each "rent to own" transaction processed by an Old Hickory dealer located in North Carolina such as the ones referenced above and for all class members, the dealers are required to utilize the procedure including the computer terminals and/or similar equipment for processing "rent to own" sales of Old Hickory products on their lots and to process the transaction through a "rent to own" leasing company specified by Old Hickory.

39.    The Plaintiffs are further informed and believe that the Defendants Old Hickory, CTH Rentals and Carolina Lease Management have an existing arrangement whereby the portable storage sheds sold by Old Hickory's network of independent dealers located in North Carolina and sold to North Carolina customers on a "rent to own" basis are routed through as follows:

> a)  the Old Hickory dealer prepares and submits a "work order" to
> Old Hickory detailing the personal property being purchased;
> b)  ownership of the personal property being purchased on a "rent to
> own" basis is transferred to Defendant CTH Rentals;

10

c) Defendant CTH Rentals submits payment to Defendant Old
Hickory for the personal property being purchased on a "rent to own"
basis;

d) Defendant CTH Rentals transfers ownership of the personal
property being purchased on a "rent to own" basis to Defendant
Carolina Lease Management Group;

e) Defendant Carolina Lease Management Group then enters into the
"Rental Purchase Agreement and Disclosure Statement" in a form
substantially similar to Exhibits A and B attached hereto with the
consumer to finalize the "rent to own" transaction.

40. Upon information and belief, the process as outlined herein occurs on
the Old Hickory dealer's sales lot and is accomplished in a very short period of time.

41. Upon information and belief, for all North Carolina Old Hickory
dealerships, if a customer wants to enter into a "rent to own" transaction as
advertised by Old Hickory at its sales lots and in its marketing and advertising
materials, all "rent to own" transactions are funneled through CTH Rentals and to
Carolina Lease Management. The local Old Hickory dealer may not "pick and
choose" an alternative company to "finance" the "rent to own" transaction nor may
the customer choose a different company to "finance" the "rent to own" transaction.

42. Upon information and belief, Defendant Old Hickory knew or was
aware that the Defendant CTH Rentals was purchasing the portable storage sheds
from Old Hickory for the purpose of further selling the portable storage shed to

11

other entities including the Defendant Carolina Lease Management in order to finalize the Plaintiffs' and proposed class members "rent to own" transactions in accordance with Old Hickory's advertising and marketing efforts.

43.     Upon information and belief, Old Hickory knew the structure of the "rent to own" transactions as described in the above paragraphs which involved its North Carolina dealers and used the "rent to own" transactions as a means of increasing its sales and profits.

44.     Upon information and belief and as shown by records on file with the North Carolina Secretary of State, Defendant CTH Rentals is a closely related entity to Defendant Carolina Lease Management in that there are common members of both entities including but not limited to Charles T. Hammond, Jr.

45.     Upon information and belief, the Defendant CTH Rentals purchased or acquired portable storage sheds from Old Hickory for the purpose of transferring, selling, assigning or otherwise conveying ownership of the property to its closely related entity Defendant Carolina Lease Management for the purpose of facilitating the Plaintiffs' and proposed class members' "rent to own" transactions as described in the paragraphs above and with the full knowledge and understanding that the Defendant Carolina Lease Management would enter into "rent to own" agreements in a form substantially similar to those in Exhibits A and B attached hereto as the "lessor" of the Personal Property.

46.     Upon information and belief, defendants Old Hickory, CTH Rentals and Carolina Lease Management entered into an agreement, understanding or

12

common scheme whereby Old Hickory's portable storage sheds would be offered for sale through its North Carolina dealerships on a "rent to own" basis through standard form "rent to own" agreements and financed through defendants CTH Rentals and Carolina Lease Management in a manner substantially as set forth in the preceding paragraphs.

47.    The standard form "rent to own" agreement entered into by the Plaintiffs (attached hereto as Exhibits A and B) and proposed class members with Carolina Lease Management pursuant to the alleged agreement, understanding or common scheme with Defendant Old Hickory and Defendant CTH Rentals violates North Carolina's Retail Installment Sales Act and is void.

48.    The Plaintiff Mr. Bland, upon learning that the "rent to own" agreement with Carolina Lease Management is in violation of North Carolina law, stopped making payments to Carolina Lease Management in August, 2021.  Up until that time, he had made the payments that were ostensibly required under the Agreement.

49.    The Plaintiff Mr. Jackson, upon learning that the "rent to own" agreement with Carolina Lease Management is in violation of North Carolina law, also stopped making payments to Carolina Lease Management in February, 2022. Up until that time, he had made the payments that were ostensibly required under the Agreement.

50.    The Plaintiff Mr. Bland has been subject to collection activity by the Defendant Carolina Lease Management such as collection calls, text messages

13

demanding payment, demand letters sent to his address along with a notice that the Personal Property may be subject to repossession and/or a lawsuit seeking the recovery of the Personal Property.

51. Upon information and belief, many members of the proposed class have also been subject to collection calls, text messages demanding payment, demand letters sent to the class members and notices that a lawsuit may be filed against them or that a lawsuit has, in fact, been filed against them seeking the recovery of the Personal Property subject to the void agreement between the class members and the Defendant Carolina Lease Management.

## CLASS ALLEGATIONS

52. The Plaintiffs Hank Bland and Kendell Jackson are just two of the numerous North Carolina residents who have entered into rental purchase agreements with Carolina Lease Management for the purchase of portable storage sheds or other personal property.

53. The form contracts used by Carolina Lease Management and executed by the proposed class members, which are substantially similar to the form contracts executed by the Plaintiffs Bland and Jackson, violate the North Carolina Retail Installment Sales Act (RISA). Mr. Bland, Mr. Jackson and the proposed class members have been and are continuing to be victims of unfair trade practices prohibited under both RISA and Chapter 75 of the North Carolina General Statutes. Mr. Bland, Mr. Jackson and class members who have fallen behind on their payments have also been subjected to illegal debt collection practices.

14

54. The Plaintiffs Mr. Bland and Mr. Jackson seek to maintain their claims for relief as pled herein as class claims pursuant to Rule 23 of the North Carolina Rules of Civil Procedure on behalf of themselves and all others similarly situated.

55. The proposed class definition is as follows:

> **All persons residing in North Carolina who within four years of the filing of this action entered into a Rental Purchase Agreement with Carolina Lease Management Group, LLC, for personal property in a form substantially similar to the form contracts that Carolina Lease Management Group, LLC, entered into with Hank Bland and Kendell Jackson attached hereto as Exhibits A and B.**

56. A proposed subclass consists of all persons in the class above who purchased portable storage sheds or other personal property manufactured by the Defendant Old Hickory Buildings, LLC.

57. An additional proposed subclass consists of all persons in the class above who purchased portable storage sheds or other personal property owned by the Defendant CTH Rentals, LLC.

58. A final proposed subclass consists of all persons in the class against whom debt collection activity has been taken by the Defendant Carolina Lease Management Group, LLC, or persons, agents, acting on its behalf.

59. Upon information and belief, the class and subclasses are so numerous that joinder of all members is impractical; there are questions of law and fact common to the class and likewise to the proposed subclasses and the claims and

15

defenses of the Plaintiffs Bland and Jackson are typical of the claims and defenses of the class and subclasses.

60.    Mr. Bland and Mr. Jackson will adequately represent the interests of the class and has secured counsel who are experienced in class litigation and will protect the interests of the class and subclasses.

61.    For several years, Carolina Lease Management Group, LLC has used a form lease/purchase agreement that is substantially similar to the ones attached hereto as Exhibits A and B. North Carolina's RISA defines the transaction as embodied in the form lease/purchase agreements as a "consumer credit sale."

62.    Carolina Lease Management is charging, collecting and/or imposing "finance charges"[1] under the contracts at rates which exceed the rate authorized under North Carolina's RISA and render the contracts void under North Carolina law. Such practices also constitute an unfair trade practice under Chapter 75 of the North Carolina General Statutes.

63.    Carolina Lease Management is further subjecting numerous North Carolina residents to illegal debt collection practices in attempting to collect amounts that are not legally owed in violation of Article Two of Chapter 75 of the North Carolina General Statutes.

64.    Carolina Lease Management has acted and continues to act and will continue to act on grounds generally applicable to the class making injunctive or declaratory relief appropriate with respect to the class as a whole. Separate actions

---

[1] The average cash retail value of the goods and average retail value, if any, of such services shall be used to determine the amount financed for purposes of G.S. § 25A-15.

16

by individual members of the class would create a risk of inconsistent adjudications with respect to individual members of the class and establish inconsistent standards of conduct for Carolina Lease Management.

65. Questions of law and fact common to the members of the class predominate over any question affecting only an individual member or members and a class action is superior to other available methods for the fair and effective adjudication of the controversy. These questions include but are not limited to:

- Is the contract in the form of Exhibits A and B a "consumer credit sale[s]" as defined under North Carolina's RISA?

- Is the contract in the form of Exhibits A and B void as against public policy under N.C. Gen. Stat. § 25A-44?

- May the lessees who entered into contracts in the form of Exhibits A and B recover all of the money paid under the agreement?

- May the lessees who entered into the contracts in the form of Exhibits A and B retain the personal property without liability?

- May the lessees who had the personal property repossessed by CLMG recover the value of the personal property as a measure of damages?

- Did CLMG commit unfair and deceptive acts or practices in leasing personal property pursuant to the contracts in the form of Exhibits A and B and attached hereto?

- May money paid under the contracts in the form of Exhibits A and B be trebled as damages under North Carolina's Unfair Trade Practices Act?

- Does Old Hickory's conduct in arranging for credit for these "rent to own" sales make it subject to liability under North Carolina's Retail Installment Sales Act?

- Does CTH Rentals' conduct in arranging, extending credit or assigning any right to payment for these "rent to own" transactions make it

17

subject to liability under North Carolina's Retail Installment Sales Act?

- Are Old Hickory and/or CTH Rentals liable as co-conspirators along with CLMG?

## CLAIMS FOR RELIEF INDIVIDUALLY AND ON BEHALF OF
## THE CLASS AND SUBCLASSES

66. The Plaintiffs, Hank Bland and Kendell Jackson, on their own behalf and on behalf of the members of the class and subclasses, assert the following claims for relief:

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

67. The allegations in Paragraphs 1 through 66 are realleged and incorporated by reference as if set forth fully herein.

68. The Plaintiffs Mr. Bland and Mr. Jackson are entitled to and request a declaration that the agreements attached hereto as Exhibits A and B and incorporated by reference, along with the similar contracts that the other class members entered into with Carolina Lease Management Group, LLC, constitute "consumer credit sale[s]" under North Carolina's Retail Installment Sales Act (RISA) set forth under Chapter 25A of the North Carolina General Statutes.

69. The Plaintiffs Mr. Bland and Mr. Jackson are entitled to and request a declaration that in using these form contracts, CLMG is imposing, charging and/or collecting a finance charge in excess of that allowed under North Carolina's RISA.

70. The Plaintiffs Mr. Bland and Mr. Jackson are entitled to and request a declaration that the agreements attached hereto as Exhibits A and B and all form

18

contracts utilized by CLMG that are substantially similar to the agreements attached hereto as Exhibits A and B are void under N.C. Gen. Stat. § 25A-44.

71.     The Plaintiffs Mr. Bland and Mr. Jackson are entitled to and request a declaration that any attempts by CLMG to collect any money, fee, sum of any sort under the agreements attached hereto as Exhibits A and B constitute violations of the North Carolina debt collection statute set forth under Article Two of Chapter 75 of the North Carolina General Statutes.

72.     The Plaintiffs Mr. Bland and Mr. Jackson are further entitled to and request a declaration that the actions and practices of CLMG in preparing and entering into these agreements constitute an unfair trade practice within the meaning of Article 1, Chapter 75 of the North Carolina General Statutes.

## SECOND CLAIM FOR RELIEF
### (Transactions Void under NC RISA Statute)

73.     The allegations in Paragraphs 1 through 72 are re-alleged and incorporated by reference as if set forth fully herein.

74.     The purported agreements between the Plaintiffs Mr. Bland and Mr. Jackson and Carolina Lease Management as well as those of the class members are void as against public policy as set forth under N.C. Gen. Stat. § 25A-44.

75.     The purported agreements between Carolina Lease Management and the Plaintiffs Mr. Bland and Mr. Jackson are properly characterized as a "consumer credit sale" as the term is defined under the North Carolina Retail Installment Sales Act.  N.C. Gen. Stat. § 25A-2.

19

76.     The Plaintiffs Mr. Bland and Mr. Jackson and the other class members

entered into these lease/purchase transactions for "consumer" purposes that is, the

portable storage sheds and other personal property were purchased for a "personal,

family, household, or agricultural purpose."  N.C. Gen. Stat. § 25A-2(a).

77.     The storage sheds and other personal property were delivered to the

Plaintiffs' residences and to the North Carolina residences or property of those of

other class members.

78.     North Carolina's RISA applies to "consumer credit sales as hereinafter

defined" and governs the transactions between Carolina Lease Management on the

one hand, and the Plaintiffs and other class members on the other.  N.C. Gen. Stat.

§ 25A-1.

79.     Under North Carolina's Retail Installment Sales Act, a

> sale includes but is not limited to any contract in the form of
> a bailment or lease if the bailee or lessee contracts to pay as
> compensation for use a sum substantially equivalent to or in
> excess of the aggregate value of the goods and services involved,
> and it is agreed that the bailee or lessee will become, or for no
> other or for a nominal consideration, has the option to become,
> the owner of the goods and services upon full compliance with
> his obligations under such contract.

N.C. Gen. Stat. 25A-2(b).

80.     The definition of "sale" under North Carolina's RISA specifically

> includes a contract in form of a terminable bailment or lease
> of goods or services in which the bailee or lessee can renew
> the bailment or lease contract periodically by making the
> payment or payments specified in the contract if:
>
> (1) [t]he contract obligates the bailor or lessor to transfer
> ownership of the property to the bailee or lessee for no

20

other or a nominal consideration (no more than ten percent
10% of the cash price of the property at the time the bailor
or lessor initially enters into the contract with the bailee
or lessee) upon the making of a specified number of payments
by the bailee or lessee;

and

(2) [t]he dollar total of the specified number of payments
necessary to exercise the purchase option is more than
ten percent (10%) in excess of the aggregate value of the
property and services involved.  For the purposes of this
subsection, the value of the goods shall be the average
cash retail value of the goods.  [ . . . ].  If a contract is found
to be a sale under this subsection, these values shall be
used to determine the amount financed for purposes of
G.S. 25A-15.

N.C. Gen. Stat. § 25A-2(b).

81.    Carolina Lease Management provided no services to either Mr. Bland

or Mr. Jackson over and above those included in the cash price, and no other

services or only nominal services over and above those included in the cash price

were ever provided by CLMG to other class members.

82.    As set forth in Paragraph 2F of the agreement attached hereto as

Exhibit A and set forth in the similar form agreements used by CLMG, the lessee

will pay substantially more than the aggregate value of the property and services

purchased under the agreement and, after making a set number of payments, the

lessor CLMG is obligated to transfer ownership to the lessee for no additional or

nominal consideration, thus meeting the first part of the definition of the "consumer

credit sale" under North Carolina's RISA statute.

21

83. As set forth in Paragraph 2E of the agreement attached hereto as Exhibits A and B and as set forth in the similar form agreements of the other class members, this transaction is a terminable lease--that is, the lessee may but is not required to renew the term of the lease by making the payments under the lease.

84. Under § 25A-2(b), if a transaction is a consumer transaction and meets the criteria set out in the statute, the transaction is deemed a "consumer credit sale" under North Carolina's RISA.

85. In these transactions, CLMG is obligated to transfer ownership of the goods if the lessee makes the "specified number" of payments (48 payments in Exhibits A and B). No additional consideration is required of the lessee and the first part of the "sale" definition is satisfied. N.C. Gen. Stat. § 25A-2(b)(1).

86. In the Plaintiffs' and other class members' contracts, the second part of the definition of "sale" is met because the sum of the required payments is more than 10% of the "average cash retail value" of the goods sold. N.C. Gen. Stat. § 25A-2(b)(2). A summary of the Plaintiffs' transactions with CLMG is attached hereto as Exhibit C and incorporated by reference.

87. Because the Plaintiffs' and the other class members' transactions with CLMG meet the definition of a "sale" under North Carolina's RISA, the transactions are consumer credit sales governed by Chapter 25A of the General Statutes even though the transactions are terminable by the lessee/purchaser.

88. North Carolina's RISA further states that a consumer credit sale is deemed to have been made in North Carolina when offered or agreed to be sold to a

22

North Carolina resident. The Plaintiffs Mr. Bland and Mr. Jackson and all the other class members were North Carolina residents at the time they entered into the transactions within North Carolina. *See* N.C. Gen. Stat. §25A-2(d).

89. For a transaction governed by North Carolina's RISA, the maximum interest rate that may be charged is 18% per annum if more than $3,000.00 is financed. N.C. Gen. Stat. § 25A-15(b).

90. The finance charge imposed by CLMG on the transactions with the Plaintiffs' and the other class members exceeds the maximum amount authorized under North Carolina's RISA.

91. The finance charge imposed by CLMG on Mr. Bland, Mr. Jackson and the other class members exceed the amount allowed under RISA by over two times. *See* Exhibit C attached hereto and incorporated by reference.

92. North Carolina's RISA provides that if "a consumer credit sale requires payment of a finance charge of more than two times that permitted by this Chapter, the contract shall be void." N.C. Gen. Stat. § 25A-44(2).

93. The Plaintiffs Hank Bland and Kendell Jackson further allege that the Defendant Old Hickory is a "seller" within the meaning of North Carolina's RISA in that it "is one regularly engaged in the business of selling goods" and "who in the ordinary course of business regularly extends or arranges for the extension of consumer credit, or offers to extend or arrange for the extension of such credit". N.C. Gen. Stat. § 25A-2(a)(1); § 25A-6.

23

94. As alleged in the above paragraphs and incorporated herein, Old Hickory offers to extend credit through a "rent to own" program maintained on its several dealership lots located within the State of North Carolina.

95. Old Hickory is a "seller" within the meaning of North Carolina's RISA in that, upon information and belief, and as part of its ordinary course of business (a) it sold to CTH Rentals the portable storage sheds to be purchased by the Plaintiffs with the understanding the sheds would be sold pursuant to a "rent to own" transaction; and/or (b) arranged for the extension of credit through CTH Rentals and Carolina Lease Management as the "rent to own" financing entity.

96. CTH Rentals is a "seller" within the meaning of North Carolina's RISA in that, upon information and belief, as part of its ordinary course of business (a) it sold the portable storage shed to the Plaintiffs to Carolina Lease Management with the understanding the sheds would be sold pursuant to a "rent to own" transaction; and/or (b) arranged for the extension of credit through the use of Carolina Lease Management as a "rent to own" financing entity.

97. Upon information and belief, Carolina Lease Management, CTH Rentals and Old Hickory Buildings entered into a common scheme to finance the sale of portable storage buildings through "rent to own" transactions with the Plaintiffs and the other class members.

98. The Plaintiffs, through the investigation of counsel of court records, have found many instances where agreements between Carolina Lease Management and North Carolina residents within the proposed class period for the

24

lease/purchase of personal property exceed by more than two times the maximum
interest rate allowed under North Carolina's RISA. Additionally, upon information
and belief, there is likely a substantial number of agreements between the
Defendant Carolina Lease Management and class members that have not been the
subject of court action or filings. For example, the named plaintiffs herein were not
subject to court action and their transactions with the defendant Carolina Lease
Management would not have been in the public record.

99. The Plaintiffs and other class members have been damaged by the
concerted acts and agreement and understanding, either express or implied, among
the Defendants herein, to circumvent the dictates of North Carolina law which
resulted in substantial damages to Mr. Bland, Mr. Jackson and the other class
members.

100. Further, in addition to any other remedies that may be available to
Mr. Bland, Mr. Jackson and to the other class members, because the contracts are
void, the lessee/purchaser may recover all sums paid under the agreements and
may retain without any liability any goods delivered under the agreements or
recover the value of the property if the Defendant CLMG previously and wrongfully
obtained possession of the property pursuant to N.C. Gen. Stat. § 25A-44(2), which
prohibits the seller or assignee of the seller from recovering anything under the
contract. N.C. Gen. Stat. § 25A-44(2).

25

## THIRD CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices)

101. The allegations in Paragraphs 1 through 100 are re-alleged and incorporated by reference as if set forth fully herein.

102. The Plaintiffs Hank Bland, Kendell Jackson and the other class members are individuals who entered into Rental Purchase Agreements with Carolina Lease Management to purchase storage sheds to be used for a "personal, family, household or agricultural purpose" within the meaning of the North Carolina Retail Installment Sales Act. N.C. Gen. Stat. § 25A-2(a).

103. Upon information and belief, CLMG, Old Hickory and CTH Rentals are either the sellers or an assignee of a seller within the meaning of North Carolina's RISA. The term "seller" specifically includes an assignee of the seller's right to payment. *See* N.C. Gen. Stat. § 25A-6 (definition of "seller" includes assignee).

104. Upon information and belief, Carolina Lease Management enters into numerous rental purchase agreements with North Carolina residents that they are unable to afford, as indicated in proofs of claim that have been filed in North Carolina bankruptcy courts and numerous small claims action against individuals in the state courts of North Carolina.

105. Upon information and belief, CLMG either enters into or is assigned many more rental purchase agreements with North Carolina residents as described in the preceding paragraphs that are not reflected in proofs of claim filed through

26

the federal court PACER system or reflected in the North Carolina Administrative Office of the Courts computer system.

106. These actions by Carolina Lease Management, Old Hickory and CTH Rentals as alleged herein are "in and affecting commerce" within the meaning of N.C. Gen. Stat. § 75-1.1.

107. The North Carolina Retail Installment Sales Act states that a RISA violation is also a violation of § 75-1.1. *See* N.C. Gen. Stat. § 25A-44(4).

108. The Plaintiffs Hank Bland, Kendell Jackson and the other class members paid substantial amounts of money to CLMG which it was not entitled to receive because the Rental-Purchase Agreements are void as against the public policy of this State. N.C. Gen. Stat. § 25A-44. Upon information and belief, Old Hickory and CTH Rentals also benefitted financially from this arrangement.

109. Upon information and belief, Mr. Bland has paid approximately $7,591.68 and Mr. Jackson has paid approximately $10,694.80 to Carolina Lease Management pursuant to the purported agreements made in violation of public policy. Mr. Bland, Mr. Jackson and the other class members are entitled to recover the moneys paid to Carolina Lease Management under the form contracts which are the subject of this litigation.

110. Carolina Lease Management has engaged in further unfair and deceptive actions against Mr. Bland and the other class members by demanding sums which it was not entitled to receive, or obtaining possession of property to which it was not entitled through replevin actions because CLMG's rental purchase

27

agreements violate North Carolina's RISA and are deceptive acts or practices under Chapter 75 of the General Statutes.

111.   Carolina Lease Management has willfully and knowingly violated the North Carolina Retail Installment Sales Act and § 75-1.1 as alleged in the preceding paragraphs. Carolina Lease Management utilizes a form contract for transactions consummated within the State of North Carolina substantially similar to those attached hereto as Exhibits A and B; CLMG uses similar collection methods against each individual who falls behind in payments and it has willfully and knowingly instituted numerous actions against individuals across North Carolina to collect money and/or property, and has, in fact, obtained possession of property through replevin or other court actions pursuant to a contract that is void under North Carolina law.

112.   Carolina Lease Management's actions actually and proximately caused the damages alleged above to Mr. Bland, Mr. Jackson and the other class members through the imposition of "finance charges," fees and other charges not authorized by law. It was reasonably foreseeable that Carolina Lease Management's actions would cause such damages, including payments beyond those permitted by law.

113.   The Plaintiffs Mr. Bland, Mr. Jackson and the class members are entitled to have their actual damages trebled pursuant to N.C. Gen. Stat. § 75-16 and to recover attorney's fees incurred in pursuing this matter pursuant to N.C. Gen. Stat. § 75-16.1

28

## FOURTH CLAIM FOR RELIEF
### (Civil Conspiracy)

114. The allegations in Paragraphs 1 through 113 are re-alleged and incorporated by reference as if set forth fully herein.

115. The Defendants Old Hickory, CTH Rentals and Carolina Lease Management agreed to engage in unlawful conduct, and did commit unlawful acts, against the named Plaintiffs and members of the Plaintiff Class and Subclasses through a deceptive and illegal scheme involving, among other actions, the violations of North Carolina's Retail Installment Sales Act and Sections 75-1.1, *et seq.* as alleged above.

116. The Defendants' conspiracy has proximately caused injury to the named Plaintiffs and members of the Plaintiff Class and Subclasses as alleged above.

117. The Plaintiffs Mr. Bland, Mr. Jackson and the members of the Plaintiff Class and Subclasses have been damaged by the Defendants' civil conspiracy to commit the wrongful acts as alleged herein.

118. Due to their civil conspiracy, the Defendants are liable for the consequences of each other's unlawful conduct against named the Plaintiffs and the members of the Plaintiff Class and Subclasses.

## FIFTH CLAIM FOR RELIEF
### (Unfair Debt Collection Practices against CLMG only)

119. The allegations in Paragraphs 1 through 118 are re-alleged and incorporated by reference as if set forth fully herein.

120.    The Plaintiff Mr. Bland, Mr. Jackson and other class members
incurred an alleged debt for consumer purposes within the meaning of N.C. Gen.
Stat. § 75-50(1) in that they entered into a transaction for portable storage sheds to
store miscellaneous household items or other personal property for household use as
alleged above.

121.    Carolina Lease Management engages, directly or indirectly, in debt
collection from consumers and is a "debt collector" within the meaning of N.C. Gen.
Stat. § 75-50(3). It is not a "collection agency" regulated under Chapter 58 of the
North Carolina General Statutes.

122.    Carolina Lease Management violated the general provisions of § 75-52
by demanding money from Mr. Bland pursuant to a transaction that was void and
cannot support Carolina Lease Management's claim for money owed.

123.    By thus demanding payment as alleged above, CLMG misrepresented
or falsely characterized the legal status of the alleged debt in violation of the
general provisions of N.C. Gen. Stat. § 75-54 and the specific provisions under § 75-
54(4).

124.    The Plaintiff and each member of the subclass who are or were subject
to collection activities are entitled to recover treble the amount of their actual
damages, plus a civil penalty of no less than $500 nor more than $4,000 for CLMG's
violation of Article Two, Chapter 75 of the North Carolina General Statutes.

125. As a result of CLMG's willful, unfair, and deceptive acts, named Plaintiff, members of the Plaintiff Class, and their counsel are further entitled to recover, and request, an award of attorney fees pursuant to N.C.G.S. § 75-16.1.

WHEREFORE, the plaintiffs pray, on behalf of themselves and for all others similarly situated, this Court for the following relief:

1. That this Court enter a declaratory judgment as requested in this Complaint, including but not limited to declaring Carolina Lease Management's standard Rental Purchase Agreement void under North Carolina law as to the Plaintiffs and all class members;

2. That Mr. Bland, Mr. Jackson and the class members have and recover from the Defendants herein, jointly and severally, all amounts paid by the Plaintiffs and class members pursuant to the rental purchase agreements and such other and further damages as may be shown at trial, and that such sum be trebled pursuant to N.C. Gen. Stat. § 75-16;

3. That Mr. Bland, Mr. Jackson and the class members be allowed to retain the personal property without any further liability to Carolina Lease Management, its successors or assigns, as authorized under N.C. Gen. Stat. § 25A-44;

4. That in addition to all other relief, that all class members who have had their property repossessed by Carolina Lease Management or its agents or assigns receive damages equal to the fair market value of the property at the time of repossession;

31

5.     That the Plaintiffs and the subclass members against whom debt collection activities were undertaken by Carolina Lease Management recover statutory damages under Article Two, Chapter 75 of the North Carolina General Statutes of not less than $500 nor more than $4,000 per violation;

6.     That the Plaintiffs Mr. Bland, Mr. Jackson and the class members recover from the Defendants, jointly and severally, the attorney's fees for pursuing this action as authorized under N.C. Gen. Stat. § 75-16.1;

7.     That a trial by jury be granted as to all issues as allowed by law;

8.     That the costs of this action be taxed to the Defendants herein; and

9.     For such other and further relief as this Court deems just and proper.

This the ⟋⟍ day of March, 2022.

**LAPAS LAW OFFICES, PLLC**

By: _____

Adrian M. Lapas
Attorney for Plaintiffs
Post Office Box 10688
Goldsboro, NC 27532
Telephone: (919) 583-5400
Facsimile: (919) 882-1777
N.C. State Bar No.: 20022
email: adrian@lapaslaw.com

32

NATIONAL CONSUMER LAW CENTER

By: _____

    Charles M. Delbaum
    Attorney for Plaintiffs
    7 Winthrop Square, 4th Floor
    Boston, MA 02110
    Telephone: (617) 542-8010
    email: cdelbaum@nclc.org
    (to be admitted *Pro hac vice)*

33

Bland, Jackson v. Old Hickory,
CTH Rentals and Carolina Lease Management

## EXHIBIT A

# OLD HICKORY BUILDINGS - ORDER SHEET

To be used with complex orders / Please fax along with work-order

**Dealer** Ayden, NC / East Side Storage Sales / Chad Toews     **Date** 08    20    2018

**Customer Name** Hank Bland     **Co-Consumer** _____

| **Barn Style** | **Size** | **Siding Material** 3/8 LP Smart Siding | **Flooring** Treated CDX | **Roof Style** Metal |
|---|---|---|---|---|
| Utililty Shed | 12 x 20 | **Wall Color** Honey Gold **Trim Color** Same as Siding | | **Roof Color** Rustic Red Non |

| Options: | Amount: | Price: |
|---|---|---|
| Playhouse Package | x1 | $595.00 |
| House-Style Door, No Window (Default) | | $225.00 |
| House-Style Door, No Window (Default) | | $225.00 |
| Del. 2 X 3 Window | x1 | $-65.00 |
| 9 lite Door | x1 | $-275.00 |

**Dealer Notes:**

**Total Pre-tax Options Cost**     705.00 _____

Diagram:

Customer signature: _____

Customer agrees that diagram is accurate; changes will be subject to fee.

systemavo.com only: 108712

**CTH Rentals, LLC**
PO Box 215
Halls, TN 38040
Phone: (855) 842-2276
Fax: (731) 836-0580

Date: 08 / 20 / 2018          48 RTO          Del. Date: _____

Order Type: New On Lot     Serial Number: HPH G 7551 1220 051718 SU

Dealer: Ayden, NC / East Side Storage Sales / Chad Toews

*Revisions on Custom Orders subject to fee, see below for details

| Sold To: | Hank Bland | | | | |
|---|---|---|---|---|---|
| | Name | Co-Consumer Name | | | |

2120 Jonestown Rd.
Delivery Address

Dover                    Craven
City                     County

NC        28526
State      Zip

2120 Jonestown Rd.
Mailing Address

Dover
City

NC        28526
State      Zip

2526700632

Home Phone
2524744884

Work Phone

Cell Phone

Additional Contact

Additional Contact Phone
4243109

Driver's License # (Required for RTO)

**Barn Style**          **Size**
Utility Shed            12 x 20

Siding Material 3/8 LP Smart Siding   Roof Style Metal

Wall Color Honey Gold   Roof Color Rustic Red Non-M

Trim Color Same as Siding

*All Sizes Nominal* *8' Tall Walls Measured on Outside*
*12' and 14' wide measured eave to eave*

**NOTES**
***REPOS SOLD "AS IS"**
Please list repo damage:

[ ] If check box is checked customer agrees to waive any warranty claim on the barn with regards to cosmetic, usage, age, or normal wear and tear issues, or for the reason or reasons stated below:

ALL sales are pending approval by the home office.

'Old Hickory Buildings, LLC, CTH Rentals, LLC and its associates are not responsible for permits, covenant searches, restrictions, set backs, yard damage, or underground damage. Please contact your local Building Inspector or Homeowners Association for information. It is the customers' responsibility to decide if ground conditions are unsuitable for delivery. Free Delivery covers one trip up to 30 miles one way, over 30 miles subject to a $2/mile (8ft, 9ft and 10ft wide) or $3.50 /mile (12ft and 14ft wide) charge one way, and any additional trips may also incur charges to the customer. Free Setup includes leveling, starting with one corner at ground level, up to 3ft with customer supplied blocks, we can supply blocks for $3.00 each. *Non-Refundable Fee will be charged on Cancels or Revisions of Custom Orders (10% on Cash Sales <or> Security Deposit on RTO sales) Cash on Delivery (COD) downpayments are non-refundable if delivered, including, but not limited to, any delivery attempt. CUSTOMER UNDERSTANDS ALL CHECKS TO BE PAYABLE TO _____ TION IS VOID.

| RTO: | CASH: | COD: |
|---|---|---|
| 1 SALES PRICE | | 4025.00 |
| 2 OPTIONS COST | | 705.00 |
| 3 TOTAL PRETAX COST | | 4730.00 |
| 4 SECURITY DEPOSIT | | 236.50 |
| 5 DOWNPAYMENT AMT. | | 0.00 |
| 6 DOWNPAYMENT (-SD) | | |
| 7 PRETAX DOWN-PMT | | 0.00 |
| 8 RENT-TO-OWN AMT | | 4730.00 |
| 9 PRETAX MONTHLY PMT | | 197.08 |
| 10 SALES TAX    7% | | 13.80 |
| 11 TOTAL PAYMENT | | 210.88 |
| 12 TOTAL RECEIVED | | 236.5 |
| cash | | |

Customer signature: ALL sales are pending approval by the home office.

[ ] Tax Exempt

Loading Instructions: Door Towards

| CAB | BACK | DRIVER'S | PASSENGER'S |
|---|---|---|---|
| | X | | |

Directions(must get for RTO):
Hwy 11 South. Left on Hahrahan. Continue to hwy 118. Right on River Rd. Right on Maple Cypress. Left on Biddle Rd. Left on Hwy 55. Right on Jonestown Rd. Second house on left.

ALL sales are pending approval by the home office.

v1.2

# Carolina Lease Management Group, LLC

P.O. Box 51334
LaFayette, Louisiana 70505
Telephone: 855-842-9900

## RENTAL PURCHASE AGREEMENT AND DISCLOSURE STATEMENT (48 MONTH)

This agreement (**pending final approval by Carolina Lease Management Group, LLC's Home Office located in Halls, TN, that all prices and payments contained herein are correct**) made and entered into on this __20__ day of __08__ _____ __2018__ _____ (a copy of which has been furnished to Consumer as evidenced by Consumer's electronic signature as it appears below), by and between Carolina Lease Management Group, LLC, (or its successors or assigns) having its principal place of business at 2726 Viar Rd, Halls, TN 38040 in Lauderdale County, Tennessee, hereinafter referred to as "Lessor" and

(Name) Hank Bland _____ and (Name) _____

whose address is (Street/Route) 2120 Jonestown Rd. _____

(City) Dover _____ (County) Craven _____ (State) NC _____

(Zip Code) 28526 _____ hereinafter referred to as "Consumer."

## *Witnesseth:*

1.    For and in consideration of mutual covenants and agreements hereinafter set forth, Lessor hereby leases to Consumer and Consumer hereby leases from Lessor that certain portable warehouse and equipment described in paragraph 2(a) set out below.

2.    The following information is hereby disclosed to the Consumer pursuant to state law and are terms and conditions of this agreement.

(a)    The property to be leased, the subject of this agreement, is described as follows:

☒ New ☐ Used

| 12 x 20 | New On Lot | Utility Shed |
|---------|------------|--------------|

(b)    The total pre-tax cost of the leased property is $ __4730.00__ _____ + Sales Tax.

(c)    The property is owned by Carolina Lease Management Group, LLC.

(d)    The term of this agreement is for one month.

(e)    Consumer may renew this agreement for consecutive terms of one month by making rental payments in advance for each additional month Consumer wishes to rent the property.

(f)    The rental payment is $ __197.08__ + Sales Tax (sales tax subject to change)= $ __210.88__ _____ per month and is due on the __15th__ day of each succeeding month. If Consumer makes 48 monthly payments for a total of cost of $ __10122.24__ _____ and otherwise complies with this agreement, Consumer will acquire ownership of the rented property. *At any time after Consumer has made the first rental payment Consumer may purchase the rented property for the total pre-tax cost of $ $4730.00 _____ + Sales Tax less 50% of all the rental payments Consumer has made (exclusive of taxes, reinstatements and other charges.)*

Case 4:22-cv-00033-BO    Document 1-11    Filed 04/08/22    Page 41 of 58

(g)    Consumer will not own the property until the Consumer has made the number of payments and the total of payments necessary to acquire ownership.

(h)    The total of payments does not include other charges such as late payment, default, pick-up or reinstatement fees, and Consumer should read this contract for an explanation of these charges.

(i)    Consumer is responsible for the fair market value of the property if it is lost or stolen or damaged or destroyed.

(j)    Consumer is responsible for maintaining the property while it is leased.

(k)    Consumer shall not permit the leased property to be altered for the construction of shelves, addition of equipment and accessories or the placing of signs thereon and shall not permit the leased property to be tied to or otherwise affixed to any real estate in such a manner that the same cannot be removed without damage to the leased property.

(l)    Consumer agrees not to, in any way, restrict the Lessor, its agents and/or independent contractors from access to the leased property. Consumer specifically grants to Lessor, its agents and/or independent contractors specific right of entry onto the Consumer's property during the initial delivery of said rental property and during the repossession of such leased property, whether such repossession is at the request of Consumer or caused by Consumer's default.

3.    At the time of the execution of this agreement, the Consumer shall pay to the Lessor a security deposit in the amount of $ _236.50_ to be held by Lessor as security for the performance of all terms of this agreement including, but not limited to past due rental payments or any redelivery charge. **Such deposit (or such part thereof as has not been applied to remedy defaults of the Consumer) shall be refunded, without interest, only on the expiration of the term of this lease, if Consumer has not been late on rental payments for more than 3 times, and if all obligations of the Consumer have been performed or discharged and Consumer exercises option to purchase.** *Lessor may from time to time use the proceeds of the deposits to apply towards any breach by Consumer of the terms of this lease, and in the event of such application upon demand to the Lessor, the Consumer shall restore the deposit to its original amount.*

4.    Consumer may terminate this agreement without penalty by voluntarily surrendering the rented property upon expiration of any lease term. In that event, Consumer agrees to return the rented property to Lessor in the same condition it was on this date, normal wear and tear excepted, and all payments shall be deemed fair rental value.

5.    In the event of termination by Consumer, Consumer will still owe Lessor any past-due rental payments. If Consumer fails to make a timely rental payment, which otherwise would effectuate a termination of this agreement, Consumer shall have the right to reinstate the agreement without losing any rights or options by payment of all past-due rental charges, the reasonable cost of pick-up, redelivery, and refurbishing, and any applicable late fees within five (5) days of the renewal date.

6.    If Consumer, at the request of Lessor or its agent, has returned or voluntarily surrendered the rented property to Lessor, the reinstatement period shall be a term for thirty (30) days after the date of the return of the property. In the event that Consumer has paid not less than 80% of

Case 4:22-cv-00033-BO    Document 1-11    Filed 04/08/22    Page 42 of 58

the amount called for under the contract to obtain ownership, the reinstatement period shall be extended to a total of sixty (60) days after the date of the return of the property.

7. The rented property shall be kept at the address shown above. It may not be moved from that address without the written consent of Lessor which consent shall not be unreasonably withheld.

8. Consumer may not assign any of Consumer's rights under this contract to any third party without the written consent of Lessor which consent shall not be unreasonably withheld.

9. Lessor shall have the right to examine and inspect the rented property at all reasonable times.

10. **Notwithstanding anything contained in this agreement to the contrary, the Lessor shall not be liable to the Consumer or to any other person, firm or corporation by reason of loss, damage or destruction not due to negligence of the Lessor, its agent, servants or employees. In the event, and whether or not such loss, damage or destruction for the property kept in the leased premises is due the negligence of the Lessor, its agents, servants or employees, or otherwise the liability of the Lessor shall not exceed the value of the portable warehouse in question. In this regard, the Consumer warrants and guarantees to the Lessor that no property in excess of the said limit of liability shall be placed in or stored in the leased property other than at the sole peril of the Consumer. The Consumer assumes full responsibility for all contents in the portable warehouse, and agrees to not hold the Lessor, its employees or its agents liable in any way for damages, destruction or loss of any kind to any property stored inside the portable warehouse which is incurred during the act and/or process of repossessing the portable warehouse.**

11. Notice is hereby given to any holder of this instrument or any interest therein that to the extent this instrument may be deemed to be a consumer credit contract, the rights of such holder, if any, are subject to all claims and defenses which the debtor could assert against the seller of goods and services obtained pursuant there to, but with recovery by the debtor being limited to the amount paid by the debtor hereunder.

12. Consumer agrees to promptly remove all of Consumer's personal belongings and property at the termination of this agreement, whether such termination is caused by Consumer's default, or by lapse of time, and Lessor may elect that any personal property not removed at such termination by Consumer is deemed abandoned by Consumer and same shall become the property of the Lessor without any payment or offset thereto. If Lessor shall not so elect, the Lessor may remove such property from the leased portable warehouse and store same at Consumer's risk and expense.

13. In the event the Lessor shall incur costs and expenses in enforcing the terms of the agreement because of the breach thereof by the Consumer or by the agents, servants or employees of the Consumer, the Lessor shall recover from and the Consumer shall pay to Lessor, all of the Lessor's cost and expenses by reason thereof, including but not limited to Lessor's reasonable attorney's fees. In the event Consumer defaults in complying with the terms of this lease and Lessor proceeds to repossess the portable warehouse, and Consumer pays the amount in arrears after Lessor has made the trip to repossess same, then Consumer shall pay Lessor in addition to payments in arrears all expenses pertaining to said trip.

Case 4:22-cv-00033-BO    Document 1-11    Filed 04/08/22    Page 43 of 58

14. The parties agree that the Consumer has examined the leased property, knows the condition thereof, and has agreed to lease the same in "as is" condition and that the Lessor has made no representations, warranties, or promises of any kind or nature, either expressed or implied, as to the condition, quality, suitability, or fitness or purpose of the leased property.

15. Consumer agrees that the laws of the State of Tennessee, the home state of the Lessor, shall govern this contract in all respects, and the Consumer further agrees to submit to the jurisdiction of the Courts of Tennessee, including but not necessarily limited to the Courts of Lauderdale County, Tennessee, the site of the home office of the Lessor.

16. This agreement sets forth the parties' entire agreement and may not be changed except in paper writing signed by both parties.

17. By executing this agreement, Consumer agrees that:

(a) Consumer has read and understands this agreement.

(b) Consumer has been given a signed and legible copy with all blanks filled in.

(c) Consumer has received the rented property in good condition.

(d) Consumer hereby acknowledges the Lessor maintains the right to assign this contract to a third party and further agrees to remit rental payments to such party if so assigned.

18. In the event of default, Consumer will be liable for a $15.00 per month late charge plus any applicable sales tax, and all costs of collection agency fees, reasonable attorney fees and court costs.

IN WITNESS WHEREOF, the parties have agreed to conduct this transaction by electronic means and have hereunto affixed their electronic signatures as of the date set forth.

LESSOR:
BY: _____ Michelle Sadera _____
(Pending Final Approval by Home Office)

| CC | CO-CONSUMER |
|---|---|
| X _____ | X _____ |
| SSN _____ | SSN _____ |
| Driver's License # _____ | Driver's License # _____ |
| Home Phone _____ | Home Phone _____ |
| Cell Phone _____ | Cell Phone _____ |
| Employer _____ | Employer _____ |
| Work Phone _____ | Work Phone _____ |

Own or Rent Home_Own
Name of Landlord_N/A
Phone # of Landlord_N/A

Own or Rent Home _____
Name of Landlord _____
Phone # of Landlord _____

Case 4:22-cv-00033-BO    Document 1-11    Filed 04/08/22    Page 44 of 58

**ASSIGNMENT** *(For Office Use Only)*

Carolina Lease Management Group, LLC has assigned all of its rights, title and interest in this agreement to Iberia Bank FSB and no other assignment of this agreement will be effective without the express written consent of Iberia Bank FSB.

Seller assigns this contract on _08_____ 20____ , _2018___ to _____ in accordance with the seller's assignment appearing below. Assignment is with recourse and subject to a separate agreement.

By_____ Title_____ (Seller)

Seller sells and assigns to _____ its successors and assigns, all rights, title and interest in this retail installment contract. Seller gives assignee full power, either in its own or in seller's name, to take all legal or other actions which seller could have taken under this contract.

By_____

Case 4:22-cv-00033-BO    Document 1-11    Filed 04/08/22    Page 45 of 58

Bland, Jackson v. Old Hickory,
CTH Rentals and Carolina Lease Management

## EXHIBIT B

# OLD HICKORY BUILDINGS - ORDER SHEET

To be used with complex orders / Please fax along with work-order

**Dealer** Spring Lake, NC / West Storage Company /  **Date** 09  07  2018

**Customer Name** Kendell Jackson  **Co-Consumer** _____

| | | | | |
|---|---|---|---|---|
| **Barn Style** Lofted Barn | **Size** 12 x 20 | **Siding Material** LP Dutch Lap  **Wall Color** Buckskin | **Flooring** Treated CDX  **Trim Color** Barn White | **Roof Style** Shingle  **Roof Color** Black |

**Options:**

See attached page for additional options

**Amount:**  **Price:**

**Dealer Notes:**

**Total Pre-tax Options Cost**  1655.75

---

**Diagram:**



20'

Front 12'

Dbl Dr 10x29

Loft 8'

bench

Loft 8'

Shrt 9 Lt

2x3 DW  2x3 DW

3'3"  3'3"  3'3"  3'3"

Back 12'

20'

All measurements are within 5 percent variance
Roof ridge runs from FRONT to BACK. All barns are measured eave to eave.

Customer signature: _____
Customer agrees that diagram is accurate; changes will be subject to fee.

systemavo.com only: 113888

West

**CTH Rentals, LLC**
PO Box 215
Halls, TN 38040
Phone: (855) 842-2276
Fax: (731) 836-0580

Date: 09 / 07 / 2018          48 RTO          Del. Date: _____

Order Type: Build          Serial Number: _____

Dealer:          Spring Lake, NC / West Storage Company /

*Revisions on Custom Orders subject to fee, see below for details

| Sold To: | Kendell Jackson | | **Barn Style** | **Size** |
|---|---|---|---|---|

Name: Kendell Jackson
Co-Consumer Name:

936 Liberty Lane

Delivery Address:
Fayetteville          Cumberland
City          County

NC     28311
State     Zip

936 Liberty Lane

Mailing Address:
Fayetteville

City
NC     28311
State     Zip

9176595351
Home Phone

3472604129
Work Phone

Cell Phone

Additional Contact

Additional Contact Phone
36544747

Driver's License # (Required for RTO)

**Barn Style**          **Size**

Lofted Barn          12 x 20

Siding Material LP Dutch Lap     Roof Style Shingle

Wall Color Buckskin          Roof Color Black

Trim Color Barn White

*All Sizes Nominal* *8' Tall Walls Measured on Outside*
*12' and 14' wide measured eave to eave*

**NOTES**
***REPOS SOLD "AS IS"**
Please list repo damage:

☐ If check box is checked customer agrees to waive any
warranty claim on the barn with regards to cosmetic,
usage, age, or normal wear and tear issues, or for the
reason or reasons stated below:

ALL sales are pending approval by the home office.

'Old Hickory Buildings, LLC, CTH Rentals, LLC and its associates are not
responsible for permits, covenant searches, restrictions, set backs, yard
damage, or underground damage. Please contact your local Building

| RTO: | CASH: | COD: |
|---|---|---|
| 1 SALES PRICE | | 4345.00 |
| 2 OPTIONS COST | | 1655.75 |
| 3 TOTAL PRETAX COST | | 6000.75 |
| 4 SECURITY DEPOSIT | | 300.04 |
| 5 DOWNPAYMENT AMT | | 4.00 |
| 6 DOWNPAYMENT (-SD) | | |
| 7 PRETAX DOWN-PMT | | 3.74 |
| 8 RENT-TO-OWN AMT | | 5997.01 |
| 9 PRETAX MONTHLY PMT | | 249.88 |
| 10 SALES TAX     7% | | 17.49 |
| 11 TOTAL PAYMENT | | 267.37 |
| 12 TOTAL RECEIVED credit | | 304.04 |

Inspector or Homeowners Association for information. It is the customers'
responsibility to decide if ground conditions are unsuitable for delivery.
Free Delivery covers one trip up to 30 miles one way, over 30 miles
subject to a $2/mile (8ft, 9ft and 10ft wide) or $3.50 /mile (12ft and 14ft
wide) charge one way, and any additional trips may also incur charges to
the customer. Free Setup includes leveling, starting with one corner at
ground level, up to 3ft with customer supplied blocks, we can supply
blocks for $3.00 each. *Non-Refundable Fee will be charged on Cancels
or Revisions of Custom Orders (10% on Cash Sales <or> Security Deposit
on RTO sales). Cash on Delivery (COD) downpayments are non-
refundable if delivered, including, but not limited to, any delivery attempt.
CUSTOMER UNDERSTANDS ALL CHECKS TO BE PAYABLE TO
_____ TION IS VOID.

Customer signature

ALL sales are pending approval by the home office.

| Loading Instructions: Door Towards | CAB | BACK | DRIVER'S | PASSENGER'S |
|---|---|---|---|---|
| | | | | X |

☐ Tax Exempt

**Directions (must get for RTO):**
Take 210 to McCormick Bridge Road and turn left there and follow to Andrews Road. Turn left on Andrews (at the light)
and follow to Ramsey Street. Turn Right on Ramsey Follow it to Shawcroft and turn right on Shawcroft. Follow
Shawcroft to Williwood and turn right there. Follow Williwood to and then right on McCoy Cross. and then left on liberty at
the round about. MULE and various customers leaving on many building at one office.

v1.2

# Carolina Lease Management Group, LLC

P.O. Box 51334
LaFayette, Louisiana 70505
Telephone: 855-842-9900

## RENTAL PURCHASE AGREEMENT AND DISCLOSURE STATEMENT (48 MONTH)

This agreement (**pending final approval by Carolina Lease Management Group, LLC's Home Office located in Halls, TN, that all prices and payments contained herein are correct**) made and entered into on this _07_ day of _09_ _____ 2018 _____ (a copy of which has been furnished to Consumer as evidenced by Consumer's electronic signature as it appears below), by and between Carolina Lease Management Group, LLC, (or its successors or assigns) having its principal place of business at 2726 Viar Rd, Halls, TN 38040 in Lauderdale County, Tennessee, hereinafter referred to as "Lessor" and

(Name) _Kendell Jackson_____ and (Name)_____

whose address is (Street/Route) _936 Liberty Lane_____

(City) _Fayetteville_____ (County) _Cumberland_____ (State) _NC_____

(Zip Code)_28311_____ hereinafter referred to as "Consumer."

## *Witnesseth:*

1. For and in consideration of mutual covenants and agreements hereinafter set forth, Lessor hereby leases to Consumer and Consumer hereby leases from Lessor that certain portable warehouse and equipment described in paragraph 2(a) set out below.

2. The following information is hereby disclosed to the Consumer pursuant to state law and are terms and conditions of this agreement.

(a) The property to be leased, the subject of this agreement, is described as follows:

☒ New ☐ Used

_12 x 20_____ Build _____ Lofted Barn_____

(b) The total pre-tax cost of the leased property is $ _6000.75_____ + Sales Tax.

(c) The property is owned by Carolina Lease Management Group, LLC.

(d) The term of this agreement is for one month.

(e) Consumer may renew this agreement for consecutive terms of one month by making rental payments in advance for each additional month Consumer wishes to rent the property.

(f) The rental payment is $ _249.88___ + Sales Tax (sales tax subject to change)= $ _267.37_____ per month and is due on the 15th day of each succeeding month. If Consumer makes 48 monthly payments for a total of cost of $ _12833.76_____ and otherwise complies with this agreement, Consumer will acquire ownership of the rented property. *At any time after Consumer has made the first rental payment Consumer may purchase the rented property for the total pre-tax cost of $ _$5997.01_____ + Sales Tax less 50% of all the rental payments Consumer has made (exclusive of taxes, reinstatements and other charges.)*

Case 4:22-cv-00033-BO    Document 1-11    Filed 04/08/22    Page 49 of 58

(g)   Consumer will not own the property until the Consumer has made the number of payments and the total of payments necessary to acquire ownership.

(h)   The total of payments does not include other charges such as late payment, default, pick-up or reinstatement fees, and Consumer should read this contract for an explanation of these charges.

(i)   Consumer is responsible for the fair market value of the property if it is lost or stolen or damaged or destroyed.

(j)   Consumer is responsible for maintaining the property while it is leased.

(k)   Consumer shall not permit the leased property to be altered for the construction of shelves, addition of equipment and accessories or the placing of signs thereon and shall not permit the leased property to be tied to or otherwise affixed to any real estate in such a manner that the same cannot be removed without damage to the leased property.

(l)   Consumer agrees not to, in any way, restrict the Lessor, its agents and/or independent contractors from access to the leased property. Consumer specifically grants to Lessor, its agents and/or independent contractors specific right of entry onto the Consumer's property during the initial delivery of said rental property and during the repossession of such leased property, whether such repossession is at the request of Consumer or caused by Consumer's default.

3.    At the time of the execution of this agreement, the Consumer shall pay to the Lessor a security deposit in the amount of $ 300.04  to be held by Lessor as security for the performance of all terms of this agreement including, but not limited to past due rental payments or any redelivery charge. **Such deposit (or such part thereof as has not been applied to remedy defaults of the Consumer) shall be refunded, without interest, only on the expiration of the term of this lease, if Consumer has not been late on rental payments for more than 3 times, and if all obligations of the Consumer have been performed or discharged and Consumer exercises option to purchase.** *Lessor may from time to time use the proceeds of the deposits to apply towards any breach by Consumer of the terms of this lease, and in the event of such application upon demand to the Lessor, the Consumer shall restore the deposit to its original amount.*

4.    Consumer may terminate this agreement without penalty by voluntarily surrendering the rented property upon expiration of any lease term. In that event, Consumer agrees to return the rented property to Lessor in the same condition it was on this date, normal wear and tear excepted, and all payments shall be deemed fair rental value.

5.    In the event of termination by Consumer, Consumer will still owe Lessor any past-due rental payments. If Consumer fails to make a timely rental payment, which otherwise would effectuate a termination of this agreement, Consumer shall have the right to reinstate the agreement without losing any rights or options by payment of all past-due rental charges, the reasonable cost of pick-up, redelivery, and refurbishing, and any applicable late fees within five (5) days of the renewal date.

6.    If Consumer, at the request of Lessor or its agent, has returned or voluntarily surrendered the rented property to Lessor, the reinstatement period shall be a term for thirty (30) days after the date of the return of the property. In the event that Consumer has paid not less than 80% of

the amount called for under the contract to obtain ownership, the reinstatement period shall be extended to a total of sixty (60) days after the date of the return of the property.

7.    The rented property shall be kept at the address shown above. It may not be moved from that address without the written consent of Lessor which consent shall not be unreasonably withheld.

8.    Consumer may not assign any of Consumer's rights under this contract to any third party without the written consent of Lessor which consent shall not be unreasonably withheld.

9.    Lessor shall have the right to examine and inspect the rented property at all reasonable times.

10.    **Notwithstanding anything contained in this agreement to the contrary, the Lessor shall not be liable to the Consumer or to any other person, firm or corporation by reason of loss, damage or destruction not due to negligence of the Lessor, its agent, servants or employees. In the event, and whether or not such loss, damage or destruction for the property kept in the leased premises is due the negligence of the Lessor, its agents, servants or employees, or otherwise the liability of the Lessor shall not exceed the value of the portable warehouse in question. In this regard, the Consumer warrants and guarantees to the Lessor that no property in excess of the said limit of liability shall be placed in or stored in the leased property other than at the sole peril of the Consumer. The Consumer assumes full responsibility for all contents in the portable warehouse, and agrees to not hold the Lessor, its employees or its agents liable in any way for damages, destruction or loss of any kind to any property stored inside the portable warehouse which is incurred during the act and/or process of repossessing the portable warehouse.**

11.    Notice is hereby given to any holder of this instrument or any interest therein that to the extent this instrument may be deemed to be a consumer credit contract, the rights of such holder, if any, are subject to all claims and defenses which the debtor could assert against the seller of goods and services obtained pursuant there to, but with recovery by the debtor being limited to the amount paid by the debtor hereunder.

12.    Consumer agrees to promptly remove all of Consumer's personal belongings and property at the termination of this agreement, whether such termination is caused by Consumer's default, or by lapse of time, and Lessor may elect that any personal property not removed at such termination by Consumer is deemed abandoned by Consumer and same shall become the property of the Lessor without any payment or offset thereto. If Lessor shall not so elect, the Lessor may remove such property from the leased portable warehouse and store same at Consumer's risk and expense.

13.    In the event the Lessor shall incur costs and expenses in enforcing the terms of the agreement because of the breach thereof by the Consumer or by the agents, servants or employees of the Consumer, the Lessor shall recover from and the Consumer shall pay to Lessor, all of the Lessor's cost and expenses by reason thereof, including but not limited to Lessor's reasonable attorney's fees. In the event Consumer defaults in complying with the terms of this lease and Lessor proceeds to repossess the portable warehouse, and Consumer pays the amount in arrears after Lessor has made the trip to repossess same, then Consumer shall pay Lessor in addition to payments in arrears all expenses pertaining to said trip.

14. The parties agree that the Consumer has examined the leased property, knows the condition thereof, and has agreed to lease the same in "as is" condition and that the Lessor has made no representations, warranties, or promises of any kind or nature, either expressed or implied, as to the condition, quality, suitability, or fitness or purpose of the leased property.

15. Consumer agrees that the laws of the State of Tennessee, the home state of the Lessor, shall govern this contract in all respects, and the Consumer further agrees to submit to the jurisdiction of the Courts of Tennessee, including but not necessarily limited to the Courts of Lauderdale County, Tennessee, the site of the home office of the Lessor.

16. This agreement sets forth the parties' entire agreement and may not be changed except in paper writing signed by both parties.

17. By executing this agreement, Consumer agrees that:

(a) Consumer has read and understands this agreement.

(b) Consumer has been given a signed and legible copy with all blanks filled in.

(c) Consumer has received the rented property in good condition.

(d) Consumer hereby acknowledges the Lessor maintains the right to assign this contract to a third party and further agrees to reinit rental payments to such party if so assigned.

18. In the event of default, Consumer will be liable for a $15.00 per month late charge plus any applicable sales tax, and all costs of collection agency fees, reasonable attorney fees and court costs.

IN WITNESS WHEREOF, the parties have agreed to conduct this transaction by electronic means and have hereunto affixed their electronic signatures as of the date set forth.

LESSOR:
BY: _____ *Michelle Sadera*
(Pending Final Approval by Home Office)

| CC ⟨signature⟩ | CO-CONSUMER |
| --- | --- |
| X _____ | X _____ |
| SSN ⟨redacted⟩ | SSN _____ |
| Driver's License # ⟨redacted⟩ | Driver's License # _____ |
| Home Phone ⟨redacted⟩ | Home Phone _____ |
| Cell Phone ⟨redacted⟩ | Cell Phone _____ |
| Employer US Army | Employer _____ |
| Work Phone ⟨redacted⟩ | Work Phone _____ |
| | |
| Own or Rent Home Own | Own or Rent Home _____ |
| Name of Landlord North Carolina | Name of Landlord _____ |
| Phone # of Landlord N/A | Phone # of Landlord _____ |

Case 4:22-cv-00033-BO   Document 1-11   Filed 04/08/22   Page 52 of 58

## ASSIGNMENT *(For Office Use Only)*

> Carolina Lease Management Group, LLC has assigned all of its rights, title and interest in this agreement to Iberia Bank FSB and no other assignment of this agreement will be effective without the express written consent of Iberia Bank FSB.

Seller assigns this contract on _09_____ 07___, 2018___ to _____in accordance with the seller's assignment appearing below. Assignment is with recourse and subject to a separate agreement.

By_____ Title_____(Seller)

Seller sells and assigns to _____ its successors and assigns, all rights, title and interest in this retail installment contract. Seller gives assignee full power, either in its own or in seller's name, to take all legal or other actions which seller could have taken under this contract.

By_____

Bland, Jackson v. Old Hickory,
CTH Rentals and Carolina Lease Management

## EXHIBIT C

Bland, Hank

<u>Summary of Carolina Lease Management Group, LLC's Rent-To-Own Transaction:</u>

| Items Purchased | Retail Cost | | Rent (Month) |
|---|---|---|---|
| storage shed | $4,730.00 | | $ 197.08 |
| sales tax (7%) | $  331.10 | | |
| **TOTAL:** | **$5,061.10** | | $  13.80 (tax) |
| | | TOTAL: | $ 210.88 |

### *Analysis of Transaction under first condition of § 25A-2(b):*

After specified number of payments (48 monthly payments), lessor (Carolina Lease Management) is obligated to transfer ownership to lessee for no other or nominal consideration (defined as less than 10% of cash price):

$$\$210.88 \times 48 = \$ 10,122.24 \text{ (inclusive of taxes)}$$
$$\$ 0 \quad \times 1 = \underline{\$ \quad 0}$$
$$\$ 10,122.24$$

$$\$197.08 \times 48 = \$ 9,459.84 \text{ (exclusive of taxes)}$$
$$\$ 0 \quad \times 1 = \underline{\$ \quad 0}$$
$$\$ 9,459.84$$

<u>Cash Price</u>: $5,061.10 x 0.10 (ten percent)  = $506.11

Final Payment for lessee to become owner:   $210.88 < 10% cash price

> *Because the final payment to become owner is less than 10% of cash price, satisfies first prong of a consumer credit sale under § 25A-2(b)(1).*

### <u>*Analysis of Transaction under second condition of § 25A-2(b):*</u>

Dollar total of specified number of payments (48) necessary to exercise purchase option is more than 10% in excess of the aggregate value of

property involved. Value of goods shall be "the average cash retail value of the goods" (not necessarily the sale price stated).

Sale Price Stated:$  4,730.00 + $331.10 (7% Pitt Co.) += $5,061.11

Sale Price + 10%: $5,061.11 + $506.11 =  $5,567.22

| | |
|---|---|
| $210.88 x 48 = | $ 10,122.24 (taxes included) |
| $197.08 x 48 = | $  9,459.84 (taxes excluded) |

Total Lease Payments $10,122.24 > $5,567.21
$  9,459.84 > $5,203.00

*Because the dollar total of specified number of payments necessary to exercise purchase option is more than 10% of value of the property involved, this is a consumer credit sale under § 25A-2(b)(2).*

**BECAUSE** both conditions set out under § 25A-2(b)(1) and (b)(2) are satisfied, this transaction is a consumer credit sale under the North Carolina Retail Installment Sales Act.

Jackson, Kendall

Summary of Carolina Lease Management Group, LLC's Rent-To-Own
Transaction:

| Items Purchased | Retail Cost | Rent (Month) |
|---|---|---|
| storage shed | $6,000.75 | $ 249.88 |
| sales tax (7%) | $ 420.05 | |
| **TOTAL:** | **$6,420.80** | $ 17.49 (tax) |
| | **TOTAL:** | **$ 267.37** |

### *Analysis of Transaction under first condition of § 25A-2(b):*

After specified number of payments (48 monthly payments), lessor
(Carolina Lease Management) is obligated to transfer ownership to
lessee for no other or nominal consideration (defined as less than 10% of
cash price):

$267.37 x 48 = $ 12,833.76 (inclusive of taxes)
$ 0     x 1 = $      0
$ 12,833.76

$249.88 x 48 = $ 11,994.24 (exclusive of taxes)
$ 0     x 1 = $      0
$ 11,994.24

Cash Price: $6,420.80 x 0.10 (ten percent) = $642.08

Final Payment for lessee to become owner: $267.37 < 10% cash price

*Because the final payment to become owner is less than
10% of cash price, satisfies first prong of a consumer
credit sale under § 25A-2(b)(1).*

### *Analysis of Transaction under second condition of § 25A-2(b):*

Dollar total of specified number of payments (48) necessary to exercise
purchase option is more than 10% in excess of the aggregate value of

property involved. Value of goods shall be "the average cash retail value of the goods" (not necessarily the sale price stated).

| | |
|---|---|
| Sale Price Stated: | $ 6,000.75 + $420.05 = $6,420.80 |
| Sale Price + 10%: | $ 7,062.29 |
| $267.37 x 48 = | $ 12,833.76 (taxes included) |
| $249.88 x 48 = | $ 11,994.24 (taxes excluded) |

Total Lease Payments $12,833.76 > $7,062.29
$11,994.24 > $7,062.29

*Because the dollar total of specified number of payments necessary to exercise purchase option is more than 10% of value of the property involved, this is a consumer credit sale under § 25A-2(b)(2).*

**BECAUSE** both conditions set out under § 25A-2(b)(1) and (b)(2) are satisfied, this transaction **is** a consumer credit sale under the North Carolina Retail Installment Sales Act.