IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

|  |  |  |
|---|---|---|
| HANK BLAND, KENDELL JACKSON, and LUETTA INNISS, *on behalf of themselves and all others similarly situated,* | ) ) ) ) ) |  |
| Plaintiffs, | ) ) | No. 4:22 CV -33- BO |
| v. | ) ) ) | **FIRST AMENDED COMPLAINT** |
|  | ) ) | *Jury Trial Demanded* |
| CAROLINA LEASE MANAGEMENT GROUP, LLC, CTH RENTALS, LLC, and OLD HICKORY BUILDINGS, LLC, | ) ) ) ) ) |  |
| Defendants. | ) ) ) |  |

NOW COME the Plaintiffs, Hank Bland, Kendell Jackson and Luetta Inniss, by and through counsel, and submit this Complaint on behalf of themselves and all others similarly situated in North Carolina and pursuant to Rule 23 of the North Carolina Rules of Civil Procedure. The Plaintiffs seek, on behalf of themselves and all others similarly situated, redress arising from purported "rent-to-own" transactions for a storage shed or portable building pursuant to a form contract substantially similar to theirs. The Plaintiffs' claim, in brief, is that these contracts, although written in the form of a lease, are "consumer credit sales" that include excessive finance charges in violation of North Carolina's Retail Installment Sales Act (RISA) set forth in Chapter 25A of the North Carolina General Statutes.

The Plaintiffs further seek, on behalf of themselves and all others similarly situated actual and statutory damages for the Defendant Carolina Lease Management Group, LLC's unfair debt collection practices and a declaration that the Defendants' practices violate RISA and constitute unfair trade practices under Chapter 75 of the North Carolina General Statutes.

## INTRODUCTION AND
## SUMMARY OF CLAIM UNDER RISA

1.      The Plaintiffs submit, on behalf of themselves and all others similarly situated, that each Plaintiff and class member entered into an agreement for the purchase of a portable storage shed or portable building (hereinafter "Personal Property") through a "rent to own" agreement properly deemed a "consumer credit sale" under North Carolina's Retail Installment Sales Act (RISA), the terms of which violated RISA.

2.      The Plaintiffs and the putative class members each sought to acquire a portable storage shed, loft barn or similar structure from a dealer who advertised and maintained on its sales lots that if a customer did not wish to pay the "cash price" for its portable storage sheds, a "rent to own" option was available.  Many if not all of these transactions took place through dealers for Defendant Old Hickory Buildings, LLC (hereinafter "Old Hickory").

3.      The Plaintiffs' respective "rent to own" transactions were processed on the Old Hickory dealers' sales lots.  The Plaintiffs assert, upon information and belief, that for the "rent to own" transactions and pursuant to a common scheme or plan, ownership of the Property was transferred from Old Hickory to CTH Rentals,

LLC (hereinafter "CTH Rentals") and ultimately to Carolina Lease Management Group, LLC (hereinafter "Carolina Lease" or "CLMG") who then became the "lessor" in the Plaintiffs' "rent to own" agreements.

4. The Plaintiffs submit that the "rent to own" agreements and the credit extended or arranged by the Defendants Old Hickory, CTH Rentals, and CLMG violate the North Carolina Retail Installment Sales Act (RISA). N.C. Gen. Stat. § 25A-1 *et seq.*

5. In a nutshell and as set out in more detail below, RISA's definition of a "consumer credit sale" includes a bailment or lease if the lessee agrees to pay over the life of the lease the value of the goods and services involved and if the lessor must transfer ownership at the end of the lease for no other compensation or for nominal compensation. *See* N.C. Gen. Stat. § 25A-2(b).

6. RISA's definition of a "consumer credit sale" further includes a contract in the form of a lease that is terminable at will by the lessee where the lease is renewed periodically by making the required payments and if the lessor must transfer ownership for no other or nominal consideration after making a specified number of payments. Nominal consideration is defined as no more than 10% of the cash price of the property at the time of the transaction. An additional requirement is that the lessee must pay more than 10% of the value of the property and services over the life of the lease to acquire ownership. N.C. Gen. Stat. § 25A-2(b)(1) and (b)(2).

7.     These provisions in RISA reflect a legislative intent to protect North Carolina consumers and to protect the equity those consumers acquire in the property by ensuring that sellers do not evade North Carolina's statutory limits on finance charges for consumer credit sales by structuring a transaction as a terminable lease but which is, in reality, a credit sale under RISA.

8.     When a transaction meets RISA's definition of a consumer credit sale, RISA's other provisions will govern the transaction such as capping the maximum finance charge and interest payable to the seller or lessor.  N.C. Gen. Stat. § 25A-15.

9.     RISA further mandates remedies and penalties should a seller or lessor violate the applicable provisions.  For example, if a transaction requires payment of more than two times (2x) the finance charge allowed under RISA, the contract shall be void and the seller shall not recover anything under the contract. The purchaser is also allowed to retain the goods without liability.  N.C. Gen. Stat. § 25A-44(2).

10.     Further, by ignoring North Carolina law applicable to "consumer credit sales"  under RISA and because the finance charges imposed, collected and/or charged  exceed the maximum allowed rates under RISA, Carolina Lease Management sometimes engaged in illegal debt collection activities in violation of Article Two, Chapter 75 of the North Carolina General Statutes.

<u>PARTIES</u>

11.     The Plaintiff Hank Bland is an individual and is a citizen and resident of Craven County, North Carolina.

12.     The Plaintiff Kendell Jackson is an individual and is a citizen and resident of Cumberland County, North Carolina.

13.     The Plaintiff Luetta Inniss is an individual and is a citizen and resident of Cumberland County, North Carolina.

14.     Carolina Lease Management Group, LLC is a foreign limited liability company formed under the laws of the State of Tennessee and is authorized to do business in North Carolina by the North Carolina Secretary of State (SOS #1095248) and may be served with process directed to its registered agent Registered Agents, Inc., located at 4030 Wake Forest Road, Ste. 349, Raleigh, NC 27609.

15.     CTH Rentals, LLC is a foreign limited liability company formed under the laws of the State of Tennessee and is authorized to do business in North Carolina by the North Carolina Secretary of State (SOS #1088370) and may be served with process directed to its registered agent Registered Agents, Inc., located at 4030 Wake Forest Road, Ste. 349, Raleigh, NC 27609.

16.     Old Hickory Buildings, LLC is a foreign limited liability company formed under the laws of the State of Tennessee and is authorized to do business in North Carolina by the North Carolina Secretary of State (SOS #1067070) and may be served with process directed to its registered agent Cogency Global, Inc. located at 212 S. Tryon Street, Ste. 1000, Charlotte, NC  28281-0001.

## JURISDICTION and VENUE

16.     A Superior Court of North Carolina may properly exercise jurisdiction over the defendants pursuant to N.C. Gen. Stat. § 1-75.4 in that all defendants are registered with the North Carolina Secretary of State to do business within the state and are, in fact, engaged in substantial activity within this State.

17.     Venue is proper in the Court in which this action was originally filed pursuant to N.C. Gen. Stat. § 1-82 in that the Plaintiff Hank Bland is a citizen and resident of Craven County, North Carolina.

18.     The defendants timely removed this action to this Court on April 8, 2022, based on diversity jurisdiction under 28 U.S.C. § 1332(a).  The Plaintiffs submit that this Court lacks subject matter jurisdiction of this action under diversity jurisdiction and the action should be remanded to state court.

## FACTUAL ALLEGATIONS

19.     The Plaintiffs Hank Bland, Kendell Jackson and Luetta Innis each sought to acquire a portable storage structure from an Old Hickory Buildings, LLC dealer doing business within the State of North Carolina.

20.     On or about August 20, 2018, the Plaintiff Hank Bland visited an Old Hickory dealer located at 7610 NC 11 North in Ayden, North Carolina and doing business as "East Side Storage Sales".  Mr. Bland wanted to obtain a storage shed to store personal items, a lawnmower, and other personal property.

21.     On or about September 9, 2018, the Plaintiff Kendell Jackson visited an Old Hickory dealer located at 14298 Hwy 210 South in Spring Lake, North

Carolina and doing business as "West Storage Company".  He likewise wanted to acquire a storage shed to store personal items such as yard tools, a lawnmower, and assorted items.

22.     On or about June 18, 2018, Luetta Inniss visited an Old Hickory dealer located at 14298 Hwy 210 South in Spring Lake, North Carolina, and doing business as "West Storage Company".  She likewise wanted to acquire a storage shed to store personal items such as yard tools, Christmas decorations, a lawnmower and other personal items.

23.     After viewing the inventory on each dealers' lots, each Plaintiff was either unable or unprepared to pay the requested "cash price" which included the applicable sales tax to purchase their desired portable storage structure at that time.

24.     Upon information and belief, Old Hickory, which maintains a network of independent dealers in North Carolina, advertises through its marketing brochures as well as with signs and other "informational flyers" located on the dealers' lots that there is a "rent to own" program in place for those people who may not be able to pay the cash price for a desired portable storage shed.  If the "rent to own" option was pursued by a potential customer, the Old Hickory dealer would process the transaction immediately right there on the sales lot through a computer terminal or other equipment located on the dealer's sales lot.

25.     The Plaintiffs all elected to pursue the "rent to own" option to purchase their respective portable storage sheds.  Paperwork was prepared on the spot and

each Plaintiff initialed and signed similar form documents on the Old Hickory dealers' lots.

26. Attached hereto as Exhibit A is documentation prepared for and signed or initialed by the Plaintiff Hank Bland. This documentation includes a "work order" dated August 20, 2018, prepared by and referencing Old Hickory and signed by Mr. Bland. Exhibit A-1. A document bearing "CTH Rentals, LLC" contact information and appears to be a "bill of sale" for the portable storage shed detailing the property serial number, sales price, sales tax, and other details of the transaction is attached hereto as Exhibit A-2. A third document attached hereto as Exhibit A-3 is designated as a "Rental Purchase Agreement and Disclosure Statement" and indicates that the Defendant Carolina Lease Management is the lessor of the Personal Property Mr. Bland wished to acquire through a "rent to own" transaction.

27. The "Rental Purchase Agreement and Disclosure Statement" dated August 20, 2018, and signed by Mr. Bland (Exhibit A-3) appears as a "rent to own" transaction with the Defendant Carolina Lease Management Group as the lessor of the Property. The "total pre-tax cost" is listed as $4,730.00 plus sales tax and Mr. Bland would achieve ownership of the Personal Property after making 48 payments of $210.88 ($197.08 + $13.80 sales tax) for a total cost $10,122.24. The Agreement automatically renews each month that Mr. Bland makes his monthly payment and only Mr. Bland may terminate the Agreement. As long as Mr. Bland makes the

payments under the Agreement, the Agreement will remain in force until Mr. Bland achieves ownership after the specified number of payments. Exhibit A-3.

28.     Attached hereto as Exhibit B is documentation prepared for and signed or initialed by the Plaintiff Kendell Jackson.  This documentation includes a "work order" dated September 7, 2018, prepared by and referencing Old Hickory and signed by Mr. Jackson.  Exhibit B-1.  A document bearing "CTH Rentals, LLC" contact information and appears to be a "bill of sale" for the portable storage shed detailing the property serial number, sales price, sales tax, and other details of the transaction is attached hereto as Exhibit B-2.  A third document attached hereto as Exhibit B-3 is designated as a "Rental Purchase Agreement and Disclosure Statement" and indicates that the Defendant Carolina Lease Management is the lessor of the Personal Property Mr. Jackson wished to acquire through a "rent to own" transaction.

29.     The "Rental Purchase Agreement and Disclosure Statement" dated September 7, 2018, and signed by Mr. Jackson (Exhibit B-3) appears as a "rent to own" transaction with the Defendant Carolina Lease Management Group as the lessor of the Property.  The "total pre-tax cost" is listed as $6,000.75 plus sales tax and Mr. Jackson would achieve ownership of the Personal Property after making 48 payments of $267.37 ($249.88 + $17.49 sales tax) for a total cost $12,833.76.  The Agreement automatically renews each month that Mr. Jackson makes his monthly payment and only Mr. Jackson may terminate the Agreement.  As long as Mr. Jackson makes the payments under the Agreement, the Agreement will remain in

force until Mr. Jackson achieves ownership after the specified number of payments. Exhibit B-3.

30.     Attached hereto as Exhibit C is documentation prepared for and signed or initialed by the Plaintiff Luetta Inniss.  This documentation includes a "work order" dated September 7, 2018, prepared by and referencing Old Hickory and signed by Ms. Inniss.  Exhibit C-1  A document bearing "CTH Rentals, LLC" contact information and appears to be a "bill of sale" for the portable storage shed detailing the property serial number, sales price, sales tax, and other details of the transaction is attached hereto as Exhibit C-2.  A document attached hereto as Exhibit C-3 is designated as a "Rental Purchase Agreement and Disclosure Statement" and indicates that the Defendant Carolina Lease Management is the lessor of the Personal Property Ms. Inniss wished to acquire through a "rent to own" transaction.

31.     The "Rental Purchase Agreement and Disclosure Statement" dated June 18, 2018, and signed by Ms. Inniss (Exhibit C-3) appears as a "rent to own" transaction with the Defendant Carolina Lease Management Group as the lessor of the Property.  The "total pre-tax cost" is listed as $2,556.00 plus sales tax and Ms. Inniss would achieve ownership of the Personal Property after making 48 payments of $113.96 ($106.50 + $7.46 sales tax) for a total cost $5,470.08.  The Agreement automatically renews each month that Mr. Jackson makes his monthly payment and only Ms. Inniss may terminate the Agreement.  As long as Ms. Inniss makes

the payments under the Agreement, the Agreement will remain in force until Ms. Inniss achieves ownership after the specified number of payments. Exhibit C-3.

32.    Upon information and belief, at or about the same time on June 18, 2018, Ms. Inniss also signed an "Old Hickory Buildings Order Sheet" for the purchase of her storage shed substantially similar to those signed by Plaintiff Bland and Plaintiff Jackson attached hereto as Exhibits A-1 and B-1 though Ms. Inniss does not possess the order form at present.

33.    Under the agreements signed by Mr. Bland, Mr. Jackson and Ms. Inniss, once the final payments of $210.88, $267.37 and $113.96 respectively are paid by the Plaintiffs, then the Defendant Carolina Lease Management as "Lessor" under the agreements is obligated to transfer ownership of the property to the Plaintiffs.

34.    None of the Plaintiffs had any input as to the terms of the transaction. None of the plaintiffs were presented with any options as to other companies available that could finance the proposed "rent to own" transaction or that would be acceptable as alternatives by the Defendant Old Hickory.

35.    Once the agreements for the "rent to own" transaction were signed by the Plaintiffs herein, the portable storage sheds were delivered to each Plaintiff's respective home.

36.    Since the Plaintiffs entered into the Agreements for the "rent to own" transaction described herein, they have each paid a substantial amount to Defendant Carolina Lease Management pursuant to these "rent to own"

agreements. Upon information and belief, Mr. Bland has paid approximately $7,500.00, Mr. Jackson has paid approximately $10,700.00 and Ms. Inniss has paid approximately $4,700.00.

37.    The Plaintiffs are informed and believe that the Defendants Old Hickory, CTH Rentals and Carolina Lease Management work together to arrange and enter into numerous "rent to own" transactions for personal property across the State of North Carolina through the use of standard "form" contracts substantially similar to the ones entered into by the Plaintiffs Mr. Bland, Mr. Jackson and Ms. Inniss.

38.    The Plaintiffs further allege, on information and belief, that Old Hickory, through its network of independent dealers across the State of North Carolina, establishes and sets for its dealers the prices and procedures as to how each dealer is to handle "cash sales" and "rent to own" sales.

39.    The Plaintiffs allege, upon information and belief, that for each "rent to own" transaction processed by an Old Hickory dealer located in North Carolina such as the ones referenced above and for all class members, the dealers are required to utilize the procedures established by Old Hickory, CTH Rentals, and Carolina Lease Management (or any combination thereof) including use of any computer terminals and/or similar equipment for processing "rent to own" sales of Old Hickory products on the Old Hickory dealership lots and to process the transaction through a "rent to own" leasing company specified by Old Hickory, CTH Rentals and Carolina Lease Management (or any combination thereof).

40.     The Plaintiffs are further informed and believe that the Defendants Old Hickory, CTH Rentals and Carolina Lease Management have an existing arrangement whereby the portable storage sheds sold by Old Hickory's network of independent dealers located in North Carolina and sold to North Carolina customers on a "rent to own" basis are routed through as follows:

> (a) the Old Hickory dealer prepares and submits a "work order" to Old Hickory detailing the personal property being purchased;
>
> (b) ownership of the personal property being purchased on a "rent to own" basis is transferred to Defendant CTH Rentals;
>
> (c) Defendant CTH Rentals submits payment to Defendant Old Hickory for the personal property being purchased on a "rent to own" basis;
>
> (d) Defendant CTH Rentals transfers ownership of the personal property being purchased on a "rent to own" basis to Defendant Carolina Lease Management Group;
>
> (e) Defendant Carolina Lease Management Group then enters into the "Rental Purchase Agreement and Disclosure Statement" in a form substantially similar to Exhibits A, B and C attached hereto with the consumer to finalize the "rent to own" transaction.

41.     Upon information and belief, the process as outlined herein occurs on the Old Hickory dealer's sales lot and is accomplished in a very short period of time, while the customer waits.

42.     Upon information and belief, for all North Carolina Old Hickory dealerships, if a customer wants to enter into a "rent to own" transaction as advertised by Old Hickory at its sales lots and in its marketing and advertising materials, all "rent to own" transactions are funneled through CTH Rentals and to Carolina Lease Management.  The local Old Hickory dealer may not "pick and choose" an alternative company to "finance" the "rent to own" transaction nor may the customer choose a different company to "finance" the "rent to own" transaction.

43.     Upon information and belief, Defendant Old Hickory knew or was aware that the Defendant CTH Rentals was purchasing the portable storage sheds from Old Hickory for the purpose of further selling the portable storage shed to other entities including the Defendant Carolina Lease Management in order to finalize the Plaintiffs' and proposed class members "rent to own" transactions in accordance with Old Hickory's advertising and marketing efforts.

44.     Upon information and belief, Old Hickory knew the structure of the "rent to own" transactions as described in the above paragraphs which involved its North Carolina dealers and used the "rent to own" transactions as a means of increasing its sales and profits.

45.     Upon information and belief and as shown by records on file with the North Carolina Secretary of State, Defendant CTH Rentals is a closely related entity to Defendant Carolina Lease Management in that there are common members of both entities including but not limited to Charles T. Hammond, Jr.

46.     Upon information and belief, the Defendant CTH Rentals purchased or acquired portable storage sheds from Old Hickory for the purpose of transferring, selling, assigning or otherwise conveying ownership of the property to its closely related entity Defendant Carolina Lease Management for the purpose of facilitating the Plaintiffs' and proposed class members' "rent to own" transactions as described in the paragraphs above and with the full knowledge and understanding that the Defendant Carolina Lease Management would enter into "rent to own" agreements in a form substantially similar to those in Exhibits A, B and C attached hereto as the "lessor" of the Personal Property.

47.     Upon information and belief, Old Hickory, CTH Rentals and Carolina Lease Management Group are either the sellers or an assignee of a seller within the meaning of North Carolina's RISA.  The term "seller" specifically includes an assignee of the seller's right to payment.  N.C. Gen. Stat. § 25A-6 (definition of "seller" includes assignee).

48.     Upon information and belief, the Defendants Old Hickory, CTH Rentals and Carolina Lease Management entered into an agreement, understanding or common scheme whereby Old Hickory's portable storage sheds would be offered for sale through its North Carolina dealerships on a "rent to own" basis through standard form "rent to own" agreements and financed through defendants CTH Rentals and Carolina Lease Management in a manner substantially as set forth in the preceding paragraphs.

49.    The standard form "rent to own" agreements entered into by the Plaintiffs Bland and Jackson (attached hereto as Exhibits A-3 and B-3) and proposed class members with Carolina Lease Management pursuant to the alleged agreement, understanding or common scheme with Defendant Old Hickory and Defendant CTH Rentals violates North Carolina's Retail Installment Sales Act and is void in that the finance charge is more than twice the maximum rate permitted by law.

50.    The standard form "rent to own" agreement entered into by the Plaintiff Inniss, which is identical in form to the ones entered into by the Plaintiffs Bland and Jackson but is for property with a sales price less than $3,000.00 also has an unlawful finance charge.  The unlawful finance charge sought from the Plaintiff Inniss is less than twice the maximum finance charge permitted under North Carolina's Retail Installment Sales Act but also violates RISA.

51.    The Plaintiff Mr. Bland, upon learning that the "rent to own" agreement with Carolina Lease Management is in violation of North Carolina law, stopped making payments to Carolina Lease Management in August, 2021.  Up until that time, he had made the payments that were ostensibly required under the Agreement.

52.    The Plaintiff Mr. Jackson, upon learning that the "rent to own" agreement with Carolina Lease Management is in violation of North Carolina law, also stopped making payments to Carolina Lease Management in February, 2022.

Up until that time, he had made the payments that were ostensibly required under the Agreement.

53.     The Plaintiff Ms. Inniss, upon learning that the "rent to own" agreement with Carolina Lease Management is in violation of North Carolina law, also stopped making payments to Carolina Lease Management in April, 2022. Up until that time, she had made the payments that were ostensibly required under the Agreement.

54.     The Plaintiff Mr. Bland has been subject to collection activity by the Defendant Carolina Lease Management such as collection calls, text messages demanding payment, demand letters sent to his address along with a notice that the Personal Property may be subject to repossession and/or a lawsuit seeking the recovery of the Personal Property.

55.     Upon information and belief, many members of the proposed class have also been subject to collection calls text messages and demand letters demanding payments allegedly owed, and many have received notices that a lawsuit may be filed against them or that a lawsuit has, in fact, been filed against them seeking the recovery of the Personal Property subject to the void agreement between the class members and the Defendant Carolina Lease Management.

## CLASS ALLEGATIONS

56.     The Plaintiffs Hank Bland, Kendell Jackson and Luetta Inniss are just three of the numerous North Carolina residents who have entered into rental

purchase agreements with Carolina Lease Management for the purchase of portable storage sheds or barns or other personal property.

57.    The form contracts used by Carolina Lease Management and executed by the proposed class members, which are substantially similar to the form contracts executed by the Plaintiffs Bland, Jackson and Inniss, violate the North Carolina Retail Installment Sales Act (RISA).

58.    Mr. Bland, Mr. Jackson, Ms. Inniss and the proposed class members have been and are continuing to be victims of unfair trade practices prohibited under both RISA and Chapter 75 of the North Carolina General Statutes. Mr. Bland and class members who have fallen behind on their payments have also been subjected to illegal debt collection practices.

59.    The Plaintiffs Mr. Bland, Mr. Jackson and Ms. Inniss seek to maintain their claims for relief as pled herein as class claims pursuant to Rule 23 of the North Carolina Rules of Civil Procedure on behalf of themselves and all others similarly situated.

60.    The proposed class definition is as follows:

> All persons residing in North Carolina who entered into a "Rental Purchase Agreement and Disclosure Statement" (the "Agreement") with Carolina Lease Management Group, LLC, for personal property in a form substantially similar to the form contracts that Carolina Lease Management Group, LLC, entered into with Hank Bland, Kendell Jackson and Luetta Inniss attached hereto as Exhibits A, B and C, where either the Agreement was executed within four years of the filing of this action or payments were made on the Agreement within four years of the filing of this action.

61.     The Plaintiffs further propose that three additional subclasses be established as follows:

Subclass 1:  To consist of all persons in the class above who entered into such Rental Purchase Agreement and Disclosure Statement for property with a "cash price" of $3,000.00;

Subclass 2:  To consist of all persons in the class above who entered into such Rental Purchase Agreement and Disclosure Statement for property with a "cash price" of less than $3,000.00;

Subclass 3:  To consists of all persons in the class against whom debt collection activity has been taken by the defendant Carolina Lease Management Group, or any persons, entities or agents acting on its behalf.

62.     Upon information and belief, the class and subclasses are so numerous that joinder of all members is impractical and there are questions of law and fact common to the class and likewise to the proposed subclasses.

63.     The claims and defenses of the Plaintiff Bland are typical of the claims and defenses of the class and Subclass 1 and 3.

64.     The claims and defenses of the Plaintiff Jackson are typical of the claims and defenses of the class and Subclass 1.

65.     The claims and defenses of the Plaintiff Inniss are typical of the claims and defenses of the class and Subclass 2.

66.     The Plaintiffs Mr. Bland, Mr. Jackson and Ms. Inniss will adequately represent the interests of the class and their respective subclasses and have secured

counsel experienced in class litigation and will protect the interests of the class and subclasses.

67.     For several years, Carolina Lease Management Group, LLC has used a form lease/purchase agreement that is substantially similar to the ones attached hereto as Exhibits A, B and C.  North Carolina's RISA defines the transaction as embodied in the form lease/purchase agreements as "consumer credit sales" and, upon information and belief, defendants CTH Rentals and Old Hickory have engaged in a common scheme or plan with Carolina Lease Management to increase sales and profits through "rent to own" sales in violation of North Carolina's RISA.

68.     For contracts where the "cash price" of the property is more than $3,000.00, Carolina Lease Management is charging, collecting and/or imposing a "finance charge" under the agreements at rates more than two times (2x) the 18% maximum rate authorized under North Carolina's RISA for such consumer credit sales thus rendering the contracts void under North Carolina law.

69.     For agreements where the "cash price" is less than $3,000.00, Carolina Lease Management is charging, collecting and/or imposing "finance charges" under the agreements at rates exceeding the maximum rates authorized under North Carolina's RISA for such consumer credit sales.

70.     Carolina Lease Management is also subjecting numerous North Carolina residents to illegal debt collection practices in attempting to collect amounts that are not legally owed and taking or threatening to take actions for

which it may not legally take in violation of Article Two of Chapter 75 of the North Carolina General Statutes.

71.     Carolina Lease Management has acted and continues to act and will continue to act on grounds generally applicable to the class and subclasses making injunctive or declaratory relief appropriate with respect to the class as a whole. Separate actions by individual members of the class would create a risk of inconsistent adjudications with respect to individual members of the class and establish inconsistent standards of conduct for Carolina Lease Management.

72.     Questions of law and fact common to the members of the class predominate over any question affecting only an individual member or members and a class action is superior to other available methods for the fair and effective adjudication of the controversy. These questions include but are not limited to:

(a)  Is the agreement in the form of Exhibits A,B and C a "consumer credit sale" as defined under North Carolina's RISA?

(b)  Is the agreement in the form of Exhibits A and B void as against public policy under N.C. Gen. Stat. § 25A-44?

(c)  May the consumers who entered into agreements in the form of Exhibits A and B recover all of the money paid under the agreement?

(d)  May the consumers who entered into the agreements in the form of Exhibits A and B retain the personal property without liability?

(e)  May the consumers who entered into the agreements in the form of Exhibits A and B and who had the personal property repossessed by

CLMG recover the value of the personal property as a measure of damages?

(f) Does the agreement in the form of Exhibit C charge more interest than is permitted under N.C. Gen. Stat. § 25A-44?

(g) May the consumers who entered into agreements in the form of Exhibit C be relieved of any obligation to pay finance charges and recover the amount of any finance charge that has been received by CLMG, plus reasonable attorney's fees incurred as determined by the court?

(h) May the class members recover three times the sum of all improper charges if not refunded within 10 days of written request?

(i) Do the pleadings in this action constitute a written request for refund under N.C. Gen. Stat. § 25A-44(3)?

(j) Did CLMG commit unfair and deceptive acts or practices in leasing personal property pursuant to the agreements in the form of Exhibits A, B and C attached hereto?

(k) Did CLMG knowingly or willfully commit unfair and deceptive acts or practices in leasing personal property pursuant to the agreements in the form of Exhibits A, B and C attached hereto?

(l) May money paid under the contracts in the form of Exhibits A and B be trebled as damages under North Carolina's Unfair Trade Practices Act?

(m) Does Old Hickory's conduct in arranging, extending or assigning for credit for these "rent to own" sales make it subject to liability under North Carolina's Retail Installment Sales Act?

(n) Does CTH Rentals' conduct in arranging, extending credit or assigning any right to payment for these "rent to own" transactions make it subject to liability under North Carolina's Retail Installment Sales Act?

(o) Are Old Hickory and/or CTH Rentals liable as co-conspirators along with CLMG?

## CLAIMS FOR RELIEF INDIVIDUALLY AND ON BEHALF OF THE CLASS AND SUBCLASSES

73.     The Plaintiffs, Hank Bland, Kendell Jackson and Luetta Inniss, on their own behalf and on behalf of the members of the class and subclasses, assert the following claims for relief:

## FIRST CLAIM FOR RELIEF
### (Declaratory Judgment)

74.     The allegations in Paragraphs 1 through 73 are realleged and incorporated by reference as if set forth fully herein.

75.     The Plaintiffs Mr. Bland, Mr. Jackson and Ms. Inniss, on behalf of themselves and the class, are entitled to and request a declaration that the agreements attached hereto as Exhibits A, B and C and incorporated by reference, along with the similar contracts that the other class members entered into with Carolina Lease Management Group, LLC, constitute "consumer credit sale[s]"

under North Carolina's Retail Installment Sales Act (RISA) set forth under Chapter 25A of the North Carolina General Statutes.

76. The Plaintiffs on behalf of themselves and the class, are entitled to and request a declaration that in using these form contracts or agreements, Carolina Lease Management is imposing, charging and/or collecting a finance charge in excess of that allowed under North Carolina's RISA.

77. The Plaintiffs Mr. Bland and Mr. Jackson on behalf of themselves and the class, are entitled to and request a declaration that the agreements attached hereto as Exhibits A and B and all form contracts utilized by CLMG for personal property with a sales price of $3,000.00 or more and that are substantially similar to the agreements attached hereto as Exhibits A and B are void under N.C. Gen. Stat. § 25A-44(2).

78. The Plaintiffs Mr. Bland and Mr. Jackson on behalf of themselves and the class, are entitled to and request a declaration that

      (a)    Carolina Lease Management Group must refund all excessive interest within 10 days of request;

      (b)    that this lawsuit constitutes such request; and

      (c)    that CLMG is liable to them for an amount equal to three times the sum of all improper charges which have not been rebated or refunded within the 10-day period.

79. The Plaintiffs Mr. Bland and Mr. Jackson on behalf of themselves and the class, are entitled to and request a declaration that any attempts by CLMG to collect any money, fee, or charge of any sort under the agreements attached hereto as Exhibits A and B would constitute violations of the North Carolina debt

collection statute set forth under Article Two of Chapter 75 of the North Carolina General Statutes.

80.     The Plaintiff Luetta Inniss, on behalf of herself and the subclass of similarly situated individuals, is entitled to and requests a declaration that

a)      CLMG shall not be permitted to recover any finance charge under the agreements substantially similar to Exhibit C and,

b)      the Defendants are liable to her and the subclass in an amount that is two times the amount of any finance charge that has been received by the Defendants, plus reasonable attorney's fees;

c)      that the Defendants must refund said excessive interest within 10 days of request;

d)      that this lawsuit constitutes such request; and

e)      that the Defendants are liable to the Plaintiff and the subclass for an amount equal to three times the sum of all improper charges which have not been rebated or refunded within the 10-day period.

81.     The Plaintiffs, on behalf of themselves and the class, are further entitled to and request a declaration that the actions and practices of Carolina Lease Management Group in preparing and entering into these agreements constitute an unfair trade practice within the meaning of Article 1, Chapter 75 of the North Carolina General Statutes.

## SECOND CLAIM FOR RELIEF
### (Transactions Void under NC RISA Statute)

82.     The allegations in Paragraphs 1 through 81 are re-alleged and incorporated by reference as if set forth fully herein.

83. The Plaintiffs and the other class members entered into these lease/purchase transactions for "consumer" purposes that is, the portable storage sheds and other personal property were purchased for a "personal, family, household, or agricultural purpose." N.C. Gen. Stat. § 25A-2(a).

84. The storage sheds and other personal property were delivered to the Plaintiffs' residences and to the North Carolina residences or property of the other class members.

85. North Carolina's RISA applies to "consumer credit sales as hereinafter defined" and governs the transactions between Carolina Lease Management on the one hand, and the Plaintiffs and other class members on the other. N.C. Gen. Stat. § 25A-1.

86. Under North Carolina's Retail Installment Sales Act, a

> sale includes but is not limited to any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the goods and services involved, and it is agreed that the bailee or lessee will become, or for no other or for a nominal consideration, has the option to become, the owner of the goods and services upon full compliance with his obligations under such contract.

N.C. Gen. Stat. 25A-2(b).

87. The definition of "sale" under North Carolina's RISA specifically

> includes a contract in form of a terminable bailment or lease of goods or services in which the bailee or lessee can renew the bailment or lease contract periodically by making the payment or payments specified in the contract if:

> (1) [t]he contract obligates the bailor or lessor to transfer ownership of the property to the bailee or lessee for no

other or a nominal consideration (no more than ten percent
10% of the cash price of the property at the time the bailor
or lessor initially enters into the contract with the bailee
or lessee) upon the making of a specified number of payments
by the bailee or lessee;

and

(2) [t]he dollar total of the specified number of payments
necessary to exercise the purchase option is more than
ten percent (10%) in excess of the aggregate value of the
property and services involved. For the purposes of this
subsection, the value of the goods shall be the average
cash retail value of the goods. [ . . . ]. If a contract is found
to be a sale under this subsection, these values shall be
used to determine the amount financed for purposes of
G.S. 25A-15.

N.C. Gen. Stat. § 25A-2(b).

88.     Carolina Lease Management provided no services to Plaintiffs over

and above those included in the cash price, and no other services or only nominal

services over and above those included in the cash price were ever provided by

CLMG to other class members.

89.     As set forth in Paragraph 2F of the agreements attached hereto as

Exhibits A, B and C, and set forth in the similar form agreements used by CLMG,

the lessee will pay substantially more than the aggregate value of the property and

services purchased under the agreement and, after making a set number of

payments, the lessor CLMG is obligated to transfer ownership to the lessee for no

additional or nominal consideration, thus meeting the first part of the definition of

the "consumer credit sale" under North Carolina's RISA statute.

90.     As set forth in Paragraph 2E of the agreements attached hereto as

Exhibits A, B and C and as set forth in the similar form agreements of the other

class members, this transaction is a terminable lease--that is, the lessee may but is not required to renew the term of the lease by making the payments under the lease.

91.    Under § 25A-2(b), if a transaction is a consumer transaction and meets the criteria set out in the statute, the transaction is deemed a "consumer credit sale" under North Carolina's RISA.

92.    In these transactions, CLMG is obligated to transfer ownership of the goods if the lessee makes the "specified number" of payments (48 payments in Exhibits A, B and C).  No additional consideration is required of the lessee and the first part of the "sale" definition is satisfied.  N.C. Gen. Stat. § 25A-2(b)(1).

93.    In the Plaintiffs' and other class members' contracts, the second part of the definition of "sale" is met because the sum of the required payments is more than 10% of the "average cash retail value" of the goods sold.  N.C. Gen. Stat. § 25A-2(b)(2).  A summary of all three of the Plaintiffs' transactions with CLMG is attached hereto as Exhibit D and incorporated by reference.

94.    Because the Plaintiffs' and the other class members' transactions with CLMG meet the definition of a "sale" under North Carolina's RISA, the transactions are consumer credit sales governed by Chapter 25A of the General Statutes even though the transactions are terminable by the lessee/purchaser.

95.    North Carolina's RISA further states that a consumer credit sale is deemed to have been made in North Carolina when offered or agreed to be sold to a North Carolina resident.  The Plaintiffs and all the other class members were North

Carolina residents at the time they entered into the transactions within North Carolina. *See* N.C. Gen. Stat. §25A-2(d).

96.    For a transaction governed by North Carolina's RISA, the maximum interest rate that may be charged is 18% per annum if $3,000.00 or more is financed. N.C. Gen. Stat. § 25A-15(b).

97.    The finance charge imposed by CLMG on the transactions with the Plaintiffs' and the other class members exceeds the maximum amount authorized under North Carolina's RISA.

98.    The finance charge imposed by CLMG on the Plaintiffs Mr. Bland, Mr. Jackson and the other Subclass 1 members exceeds the maximum amount allowed under RISA by over two times (2x). *See* Exhibit D attached hereto and incorporated by reference.

99.    North Carolina's RISA provides that if "a consumer credit sale requires payment of a finance charge of more than two times (2x) that permitted by this Chapter, the contract shall be void." N.C. Gen. Stat. § 25A-44(2).

100.    In addition to any other remedies that may be available to the Plaintiffs Mr. Bland, Mr. Jackson and to the other class members, because the contracts are void, the lessee/purchaser may recover all sums paid under the agreements and may retain without any liability any goods delivered under the agreements or recover the value of the property if the Defendant CLMG previously and wrongfully obtained possession of the property. N.C. Gen. Stat. § 25A-

44(2)(prohibiting the seller or seller's assignee from recovering anything under the contract).

101.    North Carolina's RISA also provides that "[t]en days after receiving written request therefor, the seller (or assignee of the seller) shall be liable to the buyer for an amount equal to three times the sum of . . . all improper charges which have not been rebated or refunded within the 10-day period" from such request. N.C. Gen. Stat. § 25A-44(3).  By filing this action, the Plaintiffs and the putative class have effectively requested such refunds from Defendants.

102.    The Plaintiffs Hank Bland, Kendell Jackson and Luetta Inniss further allege that the Defendant Old Hickory is a "seller" within the meaning of North Carolina's RISA in that it "is one regularly engaged in the business of selling goods" and "who in the ordinary course of business regularly extends or arranges for the extension of consumer credit, or offers to extend or arrange for the extension of such credit".  N.C. Gen. Stat. §§ 25A-2(a)(1); 25A-6.

103.    As alleged in the above paragraphs and incorporated by reference herein, Old Hickory offers to extend or offers to arrange for credit through a "rent to own" program maintained on its several dealership lots located within and throughout the State of North Carolina.

104.    Old Hickory is a "seller" within the meaning of North Carolina's RISA in that, upon information and belief, and as part of its ordinary course of business

> (a)    it sold to CTH Rentals the portable storage sheds
> to be purchased by the Plaintiffs with the understanding
> the property would be sold pursuant to a "rent to own"
> transaction; and/or

    (b)    arranged for the extension of credit through CTH Rentals and Carolina Lease Management as the "rent to own" financing entity; and/or

    (c)    or through such other means as may be demonstrated through discovery and proved at trial by which Old Hickory is a "seller" within the meaning of RISA.

105.    CTH Rentals is a "seller" within the meaning of North Carolina's RISA in that, upon information and belief, as part of its ordinary course of business

    (a)    it sold the portable storage shed to the Plaintiffs to Carolina Lease Management with the understanding the sheds would be sold pursuant to a "rent to own" transaction; and/or

    (b)    arranged for the extension of credit through the use of Carolina Lease Management as a "rent to own" financing entity; and/or

    (c)    or through such other means as may be demonstrated through discovery and proved at trial by which CTH Rebtaks is a "seller" within the meaning of RISA.

106.    Upon information and belief, Carolina Lease Management, CTH Rentals and Old Hickory Buildings entered into a common scheme to finance the sale of portable storage buildings through "rent to own" transactions with the Plaintiffs and the other class members.

107.    The Plaintiffs, through counsel's investigation of court records, have found many instances where agreements between Carolina Lease Management and North Carolina residents within the proposed class period for the lease/purchase of personal property exceed by more than two times (2x) the maximum interest rate allowed under North Carolina's RISA. Additionally, upon information and belief, there is likely a substantial number of agreements between the Defendant Carolina

Lease Management and class members that have not been the subject of court action or filings. For example, the named plaintiffs herein were not subject to court action and their transactions with the defendant Carolina Lease Management would not have been in the public record.

108. The Plaintiffs and other class members have been damaged by the concerted acts and agreement and understanding, either express or implied, among the Defendants herein, to circumvent the dictates of North Carolina law which resulted in substantial damages to Plaintiffs and the other class members.

### THIRD CLAIM FOR RELIEF
### (Excessive Finance Charges of Less Than 2x Permitted Amounts)

109. The allegations in Paragraphs 1 through 108 are re-alleged and incorporated by reference as if set forth fully herein.

110. The finance charge imposed by Carolina Lease Management Group on the transactions with the Plaintiff Luetta Inniss and the other Subclass 2 members exceeds the maximum amount authorized under North Carolina's RISA, but by less than two times the maximum amount.

111. The Defendants are liable to the Plaintiff Luetta Inniss and other Subclass 2 members in an amount that is two times the amount of any finance charge that has been received by the Defendants, plus reasonable attorney's fees incurred by the Plaintiff Inniss and the other Subclass 2 members as determined by the court. N.C. Gen. Stat. § 25A-44(1).

112.    The Defendants are also liable to the Plaintiff Inniss and the other

Subclass 2 members for an amount equal to three times the improper charges which

have not been refunded as requested herein. N.C. Gen. Stat. § 25A-44 (3).

## FOURTH CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices)

113.    The allegations in Paragraphs 1 through 112 are re-alleged and

incorporated by reference as if set forth fully herein.

114.    Upon information and belief, Carolina Lease Management enters into

numerous rental purchase agreements with North Carolina residents that they are

unable to afford, as indicated in the many proofs of claim that have been filed in

North Carolina bankruptcy courts and numerous small claims actions against

individuals in the state courts of North Carolina.

115.    Upon information and belief, CLMG either enters into or is assigned

many more rental purchase agreements with North Carolina residents as described

in the preceding paragraphs that are not reflected in proofs of claim filed through

the federal court PACER system or reflected in the North Carolina Administrative

Office of the Courts computer system.

116.    These actions by Carolina Lease Management, Old Hickory and CTH

Rentals as alleged in the preceding paragraphs herein are "in and affecting

commerce" within the meaning of N.C. Gen. Stat. § 75-1.1.

117.    The North Carolina Retail Installment Sales Act states that a knowing

and willful RISA violation is also a violation of § 75-1.1.  *See* N.C. Gen. Stat. § 25A-

44(4).

118.    The Plaintiffs Hank Bland, Kendell Jackson, Luetta Inniss and the
other class members paid substantial amounts of money to CLMG which it was not
entitled to receive because the Rental-Purchase Agreements charge excessive and
unlawful amounts of interest.  Upon information and belief, Old Hickory and CTH
Rentals also benefitted financially from this arrangement.

119.    Upon information and belief, Mr. Bland has paid approximately
$7,591.68, Mr. Jackson has paid approximately $10,694.80 and Ms. Inniss has paid
approximately $4,700.00 to Carolina Lease Management pursuant to the purported
agreements made in violation of this State's statutes and public policy.

120.    That, in addition to the violations of the North Carolina Retail
Installment Sales Act (RISA), the Defendants have engaged in unfair and deceptive
trade practices whereby hundreds if not thousands of "rent to own" agreements
substantially similar to those attached hereto as Exhibits A, B and C seek to collect
unlawful fees, interest, to which the Defendants are not entitled to impose, collect
or charge including but not limited to, upon information and belief, "convenience
fees" for making payments electronically, and that the Defendants' violation of
North Carolina's RISA through hundreds if not thousands of agreements like the
named plaintiffs herein are inherently deceptive through excessive charges,
interest, and such other deceptive acts and practices including but not limited to the
Defendants' including a provision that the agreements are not subject to North
Carolina law which imply that North Carolina consumers are without redress all of

which combine and constitute unfair trade practices in violation of N.C. Gen. Stat. § 75-1.1.

121.    Carolina Lease Management has engaged in further unfair and deceptive actions against Plaintiffs and the other class members by knowingly and willfully demanding sums which it was not entitled to receive because CLMG's rental purchase agreements violate North Carolina's RISA or through obtaining possession of property to which it was not entitled through replevin actions.

122.    Carolina Lease Management has willfully and knowingly violated the North Carolina Retail Installment Sales Act and § 75-1.1 as alleged in the preceding paragraphs in that the limits on finance charges in North Carolina's RISA are unambiguous and clearly stated as applying to terminable lease/purchase agreements like the ones at issue in this case.

123.    Carolina Lease Management further recklessly disregarded the North Carolina RISA upon choosing to do business in North Carolina for the lease/purchase of personal property and, as a result of its reckless disregard of North Carolina law, has systematically, routinely and persistently charged excessive and unlawful interest, fees, and engaged in such other unfair and deceptive practices that violate Chapter 75 of the North Carolina General Statutes.

124.    Carolina Lease Management's actions and those actions, commissions or omissions undertaken with Defendants CTH Rentals and Old Hickory in furtherance of a common plan or scheme actually and proximately caused the damages alleged above to Mr. Bland, Mr. Jackson, Ms. Inniss and the other class

members through the imposition of "finance charges," fees and other charges not authorized by law. It was reasonably foreseeable that the Defendants' actions would cause such damages, including payments beyond those permitted by law.

125.   The Plaintiffs Mr. Bland, Mr. Jackson, Ms. Inniss and the class members are entitled to have their actual damages trebled pursuant to N.C. Gen. Stat. § 75-16 and to recover attorney's fees incurred in pursuing this matter pursuant to N.C. Gen. Stat. § 75-16.1

### FIFTH CLAIM FOR RELIEF
(Civil Conspiracy)

126.   The allegations in Paragraphs 1 through 125 are re-alleged and incorporated by reference as if set forth fully herein.

127   The Defendants Old Hickory, CTH Rentals and Carolina Lease Management agreed to engage in unlawful conduct or agreed to engage in conduct that is unlawful, and did commit unlawful acts, against the named Plaintiffs and members of the Plaintiff Class and Subclasses through a deceptive and illegal scheme involving, among other actions, the violations of North Carolina's Retail Installment Sales Act and Sections 75-1.1, *et seq.* as alleged above.

128.   The Defendants' conspiracy has proximately caused injury to the named Plaintiffs and members of the Plaintiff Class and Subclasses as alleged above.

129.   The Plaintiffs Mr. Bland, Mr. Jackson, Ms. Inniss and the members of the Plaintiff Class and Subclasses have been damaged by the Defendants' civil conspiracy to commit the wrongful acts as alleged herein.

130.   Due to their civil conspiracy, the Defendants are liable, jointly and severally, for the consequences of each other's unlawful conduct against named the Plaintiffs and the members of the Plaintiff Class and Subclasses.

## SIXTH CLAIM FOR RELIEF
### (Unfair Debt Collection Practices against CLMG only)

131.   The allegations in Paragraphs 1 through 130 are re-alleged and incorporated by reference as if set forth fully herein.

132.   The Plaintiff Mr. Bland and other Subclass 3 members incurred an alleged debt for consumer purposes within the meaning of N.C. Gen. Stat. § 75-50(1) in that they entered into a transaction for portable storage sheds to store miscellaneous household items or other personal property for household use as alleged above.

133.   Carolina Lease Management engages, directly or indirectly, in debt collection from consumers and is a "debt collector" within the meaning of N.C. Gen. Stat. § 75-50(3).  It is not a "collection agency" regulated under Chapter 58 of the North Carolina General Statutes.

134.   Carolina Lease Management violated the general provisions of § 75-52 by demanding money from Mr. Bland pursuant to a transaction that was void and cannot support Carolina Lease Management's claim for money owed.

135.   By thus demanding payment as alleged above, CLMG misrepresented or falsely characterized the legal status of the alleged debt in violation of the general provisions of N.C. Gen. Stat. § 75-54 and the specific provisions under § 75-54(4).

136.    The Plaintiff Hank Bland and each member of Subclass 3 who are or were subject to collection activities are entitled to recover the amount of their actual damages, plus a civil penalty of not less than $500 nor more than $4,000 for CLMG's violations of Article Two, Chapter 75 of the North Carolina General Statutes.

137.    As a result of CLMG's knowing and willful, unfair and deceptive acts, named Plaintiff Bland, members of the Subclass 3, and their counsel, are further entitled to recover, and request, an award of attorney fees pursuant to N.C. Gen. Stat. § 75-16.1.

## SEVENTH CLAIM FOR RELIEF
### (Joint Venture Among Defendants)

138.    The allegations in Paragraphs 1 through 137 are re-alleged and incorporated by reference as if set forth fully herein.

139.    Upon information and belief, the defendants Old Hickory, CTH Rentals and Carolina Lease Management have entered into a joint venture to provide for an increased sales of Old Hickory products and the corresponding increase in revenue and profits to Old Hickory and CTH Rentals and Carolina Lease Management as participants in the joint venture.

140.    Upon information and belief and as alleged above and incorporated herein, the mechanism for achieving the increased sales, revenue and profits was through Old Hickory offering a "rent to own" financing program through its dealers located in North Carolina.

141.    As alleged above and as indicated through the exhibits attached hereto, each Plaintiff signed or initialed an Old Hickory "work order" (Exhibits A-1, B-1, C-1) while at the local Old Hickory dealer's lot.  Almost immediately thereafter, the Plaintiffs signed or initialed a CTH Rentals "bill of sale" (Exhibits A-2, B-2, C-2) and then signed or initialed a Carolina Lease Management "rent to own" agreement setting forth the details of the transaction (Exhibits A-3, B-3, C-3).

142.    Upon information and belief, CTH Rentals and Old Hickory, as part of and to facilitate the joint venture among the defendants, acts as the exclusive purchaser of Old Hickory products in North Carolina for all "rent to own" transactions that take place in North Carolina for the class period set forth above.

143.    Joint ventures transacting business in North Carolina are governed by substantially the same rules as a partnership and each partner can be held individually liable for the obligations of the partnership.

144.    Defendants engaged in a joint venture to increase their profits through the "rent to own" transactions alleged herein. They took the actions alleged herein in furtherance of such joint venture and in violation of North Carolina's RISA and Unfair Trade Practices Act. These violations caused damages to the Plaintiffs herein and to the class members, as alleged herein, the.

145. Defendants are therefore jointly and severally liable for the damages of the Plaintiffs and members of the class.

WHEREFORE, the Plaintiffs pray, on behalf of themselves and for all others similarly situated, this Court for the following relief:

1.    That this Court enter a declaratory judgment as requested in this Complaint, including but not limited to declaring Carolina Lease Management's standard Rental Purchase Agreement void under North Carolina law as to the Plaintiffs Bland and Jackson and all Subclass 1 members;

2.    That Mr. Bland, Mr. Jackson and Subclass 1 members have and recover from the Defendants herein, jointly and severally, all amounts paid by the Plaintiffs and class members pursuant to the rental purchase agreements and such other and further damages as may be shown at trial, and that such sum be trebled pursuant to N.C. Gen. Stat. § 75-16;

3.    That Mr. Bland, Mr. Jackson and Subclass 1 members be allowed to retain the personal property without any further liability to Carolina Lease Management, its successors or assigns, as authorized under N.C. Gen. Stat. § 25A-44;

4.    That Ms. Inniss and Subclass 2 members be awarded damages equal to two times the amount of any finance charge paid by them, plus three times the improper charges which have not been refunded, and such other and further damages as may be shown at trial, and that such sum be trebled pursuant to N.C. Gen. Stat. § 75-16.

5.    That in addition to any and all other relief, that all class members who have had their property repossessed by Carolina Lease Management or its agents or

assigns receive damages equal to the fair market value of the property at the time of repossession;

6.     That the Plaintiff Hank Bland and the Subclass 3 members against whom debt collection activities were undertaken by Carolina Lease Management recover statutory damages under Article Two, Chapter 75 of the North Carolina General Statutes of not less than $500 nor more than $4,000 per violation;

7.     That the Plaintiffs Mr. Bland, Mr. Jackson, Ms. Inniss and the class members recover from the Defendants, jointly and severally, reasonable attorney's fees for pursuing this action as authorized under N.C. Gen. Stat. § 25A-44 and N.C. Gen. Stat. § 75-16.1;

8.     That a trial by jury be granted as to all issues as allowed by law;

9.     That the costs of this action be taxed to the Defendants herein; and

10.    For such other and further relief as this Court deems just and proper.

This the __5th__ day of May, 2022.

LAPAS LAW OFFICES, PLLC


By:    *s/ Adrian M. Lapas*
            Adrian M. Lapas
            Attorney for Plaintiffs
            Post Office Box 10688
            Goldsboro, NC 27532
            Telephone: (919) 583-5400
            Facsimile: (919) 882-1777
            N.C. State Bar No.: 20022
            email: adrian@lapaslaw.com

NATIONAL CONSUMER LAW CENTER


By:   *s/ Charles M. Delbaum*
        Charles M. Delbaum
        Attorney for Plaintiffs
        7 Winthrop Square, 4th Floor
        Boston, MA  02110
        Telephone:  (617) 542-8010
        email:  cdelbaum@nclc.org
        (to be admitted *Pro hac vice*)

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that the foregoing FIRST AMENDED COMPLAINT was served on the below listed party or parties or attorney for said party or parties by, unless an alternative method is specified below, depositing a copy hereof, first-class postage prepaid, in the United States mail, addressed to the party or attorney for each said party as follows:

Mr. Jonathan Williams
o/b/o Carolina Lease Management Group
Cedar Grove Law
Post Office Box 1389
Hillsborough, NC  27278
(Via CM/ECF)

This the  5th  day of May, 2022.

LAPAS LAW OFFICES, PLLC


By:   *s/ Adrian M. Lapas*
        Adrian M. Lapas
        Attorney for Plaintiffs