# EXHIBIT A

Settlement Agreement Between
Settling Parties

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
CASE No.: 4:22-CV-33-BO

HANK BLAND, KENDELL )
JACKSON, LUETTA INNISS, for )
themselves and all others similarly )
situated, )
)
Plaintiffs, )
)
v. )
)
CAROLINA LEASE MANAGEMENT )
GROUP, LLC, CTH RENTALS, LLC, )
and OLD HICKORY BUILDINGS, )
LLC, )
)
Defendants. )
_____ )

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
                                  SUPERIOR COURT DIVISION
COUNTY OF JONES                    FILE No.: 21 CvS 134-510

CAROLINA LEASE )
MANAGEMENT GROUP, LLC, )
)
Plaintiff, )
)
v. )
)
CHARLES GREENE, )
)
Defendant. )
_____ )
)
CHARLES D. GREENE, *on behalf* )
*of himself* and *all others* )
similarly situated, )
)
Counterclaimant, )
)

1

```
        v.                          )
                                    )
CAROLINA LEASE                      )
MANAGEMENT GROUP, LLC,              )
                                    )
        Counterclaim Defendant.     )
_____ )
```

## CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement is entered into as of the last date of the signatures below, by and between Hank Bland, Kendell Jackson, Luetta Inniss and Charles Greene (collectively "Plaintiffs") and Carolina Lease Management Group, LLC, and CTH Rentals, LLC (collectively "Settling Defendants"). The parties to this Settlement Agreement (the "Agreement") shall be collectively referred to as the "Parties." This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions herein, and subject to the approval of the Courts in which the above-captioned Lawsuits are pending.

## ARTICLE I
## RECITALS

WHEREAS, Charles Greene, Hank Bland, Kendell Jackson, and Luetta Inniss each entered into a "Rental Purchase Agreement and Disclosure Statement" or a "rent-to-own" agreement to purchase personal property, to wit, a portable storage shed, with Carolina Lease Management Group, LLC, and

WHEREAS, Carolina Lease Management Group, LLC, filed an action against Charles Greene; on April 8, 2021, Charles Greene filed a class counterclaim against Carolina Lease Management Group, LLC, and the action was later transferred to

2

the Superior Court for Jones County, North Carolina, where it was captioned

*Carolina Lease Management Group, LLC v. Charles Greene v. Carolina Lease Management Group, LLC,*[1] case number 21 CvS 134-510 (the "*Greene* Action"); and

WHEREAS, on March 10, 2022, Hank Bland and Kendell Jackson filed a lawsuit individually and on behalf of a proposed class in the Superior Court for Craven County, North Carolina. The action was removed to the United States District Court for the Eastern District of North Carolina and Mr. Bland and Mr. Jackson filed an amended complaint in which Luetta Inniss joined as an additional plaintiff for herself and on behalf of a proposed class, captioned *Hank Bland, Kendell Jackson and Luetta Inniss, on behalf of themselves and all others similarly situated, v. Carolina Lease Management Group, LLC, CTH Rentals, LLC, and Old Hickory Buildings, LLC,* Case No. 4:22-CV-33-BO (the "*Bland* Action");

WHEREAS Plaintiffs in both the *Greene* Action and the *Bland* Action (collectively, the "Lawsuits") asserted claims for relief against Carolina Lease Management Group, LLC based on alleged violations of North Carolina's Retail Installment Sales Act, Chapter 25A of the General Statutes ("RISA"), North Carolina's Unfair Trade Practices Act, Chapter 75 of the General Statutes ("UTPA"), and North Carolina's Debt Collection Act, Chapter 75, Article Two of the General Statutes, ("DCA"). The *Bland* Plaintiffs also sought relief for their alleged RISA and UTPA claims against the additional defendants CTH Rentals, LLC, and

---

[1] This case will be referred to as *Charles Greene v. Carolina Lease Management Group, LLC,* 21 CvS 134-510, Jones County Superior Court. Charles Greene is actually the Defendant and Counterclaim Plaintiff, but he is referred to as a "Plaintiff" to align all of the complaining parties in their typical roles of Plaintiffs.

3

Old Hickory Buildings, LLC. The *Bland* Plaintiffs' claims for relief based on alleged violations of the DCA were asserted against Carolina Lease Management Group, LLC, only; and

WHEREAS the defendants in the *Bland* Action filed a Motion to Dismiss all of the *Bland* Plaintiffs' claims based on the statute of limitations. ECF No. 19. On October 28, 2022, the Honorable Terrence W. Boyle granted Defendants' Motion to Dismiss for Failure to State a Claim and dismissed all of the *Bland* Plaintiffs' claims based on the statute of limitations. ECF No. 39. On March 30, 2023, the Court denied the *Bland* Plaintiffs' Rule 59/60 motions to alter or amend its prior decision dismissing the *Bland* Action. ECF No. 44. The *Bland* Plaintiffs appealed the dismissal to the United States Court of Appeals for the Fourth Circuit; and

WHEREAS, on May 7, 2024, the United States Court of Appeals for the Fourth Circuit in an unpublished *per curiam* opinion reversed the *Bland* district court's order and judgment of dismissal and remanded the *Bland* Action to reinstate all of the *Bland* Plaintiffs' claims with the exception of the claim based on violations of North Carolina's Retail Installment Sales Act as barred by the statute of limitations, which the *Bland* Plaintiffs had not appealed. *Bland v. Carolina Lease Mgt Grp, LLC et al.,* 23-1367 (4th Cir. May 7, 2024); and

WHEREAS, after remand of the *Bland* Action, the *Bland* defendants filed Answers generally denying that the *Bland* Plaintiffs are entitled to any relief on any claim from any defendant either as an individual or on behalf of a class.

4

Defendant Old Hickory Buildings, LLC, filed another Motion to Dismiss for failure to state a claim which was denied by Order on December 10, 2024. ECF No. 74; and

WHEREAS, in both Lawsuits, the Parties engaged in lengthy and extensive discovery including the exchange of written interrogatories, requests for document production, requests for admission and, in the *Bland* Action, depositions of the *Bland* Plaintiffs and corporate designees of the defendants along with individuals employed and/or associated with the defendants. Additionally, discovery disputes arose prompting Plaintiffs to file motions to compel discovery in both Lawsuits and, in the *Bland* Action, attend hearings on such motion.

WHEREAS, in the *Bland* Action, the defendants submitted a Motion for Judgment on the Pleadings contending that the *Bland* Plaintiffs' claims did not state a claim for relief, which motion was pending at the time the parties reached an agreement. ECF No. 83.

WHEREAS, in the *Greene* Action, various motions remained pending without written order at the time the parties reached an agreement, including Mr. Greene's motion for class certification; Mr. Greene's motion for partial summary judgment; Mr. Greene's motion to compel discovery; and Carolina Lease Management Group, LLC's motion for summary judgment.

WHEREAS, during the exchange of discovery and depositions, the Parties were able to effectively evaluate their respective chances of prevailing in the Lawsuits while also considering the uncertainties of litigation and that the issues in the Lawsuits have been subject to little consideration by either the North Carolina

state courts or federal courts. Counsel for Plaintiffs have thoroughly analyzed the applicable law and all of the facts of this case and have concluded that the proposed settlement herein is fair and reasonable and in the best interest of the proposed Classes (as defined below) because it provides substantial and immediate relief while also avoiding the considerable risks and delays of further litigation.

WHEREAS, while Settling Defendants maintain that the complained of conduct did not violate North Carolina's Retail Installment Sales Act, North Carolina's Unfair Trade Practices Act, or North Carolina's Debt Collection Act, Settling Defendants believe the proposed settlement herein is desirable in order to avoid the significant burden, expense, and inconvenience of protracted litigation including the distraction and diversion of their personnel and resources and taking into account the uncertainties of litigation. This Agreement, and all related documents, shall not be construed as or deemed to be evidence of or an admission or concession on the part of any Settling Defendant herein, or any of the proposed Class Members, with respect to any claim of any fault or liability or wrongdoing or damage whatsoever. Settling Defendants deny any wrongdoing and enter into this Agreement to fully resolve this matter.

WHEREAS, the Parties submit and agree that the Released Claims are resolved in good faith following arms' length bargaining and negotiation including a mediation session with an independent mediator approved by the *Bland* Court on February 12, 2025; that the settlement reflected herein confers substantial benefits

6

upon the Parties and Class Members; and that, based upon the Parties' evaluation, achieves a result that is fair, reasonable, and adequate;

The Parties intend this Agreement to bind Carolina Lease Management, LLC, CTH Rentals, LLC, Greene, Bland, Jackson, Inniss (as Class Representatives and as individuals) and all Class Members in both the *Bland* Litigation and the *Greene* Litigation who do not request exclusion from the Classes.

## ARTICLE II
## TERMS AND DEFINITIONS

As used in this Agreement and its incorporated exhibits, the following terms have the meanings specified herein:

1.  "Agreement" means this Settlement Agreement and Release entered into between Carolina Lease Management Group, LLC, and CTH Rentals, LLC, (collectively and as individual entities) on the one hand, and the Class Representatives, individually and on behalf of the Verified Settlement Class Members, on the other hand, in the Lawsuits, including all terms and conditions set forth herein.

2.  "*Bland* Action" means the lawsuit captioned as *Hank Bland, Kendell Jackson and Luetta Inniss, on behalf of themselves and all others similarly situated, v. Carolina Lease Management Group, LLC, CTH Rentals, LLC, and Old Hickory Buildings, LLC,* Case No. 4:22-CV-33-BO (E.D.N.C.);

3.  "*Bland* Class Definition" means:

    All persons residing in North Carolina who entered into a "Rental Purchase and Disclosure Statement" with Carolina Lease Management Group, LLC, for personal property in a form

7

substantially similar to the form contracts that Carolina Lease Management Group, LLC entered into with Hank Bland, Kendell Jackson, and Luetta Inniss (exemplar attached as Exhibit A), and from whom Carolina Lease Management Group, LLC sought to collect payments on such an Agreement on or after March 10, 2018.

Any Judge or Magistrate presiding over this action and members of their families are excluded from this definition.

4. "*Bland* Court" means the United States District Court for the Eastern District of North Carolina.

5. "*Bland* Plaintiffs" means Luetta Innis, Kendall Jackson, and Hank Bland.

6. "Classes" or "Class Members" refers to all individuals who meet the Class Definitions.

7. "Class Counsel" refers to Adrian M. Lapas of Lapas Law Offices, PLLC, Charles M. Delbaum of National Consumer Law Center, Inc., and Jennifer S. Wagner of National Consumer Law Center, Inc.

8. "Class Definitions" refers collectively to the *Bland* Class Definition and the *Greene* Class Definition.

9. "Class List" is the list compiled by CLMG of all persons who are within the Class Definitions based upon a review of its business records, as further described in Article III.

10. "Class Notice" refers collectively to the Notice of Proposed Class Action Settlement for the *Bland* Action in the form of Exhibit B, attached hereto; and the Notice of Proposed Class Action Settlement for the *Greene* Action in the form of Exhibit C, attached hereto.

11.    "Class Representatives" refers collectively to Charles Greene, for the *Greene* Action, and Hank Bland, Kendell Jackson, and Luetta Inniss, for the *Bland* Action.

12.    "CLMG" refers to Carolina Lease Management Group, LLC.

13.    "Courts" refers collectively to the *Greene* Court and the *Bland* Court. "Court" may refer to either the *Greene* Court or the *Bland* Court.

14.    "CTH" refers to CTH Rentals, LLC.

15.    "DCA" refers to North Carolina's Debt Collection Act, Chapter 75, Article Two of the North Carolina General Statutes.

16.    "Effective Date" of this Agreement is defined in Article VIII.A, below.

17.    "Fairness Hearing" means the hearing scheduled, respectively, by the *Greene* Court and *Bland* Court to consider final approval of the settlement, including awards to the Class Representatives and Class Counsel.

18.    "Final Approval Order" means the final order entered by each Court.

19.    "*Greene* Action" refers to *Carolina Lease Management Group, LLC v. Charles Greene v. Carolina Lease Management Group, LLC*, No. 21 CvS 134-510, pending in the Superior Court for Jones County, North Carolina.

20.    "*Greene* Class Definition" means as follows:

All persons residing in North Carolina who entered into a "Rental Purchase and Disclosure Statement" with Carolina Lease Management Group, LLC, for personal property in a form substantially similar to the form contracts that Carolina Lease Management Group, LLC entered into with Charles Greene (exemplar attached as Exhibit D), and from whom Carolina Lease Management Group, LLC sought to collect payments on such an Agreement on or after April 8, 2017, and prior to March 10, 2018.

9

Any Judge or Magistrate presiding over this action and members of their families are excluded from this definition.

21.  "*Greene* Court" refers to the Superior Court for Jones County, North Carolina.

22.  "Lawsuits" refers collectively to the *Greene* Action and the *Bland* Action, and "each Lawsuit" refers disjunctively to the *Greene* Action and the *Bland* Action.

23.  "Parties" refers collectively to Mr. Greene, Mr. Bland, Mr. Jackson, and Ms. Innis, on behalf of themselves and the Settlement Class Members, Carolina Lease Management Group, LLC, and CTH Rentals, LLC. "Party" may refer to any one such individual or entity.

24.  "Plaintiffs" refers collectively to Mr. Greene, Mr. Bland, Mr. Jackson, and Ms. Innis, on behalf of themselves and the Settlement Class Members. "Plaintiff" may refer to any one such individual.

25.  "Preliminary Approval Order," for each Lawsuit, means the order granting preliminary approval of the settlement.

26.  "Released Claims" means the claims advanced in the Lawsuits as specifically defined in Article XI below.

27.  "Relevant Class Period" means: for the *Greene* Litigation, the period of time starting on April 8, 2017, and ending on March 9, 2018; and for the *Bland* Litigation the period of time starting on March 10, 2018, through the present.

28. "RISA" refers to North Carolina's Retail Installment Sales Act, Chapter 25A of the North Carolina General Statutes.

29. "Settlement Administrator" refers to the firm retained by Class Counsel and responsible for the administration of this class action settlement as more fully described herein.

30. "Settling Defendants" refers collectively to Carolina Lease Management Group, LLC, and CTH Rentals, LLC. "Settling Defendant" may refer to either of the Settling Defendants.

31. "Settlement Fund" is the total financial amount of the settlement, comprising eight million dollars ($8,000,000.00), to be paid by Settling Defendants, and to be divided between the Classes and distributed as set forth in Article IV.

32. "Settlement Payment" is the amount distributed to each Verified Settlement Class Member as described in Article IV.

33. "UTPA" refers to North Carolina's Unfair Trade Practices Act, Chapter 75, Article 1 of the North Carolina General Statutes.

34. "Verified Settlement Class" or "Verified Settlement Class Members" shall mean all persons falling within one or both of the Class Definitions set forth above who (a) have *not* timely and validly excluded themselves (i.e., opted out) from the Settlement *and* (b) who have been determined to have a valid mailing address after the procedures set forth in Article V are followed *or* who have confirmed an alternative method of contact (telephone or email) and identified a means for provision of electronic delivery of the Settlement Payment as set forth in Article V.

11

# ARTICLE III
## SETTLEMENT CLASS

A.     For the purposes of settlement and the proceedings contemplated herein, the Parties stipulate and agree that two Classes as defined above shall be conditionally certified.

B.     CLMG will provide two Excel spreadsheets (one for the *Greene* Action and one for the *Bland* Action) that include the following data in separate columns: (a) columns with names for each obligor; (b) email address(es); (c) mailing address(es); (d) phone number(s); (e) other contact info; (f) the total amount paid during the Relevant Class Period. These spreadsheets comprise the "Class List."

# ARTICLE IV
## MONETARY RELIEF AND OTHER RELIEF

A.     Within seven (7) seven calendar days of entry of the Preliminary Approval Order, Settling Defendants shall deliver to the Settlement Administrator the combined sum of EIGHT MILLION DOLLARS and NO/CENTS ($8,000,000.00)("Settlement Fund"), in two separate checks reflecting the amounts for the *Greene* Action and the *Bland* Action, respectively, so that each Litigation receives its proportionate share, based on the ratio of the total amounts paid by Class Members in each Lawsuit during the respective Relevant Periods, as approved by the Courts. The Settlement Administrator shall disburse funds only pursuant to orders of each Court for each Litigation and shall not disburse funds earlier than the Effective Date. The Settlement Fund shall be used to pay (i) Class Members' benefits (the "Settlement Payment"); (ii) service awards to the Class

12

Representatives in amounts approved by the appropriate Court; (iii) attorneys' fees and costs as approved by the appropriate Court; and (iv) costs of providing Class Notice and administration of the settlement, as approved by the appropriate Court.

B.     The Settlement Administrator will make one Settlement Payment to each Verified Settlement Class Member in each class in direct proportion to the amount that the particular Verified Settlement Class Member paid to CLMG during the Relevant Class Period pursuant to a Rental Purchase Agreement and Disclosure Statement in the form addressed in the Litigation. Each Verified Settlement Class Member will receive the same percentage of the total amount they paid during the Relevant Period as every other Verified Settlement Class Member of that Class.  As to each Class, the percentage will be equal to the total amount available for distribution to Class Members in that Class divided by the total amount of payments made by that Class's Verified Class Members during the Class Period. In the event that there is more than one obligor on an account, the Settlement Payment will be made to both obligors jointly. In the event that any obligor on an account with multiple obligors is deceased, the Settlement Payment will be made to the surviving obligor(s). Settlement Payments will be made by check to each Verified Settlement Class Member at their mailing address, unless the Verified Settlement Class Member properly submits a request for electronic delivery of the payment.

C.     Any funds remaining in the Settlement Administrator's account as a result of a Verified Class Member's failure to cash or negotiate the Settlement Payment shall be disbursed as provided in Article VIII, below.

D.     As additional relief, CLMG will forever cease any and all collection efforts on any accounts in North Carolina memorialized by a "Rental Purchase Agreement and Disclosure Statement" for personal property substantially similar to Plaintiffs' agreements (exemplar attached as Exhibit A). Collection efforts as conceived of herein include, without limitation, telephone calls, text messages, letters, or other attempts to collect a purported amount owed, whether preceding or post-dating any money judgments; repossessions; filings of proofs of claims in bankruptcy courts; or any other attempts to collect amounts owed or obtain possession of property. All collection efforts shall cease immediately upon the execution of this Settlement Agreement. Pending cases shall be dismissed with prejudice and judgments obtained shall be cancelled or marked "Satisfied" in the court in which they were obtained within sixty (60) days of the Effective Date.

E.     Subject to the approval of the relevant Court, Plaintiffs Hank Bland, Kendell Jackson, Luetta Inniss, and Charles Greene will each receive the sum of $10,000.00 in recognition of their time and efforts on behalf of their respective Class. Such sum will be paid from the Settlement Fund. Any service award to a Class Representative shall be in addition to the payment to which he or she is entitled as a Class Member.

F.      If one or either Court declines to award attorney fees and/or costs and/or a service award for the Class Representatives, or awards amounts less than the amounts requested, this Agreement will nevertheless remain in full force and effect.

## ARTICLE V
## NOTICE

A.      For each Class Member, the Settlement Administrator will start with the last known mailing address set forth in the relevant Class List and update each address through the United States Postal Service National Change of Address database. The relevant Class Notice(s) will be mailed by U.S. Mail, first class postage prepaid, to each Class Member at this updated address. If any Class Notice is returned as undeliverable but with a forwarding address, the Settlement Administrator will re-send the Class Notice to the new address. If any Class Notice is returned as undeliverable with no forwarding address, the Settlement Administrator will then perform a skip-trace using a service such as LexisNexis Accurint to determine and obtain a valid mailing address for the Class Member at issue and re-send the Class Notice to the new address.

B.      In addition, the relevant Class Notice(s) will be emailed to each Class Member at the last known email address(es) provided by CLMG for each Class Member.

C.      Additional efforts to provide notice to class members may be proposed to the court by class counsel in the event that, for a particular Class Member, all

15

mailed Class Notice(s) are returned as undeliverable *and* all emailed Class Notice(s) bounce back.

D.      The Class Notice approved by the Court will be mailed and emailed by the Settlement Administrator to the Settlement Classes within fourteen (14) days after the Preliminary Approval Order is entered or the final Class List is provided by CLMG, whichever is later.

E.      The Class Notice shall set forth the requirements for any Class Member to exclude themselves from the applicable Verified Settlement Class (i.e., opt out) or to object to the Settlement.

F.      The Class Notice will set forth a method or methods by which Class Members may identify a means for provision of electronic delivery of the Settlement Payment.

G.      If the Settlement Administrator receives notification that a Class Notice was undeliverable despite the efforts outlined above and/or approved by the Court, *and* the Class Member has not otherwise verified any contact information and electronic payment delivery method, then that Class Member will be excluded from the applicable Verified Settlement Class.

H.      The Settlement Administrator shall publish the Class Notice on a settlement website for each Lawsuit and establish a toll-free interactive voice-response telephone number for each Lawsuit with script recordings of information about this Agreement, utilizing the relevant portions of the language contained in the Class Notice and advising Class Members that they may receive without charge

16

a copy of the operative complaint, answer, Agreement, motion for preliminary approval, motion for attorneys' fees, and/or court orders related to the Agreement. The phone number shall remain open and accessible through the Effective Date. The Settlement Administrator shall make reasonable provision for Class Counsel to be promptly advised of recorded messages left on the phone number by Class Members concerning the Lawsuit and/or this Settlement, so that Class Counsel may timely and accurately respond to such inquiries; *provided however,* the Settlement Administrator shall review the recorded messages before providing them to Class Counsel, and if one or more of the messages requests only a copy of the operative complaint, answer, Agreement, motion for preliminary approval, motion for attorneys' fees, and/or court orders related to the Agreement, then the Administrator shall handle such administrative request(s).

I.     For the *Bland* Action, within ten (10) days of filing of the motion preliminary settlement approval, Settling Defendants shall serve (or shall cause the Settlement Administrator to serve) upon the appropriate state officials of each state in which a *Bland* Plaintiff or an individual meeting the *Bland* Class Definition resides, and shall serve (or shall cause the Settlement Administrator to serve) upon the "Appropriate State Official," as defined in the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715 for each such state, a notice of this proposed Settlement, and other filings required by said statute. Settling Defendants shall provide a copy of this notice to Class Counsel and shall file with the *Bland* Court a notice of

17

compliance with CAFA's requirements. Settling Defendants shall bear the cost of CAFA notice separate and apart from the Settlement Fund.

## ARTICLE VI
## SUBMISSION OF AGREEMENT FOR PRELIMINARY APPROVAL

Upon execution of this Agreement, the Parties shall submit this Agreement and the form of Class Notice referenced in Article V, and attached as Exhibits B and C, to each Court along with joint motions for preliminary approval. Class Counsel will submit a separate memorandum of law in support of preliminary approval and conditional class certification to each Court. The Parties expect that each Court's Preliminary Approval Order shall:

1. Preliminarily approve this Agreement;

2. Find that final approval of the proposed settlement under Rule 23 and certification of the Class for purposes of judgment on the proposed settlement is likely;

3. Approve the form and method of Class Notice as fair, adequate, reasonable and consistent with due process;

4. Approve that Class Notice may be sent via Unites States mail, first-class postage pre-paid to each Class Member once their addresses have been verified as set forth herein; and that the Class Notice may be sent by e-mail to each Class Member.

5. Find that the Class Notice procedure is sufficient to protect the interests of the Parties and to satisfy the requirements of Rule 23 of the applicable Rules of Civil Procedure and due process;

6. Schedule a hearing to review the response of the Class Members to the reasonableness, adequacy, and fairness of this Agreement, and whether this Agreement should be finally approved by the Court (the "Fairness Hearing");

7. Provide that any member of a Verified Settlement Class who objects to the approval of the Agreement may appear at the appropriate Fairness Hearing and show cause why all terms of the proposed settlement called for by this

18

Agreement should not be approved as fair, reasonable and adequate and why a judgment should not be entered thereon; and further providing that any such objection or any petition to intervene in the relevant Lawsuit by a Verified Settlement Class Member must be in writing, and must include (i) a statement of each objection being made; (ii) a detailed description of the facts underlying each objection; (iii) a detailed description of the legal authorities underlying each such objection, if any; (iv) a list of witnesses who may be called to testify at the Fairness Hearing, either live or by deposition or by affidavit, if any; and (v) a list of exhibits, along with copies of the exhibits that the objector may offer during the Fairness Hearing, if any. All of these documents must be filed with the Court no later than twenty-one (21) days before the date scheduled for the Fairness Hearing;

8. Provide that no person shall be entitled in any way to contest the approval of the terms and conditions of this Agreement or the judgment to be entered thereon, except by filing and serving written objection in accordance with the provisions set forth above, and that any members of a Verified Class who fail to opt out or object in the manner prescribed in this Agreement shall be deemed to have waived, and shall be foreclosed forever from raising any objections to this Agreement (whether by appeal or otherwise), or asserting claims arising out of, relating to, or based in whole or in part on the claims advanced in the relevant Lawsuit; and

9. Provide that as specified in the Class Notice, Class Members who timely exclude themselves from the class(es) will be excluded from the relevant class(es). Class Members can opt out of this Agreement by mailing a written request for exclusion or to opt out to the Settlement Administrator. The request for exclusion shall include the Class Member's name and address and shall be postmarked no later than fifteen (15) days before the Fairness Hearing.

## ARTICLE VII
## FAIRNESS HEARING AND FINAL APPROVAL OF
## THE SETTLEMENT AGREEMENT

A. On or before the date set by each Court for its Fairness Hearing, the relevant Parties shall file in such Court a Joint Motion for Final Approval, which will review any petitions to intervene or any objections to the Agreement which have been timely filed. Class Counsel shall also file a memorandum of law in support of final approval in each such Court.

19

B. At the Fairness Hearing in each such Court, the relevant Parties shall jointly request that the Court enter a Final Approval Order which:

1. Approves, without material alteration, the proposed settlement pursuant to the terms of this Agreement;

2. Finds that the terms of this Agreement are fair, reasonable and adequate to the Verified Class in such Court;

3. Provides that each Verified Settlement Class Member in such Court shall be bound by this Agreement, including the Release contained in Article XI herein;

4. Recognizes all timely and complete elections to opt out;

5. Finds that the mailing of the Class Notice satisfies the requirements of Rule 23 of the applicable Rules of Civil Procedure and the requirements of due process;

6. Approves a service award to each of the Class Representatives in that Litigation;

7. Approves an amount of attorney's fees and costs to be paid out of the that Litigation's portion of the Settlement Fund to Class Counsel;

8. Releases and discharges CLMG and CTH from all Released Claims;

9. In the *Bland* Action, dismisses all remaining claims by the Verified Settlement Class in that Litigation on the merits and with prejudice, and enters final judgment thereon, contingent upon a like Order being entered in the *Greene* Action; and in the *Greene* Action, dismisses all remaining claims in the *Greene* Action by the Verified Settlement Class in that Litigation on the merits and with prejudice, and enters final judgment thereon, contingent upon a like Order being entered in the *Bland* Action.

10. Retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of this Agreement as relates to the Litigation before that Court.

## ARTICLE VIII
## EFFECTIVE DATE OF SETTLEMENT AND
## PAYMENT OF SETTLEMENT AMOUNTS

A.    This Settlement shall become final and effective (the "Effective Date") when the last of the following events occur with respect to both Final Approval Orders:

(i)    the expiration of three business days after the time to file a motion to alter or amend the Final Approval Order has passed without any such motion having been filed;

(ii)    the expiration of three business days after the time in which to appeal the Final Approval Order has passed without any appeal having been filed (which date shall be deemed to be 33 days following the entry of the Final Approval Order, unless the date to take such appeal has been extended, or unless the 33rd day falls on a weekend or a court holiday, in which case the date for purposes of this Agreement shall be deemed to be the next business day after such 33rd day); and

(iii)    if any motion to alter or amend is filed, or if an appeal is taken, three business days after a determination of any such motion or appeal that permits the consummation of the settlement in accordance with the terms and conditions contained within this Agreement.

B.    The Settlement Administrator shall have thirty (30) days after the Effective Date within which to remit the Settlement Payments to Verified Settlement Class Members, the incentive awards to the Class Representatives, and attorneys' fees and expenses awarded to Class Counsel.

21

C.     Settlement Payments that are issued in connection with this Agreement which remain unclaimed or uncashed by a Class Member after ninety (90) days of issuance shall become void; each Settlement Payment shall include a statement to inform the payee of this validity period; and CLMG, CTH and/or the Settlement Administrator shall have no further payment obligation to any such Class Members.

D.     If funds remain from such unclaimed or uncashed checks are sufficient to make it economically reasonable, the Settlement Administrator will make a second round of distributions to those Class Members who cashed their initial checks. If the funds are insufficient for this purpose, or if any funds are uncashed after a second distribution, then the Settlement Administrator shall disburse the remaining funds as follows:

(i)     For the *Greene* Action, the funds will be divided and paid equally to the Indigent Person's Attorney Fund and to the North Carolina State Bar for the provision of civil legal services for indigents in accordance with N.C. Gen. Stat. § 1-267.10 (2025).

(ii)     For the *Bland* Action, the funds will be paid to the non-profit organization North Carolina Justice Center, 224 S. Dawson Street, Raleigh, North Carolina 27601, if approved by the Court.

## ARTICLE IX
## ATTORNEY FEES AND COSTS

A.     The amount of attorneys' fees and expenses, as approved by the Court, shall be paid from the Settlement Fund, and will not affect the total amount to be

paid by Settling Defendants. Class Counsel intend to file a motion for an award of attorneys' fees in each Lawsuit, in the total amount of 33% of the Settlement Fund plus expenses incurred over the course of the representation, in accordance with Class Counsel's fee agreement. The Settlement Administrator will pay the amount of the award to Lapas Law Offices, PLLC, for distribution to Class Counsel within thirty (30) days the Effective Date. Class Counsel shall have the responsibility of apportioning the attorneys' fees and costs among themselves.

B.      Any Verified Settlement Class Member may be represented by counsel of their choice at either or both Fairness Hearings, but all fees and expenses of and for such counsel shall be paid by that Verified Settlement Class Member.

## ARTICLE X
## NOTICE AND SETTLEMENT ADMINISTRATION EXPENSE

A.      The costs incurred by the Settlement Administrator in connection with properly performing its obligations and duties hereunder shall be paid out of the Settlement Fund. The obligations and duties for the Settlement Administrator include identifying and updating the addresses of members of the Classes, preparing and sending Class Notice, printing and distributing checks to the members of the Verified Settlement Classes, and paying costs and attorneys' fees to Class Counsel and to a *cy pres* recipient, if any, as ordered by the Courts.

B.      Class Counsel will exercise due diligence in selecting a Settlement Administrator to perform the obligations and duties ascribed in this Agreement with the view to preserving funds for ultimate distribution to the Verified Settlement Class Members. Class Counsel's selection of the Settlement

23

Administrator will involve consideration of a variety of factors including cost, efficiency, effectiveness, past dealings with Class Counsel, and general reputation. Such selection is made in the discretion of Class Counsel.

## ARTICLE XI
## RELEASE OF CLAIMS

A.     If this Settlement Agreement is finally approved by both Courts, then as of the date of the Effective Date, each member of the Verified Settlement Class who has not timely and properly opted out agrees to forever release CLMG and CTH from any and all claims that were raised in the Lawsuit in which the Verified Settlement Class Member is a member. By executing this Agreement, the Class Representatives are executing this release in favor of CLMG and CTH for themselves individually and on behalf of the Verified Settlement Classes subject to Court approval.

B.     The obligations incurred by CLMG and CTH pursuant to this Agreement, and performance of the same, shall constitute a full and final disposition and settlement of all claims, actions, suits, obligations, debts, demands, rights, causes of action, damages, statutory or common law bad faith claims, or liabilities of any nature, arising out of the claims asserted in the Lawsuit, including costs, court costs, expenses, pre-judgment and post-judgment interest, and attorneys' fees.

C.     Nothing in this Agreement shall be construed to limit or restrict CLMG or CTH's right to assert and maintain defenses of *res judicata*, collateral estoppel, payment, compromise and settlement, accord and satisfaction, or any

other legal or equitable defense in response to any North Carolina RISA, UTPA, or DCA claim released as part of this Agreement.

## ARTICLE XII
### CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

A.     This Agreement shall be considered fulfilled on the occurrence of all of the following events:

1.     The Courts have each entered Preliminary Approval Orders;

2.     The Courts have each entered the Final Approval Orders as to the Verified Settlement Class before that Court;

3.     The Final Approval Orders have become final as to the Verified Settlement Classes; and

4.     The Settlement Fund has been paid and all distributions made to Verified Settlement Class members, Class Counsel, and to any *cy pres* recipient of remaining funds.

B.     This Agreement is conditioned upon and the Parties expect that the United States District Court for the Eastern District of North Carolina and the Jones County Superior Court will both approve this Agreement and the procedures for finalizing the settlement. In the event that this Agreement is not approved by either Court, or is approved by the Courts but is reversed on appeal of either Court order, the Parties shall be restored to their respective positions in the Lawsuits as of the February 29, 2025, with two exceptions. First, CLMG and CTH consent that *Bland* Plaintiffs may have twenty-four (24) days from the date of disapproval of this Agreement to file a response to the defendants' motion for judgment on the pleadings in the *Bland* Action [ECF No. 83]. Second, any funds expended on Class

25

Notices and administration in furtherance of the Settlement Administrator's duties hereunder will not be refunded to CLMG and CTH.

In the event that this Agreement is not approved by either Court, or is approved by the Courts but either approval order is reversed on appeal, this Agreement and all negotiations, proceedings, documents prepared and statements made in connection with the Lawsuits shall be without prejudice to any Party; shall not be admissible into evidence; shall not be deemed or construed to be an admission or confession by any party of any fact, matter or proposition of law; shall not be used in any manner for any purpose; and all Parties shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court, and any judgment or order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated *nunc pro tunc.*

**ARTICLE XIII**
**OTHER PROVISIONS**

A. By this Agreement, CLMG and CTH do not waive defenses that persons are not part of the Verified Settlement Class or other defenses made to separate claims regarding the Rental Purchase Agreements that are the subject of the Lawsuit and claims arising thereunder as asserted in the Lawsuits. Likewise, Plaintiffs and the Verified Settlement Class do not waive or release any claims or defenses that are unrelated to the claims asserted in the Lawsuits including warranty and contract claims involving the property, if any.

26

B.     All matters not specifically covered by the provisions of this Agreement shall be resolved by agreement of Class Counsel and counsel for CLMG and CTH or, if counsel for the respective parties cannot agree, by the Court.

C.     All proceedings with respect to the settlement described by this Agreement and the determination of controversies relating thereto, including interpretation of this Agreement, shall be subject to the continuing jurisdiction of the Courts.

D.     This Agreement represents a negotiated agreement between Plaintiffs on behalf of the Verified Settlement Class and CLMG and CTH, and shall not be amended, modified, or supplemented (except as provided herein), nor shall any of its provisions be deemed waived, unless by written agreement signed by the respective attorneys for Plaintiffs and CLMG and CTH, and/or in accordance with the provisions of this Agreement. This document has been jointly drafted and is not to be construed against any Party.

E.     Each and every term of this Agreement shall be binding upon and inure to the benefit of the Class Representatives, the Verified Settlement Class Members, CLMG, and CTH, and any and all of their successors, assigns, and personal representatives, which are all intended to be the beneficiaries of this Agreement.

F.     The service of papers and notices (other than Class Notice) under this Agreement shall be made upon Plaintiffs and the members of the Verified Settlement Class by serving such papers on:

Mr. Adrian M. Lapas
Lapas Law Offices, PLLC
Post Office Box 10688
Goldsboro, NC 27532

and upon CLMG and/or CTH by serving such papers on:

Mr. Jonathan Williams
Cedar Grove Law
Post Office Box 1389
Hillsborough, NC 27278

G.      North Carolina law shall govern this Agreement and any documents

prepared or executed pursuant to this Agreement.

H.      Any and all actions, suits, or proceedings arising out of or relating to

this Agreement shall be brought in and submitted to the exclusive jurisdiction of

the Court that approved the Agreement that is the subject of the action, suit, or

proceeding.

I.      As set forth above, this Agreement is contingent upon approval by both

Courts.

J.      Time is of the essence as to each provision of this Agreement and each

Party agrees to take all actions necessary to timely and appropriately effectuate

this Agreement, including seeking and obtaining all necessary Court approvals and

payment and distribution of all funds.

## ARTICLE XIV
## EXECUTION

This Agreement may be executed in one or more counterparts. All executed

counterparts and each of them shall be deemed to be one and the same Agreement.

This Agreement may be executed by signature delivered by facsimile, PDF, text, or

28

.jpg and need not be the original "ink" signature. A complete set of executed counterparts shall be filed with the Court. This Agreement shall become binding upon its execution by the Class Representatives, Defendants' authorized representative, and counsel.

The undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all the undersigned.

_____          5/21/2025
Hank Bland                                Date
Plaintiff in *Bland* Action


_____          _____
Kendell Jackson                           Date
Plaintiff in *Bland* Action


_____          _____
Luetta Inniss                             Date
Plaintiff in *Bland* Action


_____          _____
Charles Greene                            Date
Plaintiff in *Greene* Action

29

.jpg and need not be the original "ink" signature. A complete set of executed counterparts shall be filed with the Court. This Agreement shall become binding upon its execution by the Class Representatives, Defendants' authorized representative, and counsel.

The undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all the undersigned.

_____     _____
Hank Bland                      Date
Plaintiff in *Bland* Action

_____     _____
Kendell Jackson                 21 May 2025
Plaintiff in *Bland* Action     Date

_____     _____
Luetta Inniss                   Date
Plaintiff in *Bland* Action

_____     _____
Charles Greene                  Date
Plaintiff in *Greene* Action

29

.jpg and need not be the original "ink" signature. A complete set of executed counterparts shall be filed with the Court. This Agreement shall become binding upon its execution by the Class Representatives, Defendants' authorized representative, and counsel.

The undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all the undersigned.

---

Hank Bland
Plaintiff in *Bland* Action

---

Date

---

Kendell Jackson
Plaintiff in *Bland* Action

---

Date

*Luetta Inniss*
Plaintiff in *Bland* Action

*21 May 2025*
Date

---

Charles Greene
Plaintiff in *Greene* Action

---

Date

29

.jpg and need not be the original "ink" signature. A complete set of executed counterparts shall be filed with the Court. This Agreement shall become binding upon its execution by the Class Representatives, Defendants' authorized representative, and counsel.

The undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all the undersigned.

_____ .          _____
Hank Bland                                  Date
Plaintiff in *Bland* Action


_____            _____
Kendell Jackson                             Date
Plaintiff in *Bland* Action


_____            _____
Luetta Inniss                               Date
Plaintiff in *Bland* Action

*Charles Greene*                            5-24-2025
_____            _____
Charles Greene                              Date
Plaintiff in *Greene* Action

29

CAROLINA LEASE MANAGEMENT GROUP, LLC


By: _____          _____
       Charles T. Hammond, Jr.                              Date
       Member/Manager/Authorized Representative


CTH RENTALS, LLC


By: _____          _____
       Charles T. Hammond, Jr.                              Date
       Member/Manager/Authorized Representative

*Approving as to Form:*

s/ Adrian M. Lapas                                            05/26/2025
_____          _____
Adrian M. Lapas                                              Date
Class Counsel and Counsel for Plaintiffs


s/ Charles M. Delbaum                                    05/26/2025
_____          _____
Charles M. Delbaum                                        Date
Class Counsel and Counsel for Plaintiffs


s/ Jennifer S. Wagner                                       05/26/2025
_____          _____
Jennifer S. Wagner                                          Date
Class Counsel and Counsel for Plaintiffs


_____          _____
Jonathan Williams                                           Date
Counsel for Defendants

CAROLINA LEASE MANAGEMENT GROUP, LLC

By: _____

Charles T. Hammond, Jr.
Member/Manager/Authorized Representative

5/20/2025
Date

CTH RENTALS, LLC

By: _____

Charles T. Hammond, Jr.
Member/Manager/Authorized Representative

5/20/2025
Date

*Approving as to Form:*

_____

Adrian M. Lapas
Class Counsel and Counsel for Plaintiffs

_____
Date

_____

Charles M. Delbaum
Class Counsel and Counsel for Plaintiffs

_____
Date

_____

Jennifer S. Wagner
Class Counsel and Counsel for Plaintiffs

_____
Date

_____

Jonathan Williams
Counsel for Defendants

5/20/2025
Date

30

Exhibit A

Exemplar for *Bland* RTO Agreement

# Carolina Lease Management Group, LLC

P.O. Box 51334
LaFayette, Louisiana 70505
Telephone: 855-842-9900

## RENTAL PURCHASE AGREEMENT AND DISCLOSURE STATEMENT (48 MONTH)

This agreement (**pending final approval by Carolina Lease Management Group, LLC's Home Office located in Halls, TN, that all prices and payments contained herein are correct**) made and entered into on this ▬▬ day of ▬▬▬▬▬▬▬▬▬▬▬▬(a copy of which has been furnished to Consumer as evidenced by Consumer's electronic signature as it appears below), by and between Carolina Lease Management Group, LLC, (or its successors or assigns) having its principal place of business at 2726 Viar Rd, Halls, TN 38040 in Lauderdale County, Tennessee, hereinafter referred to as "Lessor" and

(Name)▬▬▬▬▬▬▬ and (Name)▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
whose address is (Street/Route) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
(City)▬▬▬▬ (County)▬▬▬▬▬ (State) NC
(Zip Code)▬▬▬▬▬▬ hereinafter referred to as "Consumer."

## Witnesseth:

1.    For and in consideration of mutual covenants and agreements hereinafter set forth, Lessor hereby leases to Consumer and Consumer hereby leases from Lessor that certain portable warehouse and equipment described in paragraph 2(a) set out below.

2.    The following information is hereby disclosed to the Consumer pursuant to state law and are terms and conditions of this agreement.

(a)    The property to be leased, the subject of this agreement, is described as follows:
☒ New ☐ Used

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

(b)    The total pre-tax cost of the leased property is $▬▬▬▬▬ + Sales Tax.

(c)    The property is owned by Carolina Lease Management Group, LLC.

(d)    The term of this agreement is for one month.

(e)    Consumer may renew this agreement for consecutive terms of one month by making rental payments in advance for each additional month Consumer wishes to rent the property.

(f)    The rental payment is $▬▬▬▬ + Sales Tax (sales tax subject to change)= $▬▬▬▬▬ per month and is due on the **15**th day of each succeeding month. If Consumer makes 48 monthly payments for a total of cost of $▬▬▬▬▬▬ and otherwise complies with this agreement, Consumer will acquire ownership of the rented property.  _**At any time after Consumer has made the first rental payment Consumer may purchase the rented property for the total pre-tax cost of $▬▬▬▬▬ + Sales Tax less 50% of all the rental payments Consumer has made (exclusive of taxes, reinstatements and other charges.)**_

(g)     Consumer will not own the property until the Consumer has made the number of payments and the total of payments necessary to acquire ownership.

(h)     The total of payments does not include other charges such as late payment, default, pick-up or reinstatement fees, and Consumer should read this contract for an explanation of these charges.

(i)     Consumer is responsible for the fair market value of the property if it is lost or stolen or damaged or destroyed.

(j)     Consumer is responsible for maintaining the property while it is leased.

(k)     Consumer shall not permit the leased property to be altered for the construction of shelves, addition of equipment and accessories or the placing of signs thereon and shall not permit the leased property to be tied to or otherwise affixed to any real estate in such a manner that the same cannot be removed without damage to the leased property.

(l)     Consumer agrees not to, in any way, restrict the Lessor, its agents and/or independent contractors from access to the leased property. Consumer specifically grants to Lessor, its agents and/or independent contractors specific right of entry onto the Consumer's property during the initial delivery of said rental property and during the repossession of such leased property, whether such repossession is at the request of Consumer or caused by Consumer's default.

3.     At the time of the execution of this agreement, the Consumer shall pay to the Lessor a security deposit in the amount of $██████ to be held by Lessor as security for the performance of all terms of this agreement including, but not limited to past due rental payments or any redelivery charge. **Such deposit (or such part thereof as has not been applied to remedy defaults of the Consumer) shall be refunded, without interest, only on the expiration of the term of this lease, if Consumer has not been late on rental payments for more than 3 times, and if all obligations of the Consumer have been performed or discharged and Consumer exercises option to purchase. _Lessor may from time to time use the proceeds of the deposits to apply towards any breach by Consumer of the terms of this lease, and in the event of such application upon demand to the Lessor, the Consumer shall restore the deposit to its original amount._**

4.     Consumer may terminate this agreement without penalty by voluntarily surrendering the rented property upon expiration of any lease term. In that event, Consumer agrees to return the rented property to Lessor in the same condition it was on this date, normal wear and tear excepted, and all payments shall be deemed fair rental value.

5.     In the event of termination by Consumer, Consumer will still owe Lessor any past-due rental payments. If Consumer fails to make a timely rental payment, which otherwise would effectuate a termination of this agreement, Consumer shall have the right to reinstate the agreement without losing any rights or options by payment of all past-due rental charges, the reasonable cost of pick-up, redelivery, and refurbishing, and any applicable late fees within five (5) days of the renewal date.

6.     If Consumer, at the request of Lessor or its agent, has returned or voluntarily surrendered the rented property to Lessor, the reinstatement period shall be a term for thirty (30) days after the date of the return of the property. In the event that Consumer has paid not less than 80% of

the amount called for under the contract to obtain ownership, the reinstatement period shall be extended to a total of sixty (60) days after the date of the return of the property.

7.    The rented property shall be kept at the address shown above. It may not be moved from that address without the written consent of Lessor which consent shall not be unreasonably withheld.

8.    Consumer may not assign any of Consumer's rights under this contract to any third party without the written consent of Lessor which consent shall not be unreasonably withheld.

9.    Lessor shall have the right to examine and inspect the rented property at all reasonable times.

10.    **Notwithstanding anything contained in this agreement to the contrary, the Lessor shall not be liable to the Consumer or to any other person, firm or corporation by reason of loss, damage or destruction not due to negligence of the Lessor, its agent, servants or employees.  In the event, and whether or not such loss, damage or destruction for the property kept in the leased premises is due the negligence of the Lessor, its agents, servants or employees, or otherwise the liability of the Lessor shall not exceed the value of the portable warehouse in question.  In this regard, the Consumer warrants and guarantees to the Lessor that no property in excess of the said limit of liability shall be placed in or stored in the leased property other than at the sole peril of the Consumer.  The Consumer assumes full responsibility for all contents in the portable warehouse, and agrees to not hold the Lessor, its employees or its agents liable in any way for damages, destruction or loss of any kind to any property stored inside the portable warehouse which is incurred during the act and/or process of repossessing the portable warehouse.**

11.    Notice is hereby given to any holder of this instrument or any interest therein that to the extent this instrument may be deemed to be a consumer credit contract, the rights of such holder, if any, are subject to all claims and defenses which the debtor could assert against the seller of goods and services obtained pursuant there to, but with recovery by the debtor being limited to the amount paid by the debtor hereunder.

12.    Consumer agrees to promptly remove all of Consumer's personal belongings and property at the termination of this agreement, whether such termination is caused by Consumer's default, or by lapse of time, and Lessor may elect that any personal property not removed at such termination by Consumer is deemed abandoned by Consumer and same shall become the property of the Lessor without any payment or offset thereto. If Lessor shall not so elect, the Lessor may remove such property from the leased portable warehouse and store same at Consumer's risk and expense.

13.    In the event the Lessor shall incur costs and expenses in enforcing the terms of the agreement because of the breach thereof by the Consumer or by the agents, servants or employees of the Consumer, the Lessor shall recover from and the Consumer shall pay to Lessor, all of the Lessor's cost and expenses by reason thereof, including but not limited to Lessor's reasonable attorney's fees. In the event Consumer defaults in complying with the terms of this lease and Lessor proceeds to repossess the portable warehouse, and Consumer pays the amount in arrears after Lessor has made the trip to repossess same, then Consumer shall pay Lessor in addition to payments in arrears all expenses pertaining to said trip.

14.     The parties agree that the Consumer has examined the leased property, knows the condition thereof, and has agreed to lease the same in "as is" condition and that the Lessor has made no representations, warranties, or promises of any kind or nature, either expressed or implied, as to the condition, quality, suitability, or fitness or purpose of the leased property.

15.     Consumer agrees that the laws of the State of Tennessee, the home state of the Lessor, shall govern this contract in all respects, and the Consumer further agrees to submit to the jurisdiction of the Courts of Tennessee, including but not necessarily limited to the Courts of Lauderdale County, Tennessee, the site of the home office of the Lessor.

16.     This agreement sets forth the parties' entire agreement and may not be changed except in paper writing signed by both parties.

17.     By executing this agreement, Consumer agrees that:

(a)     Consumer has read and understands this agreement.

(b)     Consumer has been given a signed and legible copy with all blanks filled in.

(c)     Consumer has received the rented property in good condition.

(d)     Consumer hereby acknowledges the Lessor maintains the right to assign this contract to a third party and further agrees to remit rental payments to such party if so assigned.

18.     In the event of default, Consumer will be liable for a $15.00 per month late charge plus any applicable sales tax, and all costs of collection agency fees, reasonable attorney fees and court costs.


IN WITNESS WHEREOF, the parties have agreed to conduct this transaction by electronic means and have hereunto affixed their electronic signatures as of the date set forth.

LESSOR:

BY: _____ *Michelle Anderson*

(Pending Final Approval by Home Office)

CC

X _____

SSN ███████

Driver's License # ███████

Home Phone ███████

Cell Phone ███████

Employer ███████

Work Phone ███████

Own or Rent Home ███████

Name of Landlord ███████

Phone # of Landlord ███████

CO-CONSUMER

X _____

SSN _____

Driver's License # _____

Home Phone _____

Cell Phone _____

Employer _____

Work Phone _____

Own or Rent Home _____

Name of Landlord _____

Phone # of Landlord _____

Exhibit B

*Bland* Proposed Class Notice

**United States District Court for the Eastern District of North Carolina**

*Hank Bland, Kendall Jackson, and Luetta Innis, on behalf of themselves and all others similarly situated v. Carolina Lease Management Group, LLC, and CTH Rentals, LLC*

**Case No. 4:22-cv-33-BO**

# Class Action Notice

## Authorized by the U.S. District Court for the Eastern District of North Carolina

**Did you enter a rent-to-own agreement for a storage building with Carolina Lease Management Group & they tried to collect from you on or after March 10, 2018?**

➤

**There is a [dollar amount] settlement of a lawsuit.**

**You may be entitled to money.**

➤

**If you want to be part of the class action, you do not need to do anything.**

**If not, you need to opt out by [date].**

Important things to know:

- If you take no action, you will be bound by the settlement, and your rights will be affected.

- You can learn more and find Court documents at: [website].

# Table of Contents

**Table of Contents**................................................................2

**About This Notice** ...........................................................3

    Why did I get this notice? ..........................................3

    What do I do next? .....................................................3

    What are the most important dates?..........................3

**Learning About the Lawsuit** .......................................4

    What is this lawsuit about? ........................................4

    Why is there a settlement in this lawsuit?.................4

    What happens next in this lawsuit? ..........................4

**Learning About the Settlement**....................................5

    What does the settlement provide?............................5

    How much will my payment be? ...............................56

**Deciding What to Do**....................................................6

    How do I weigh my options?......................................6

    What is the best path for me? ...................................7

    How do I get a payment if I am a class member?.....8

    Do I have a lawyer in this lawsuit? ...........................8

    Do I have to pay the lawyers in this lawsuit? ...........8

**Opting Out**....................................................................9

    What if I don't want to be part of this settlement?.....9

    How do I opt out? .......................................................9

**Objecting** ......................................................................9

    What if I disagree with the settlement?......................9

**Key Resources** ...........................................................10

    How do I get more information?................................10

# About This Notice

## Why did I get this notice?

A case was filed, *Bland, et al. v. Carolina Lease Management Group, et al.,* that was brought on behalf of people who entered rent-to-own contracts with Carolina Lease Management Group (CLMG) and from whom CLMG tried to collect money. **You received this notice because you may be a member of the group of people affected, called the "class."** This notice gives you a summary of the terms of the proposed agreement, explains what rights class members have, and helps class members make decisions about what action to take.

## What do I do next?

Read this notice to understand the settlement and to determine if you are a class member. Then, decide which of these actions you want to take:

| Options | What each option means: |
|---|---|
| **Do Nothing (or advise of payment info)** | You will receive a check at the address where you received this notice. You will be bound by the settlement. If you'd like payment in another form, you can submit that information on the website. |
| **Opt Out** | Get no payment. Allows you to bring another lawsuit against Carolina Lease Management Group and/or CTH Rentals about the same issues. |
| **Object** | Tell the Court why you don't like the settlement. |

Read on to understand the specifics of the settlement and what each choice would mean for you.

## What are the most important dates?

Your deadline to object or opt out: **[date]**
Settlement approval hearing: **[date]**

# Learning About the Lawsuit

## What is this lawsuit about?

Hank Bland, Kendall Jackson, and Luetta Inniss filed a lawsuit in 2022 claiming that Carolina Lease Management Group, LLC, and CTH Rentals, LLC, violated North Carolina laws regarding how much they could charge on rent-to-own agreements.

Carolina Lease Management Group and CTH Rentals deny that they did anything wrong.

### Where can I learn more?
You can get a complete copy of the proposed settlement and other key documents in this lawsuit at:
[website]

## Why is there a settlement in this lawsuit?

In April 2025, the parties agreed to settle, which means they have reached an agreement to resolve the lawsuit. Both sides want to avoid the cost and risk of continuing the case in court.

The settlement is for the people who brought the case and all members of the settlement class. The Court has not decided this case in favor of either side.

### What is a class action settlement?
A class action settlement is an agreement between the parties to resolve and end the case. Settlements can provide money to class members and changes to the practices that caused the harm.

## What happens next in this lawsuit?

The Court will hold a Fairness Hearing to decide whether to approve the proposed settlement. The hearing will be held at:

**Where:** United States Courthouse, 306 East Main Street, Elizabeth City, NC 27909.

**When:** [time] on [date].

The Court has directed the parties to send you this notice about the

4

proposed settlement. Because the settlement of a class action decides the rights of all members of the proposed class, the Court must give final approval to the settlement before it can take effect. Payments will only be made if the Court approves the settlement.

You don't have to attend the hearing, but you may at your own expense. You may also ask the Court for permission to speak and express your opinion about the settlement. If the Court does not approve the settlement, it will not take effect and the lawsuit will continue. The date of the hearing may change without further notice to members of the class. To learn more and confirm the hearing date, go to [website].

# Learning About the Settlement

## What does the settlement provide?

Carolina Lease Management Group and CTH Rentals have agreed to pay $[dollar amount] into a settlement fund. This money will be divided among the class members and will also be used to pay for costs and lawyer fees approved by the Court, and for the cost of administering this settlement. Members of the settlement class will "release" their claims as part of the settlement, which means they cannot sue Carolina Lease Management Group or CTH Rentals for the same issues and legal violations raised in this lawsuit. The full terms of the release can be found [here].

The settlement also requires Carolina Lease Management Group to stop all debt collection and lawsuits on class member accounts related to this case and to cancel any judgments on these accounts.

The settlement also provides that the Court will be asked to approve payments of $10,000 to each of the consumers who brought this lawsuit, Hank Bland, Kendall Jackson, and Luetta Inniss, to compensate them for their work on the case. These are called "service payments."

If there is money left over after all payments are made, it will be donated to North Carolina Justice Center, if the Court approves.

## How much will my payment be?

5

Your payment amount will depend on the following factors:

- The amount you paid to CLMG on or after March 10, 2018, on the rent-to-own contract.

- The amounts that other class members paid to CLMG on or after March 10, 2018, on their rent-to-own contracts.

- The amount of the lawyer fees, costs, and service payments approved by the Court.

# Deciding What to Do

## How do I weigh my options?

You have three options. You can do nothing and stay in the settlement, you can opt out of the settlement, or you can object to the settlement. This chart shows how your rights are affected by each option:

| | Do nothing | Opt out | Object |
|---|---|---|---|
| **Can I receive settlement money if I . . .** | YES | NO | YES |
| **Am I bound by the terms of this lawsuit if I . . .** | YES | NO | YES |
| **Can I pursue my own case if I . . .** | NO | YES | NO |
| **Will the class lawyers represent me if I . . .** | YES | NO | NO |

6

## What is the best path for me?



*You can object to the settlement AND receive payment.

## How do I get a payment if I am a class member?

If you wish to receive a check mailed to the address where you received the postcard letting you know about this settlement, you can do nothing. If you wish to receive a payment by some other method, you can make that request on [website] by [date].

## Do I have a lawyer in this lawsuit?

In a class action, the court appoints lawyers to work on the case and represent the interests of all the class members. For this settlement, the Court has appointed the following lawyers.

**Your lawyers:** Adrian Lapas, Lapas Offices, PLLC and Charles Delbaum and Jennifer Wagner, National Consumer Law Center. These are the lawyers who negotiated this settlement on your behalf.

If you want to be represented by your own lawyer, you may hire one at your own expense.

## Do I have to pay the lawyers in this lawsuit?

Lawyers' fees and costs will be paid from the Settlement Fund. **You will not have to pay the lawyers directly.**

To date, your lawyers have not been paid any money for their work or the expenses that they have paid for the case. To pay for some of their time and risk in bringing this case without any guarantee of payment unless they were successful, your lawyers will request, as part of the final approval of this Settlement, that the Court approve a payment of up to $[dollar amount] total in attorneys' fees plus the reimbursement of out-of-pocket expenses.

Lawyers' fees and expenses will only be awarded if approved by the Court as a fair and reasonable amount.  You have the right to object to the lawyers' fees even if you think the settlement terms are fair.

# Opting Out

## What if I don't want to be part of this settlement?

You can opt out. If you do, you will not receive payment and cannot object to the settlement. However, you will not be bound or affected by anything that happens in this lawsuit and may be able to file your own case.

## How do I opt out?

To opt out of the settlement, you must complete the opt-out form available here [link to form] and mail it by [date] to the Settlement Administrator at:

[Settlement Administrator]
[Street address]
[City, State, Zip Code]
[Phone Number]

Be sure to include your name, address, telephone number, and signature.

# Objecting

## What if I disagree with the settlement?

If you disagree with any part of the settlement (including the lawyers' fees) but don't want to opt out, you may object. You must give reasons why you think the Court should not approve the settlement and say whether your objection applies to just you, a part of the class, or the entire class. The Court will consider your views. The Court can only approve or deny the settlement — it cannot change the terms of the settlement. You may, but don't have to, hire your own lawyer to help you.

To object, you must send a letter to the Court that:

9

(1) is postmarked by [date];

(2) includes the case name and number: *Bland v. Carolina Lease Management Group, LLC*, 4:22-cv-33-BO (E.D.N.C.)d

(3) includes your full name, address and telephone number, and email address (if you have one);

(4) states the reasons for your objection;

(5) says whether either you or your lawyer intend to appear at the final approval hearing and your lawyer's name;

(6) is signed by you.

Mail the letter to:

United States District Court
Eastern District of North Carolina
c/o Clerk of Court
Post Office Box 25670
Raleigh, NC  27611

# Key Resources

## How do I get more information?

This notice is a summary of the proposed settlement. The complete settlement with all its terms can be found [here]. To get a copy of the settlement agreement or get answers to your questions:

- contact the Settlement Administrator (information below)

- visit the case website at [website]

| Resource | Contact Information |
|---|---|
| **Case website** | [website] |
| **Settlement Administrator** | [Settlement Administrator]<br>[Street address]<br>[City, State, Zip Code]<br>[Phone Number] |
| **Your Lawyers** | Adrian M. Lapas<br>Lapas Law Offices, PLLC |

10

|  | P.O. Box 10688<br>Goldsboro, NC 27532<br><br>Charles Delbaum<br>Jennifer Wagner<br>National Consumer Law Center<br>7 Winthrop Square<br>Boston, MA 02110 |
|---|---|



United States District Court for the Eastern District of North Carolina
*Bland, et al. v. Carolina Lease Management Group, LLC, et al.*
Case No. 4:22-CV-33-BO



# Class Action Notice
### *Authorized by the U.S. District Court*

**Did you enter a rent-to-own agreement for a storage building & Carolina Lease Management Group tried to collect from you on or after March 10, 2018?**



**There is a $[amount] settlement of a lawsuit.**

**You may be entitled to money.**



**To be part of this settlement, you do not need to do anything.**

**You can visit [website] to learn more.**

**Key things to know:**

- This is an important legal document.
- If you take no action, any ruling from the court will apply to you, and you will not be able to sue Carolina Lease Management Group, LLC, or CTH Rentals, LLC, about the same issues.
- If you have questions or need assistance, please call [phone number]
- You can learn more at [website] or by scanning the QR code.

# Court-Approved Legal Notice



This is an important notice about a class action lawsuit.

<<MAIL ID>>

<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

Exhibit C

*Greene* Proposed Class Notice

**State of North Carolina**

**County of Jones**

**In the General Court of Justice**
**Superior Court Division**
**Case No: 21 CvS 134**

*Carolina Lease Management Group, LLC v. Charles Greene*
*Charles Greene, on behalf of himself and all others similarly situated,*
*v. Carolina Lease Management Group, LLC*

# Class Action Notice

## Authorized by the Superior Court for Jones County, North Carolina

Did you enter a rent-to-own agreement for a storage building with Carolina Lease Management Group & they tried to collect from you on or after April 8, 2017, and on or before March 9, 2018?

▶

There is a [dollar amount] settlement of a lawsuit.

You may be entitled to money.

▶

If you want to be part of the class action, you do not need to do anything.

If not, you need to opt out by [date].

Important things to know:

- If you take no action, you will be bound by the settlement, and your rights will be affected.

- You can learn more and find Court documents at: [website].

# Table of Contents

**Table of Contents**..................................................................................................2

**About This Notice** ..............................................................................................3

   Why did I get this notice? ...............................................................................3

   What do I do next?.........................................................................................3

   What are the most important dates?..................................................................3

**Learning About the Lawsuit** ..................................................................................4

   What is this lawsuit about? ..............................................................................4

   Why is there a settlement in this lawsuit?............................................................4

   What happens next in this lawsuit? ...................................................................4

**Learning About the Settlement**...............................................................................5

   What does the settlement provide?....................................................................5

   How much will my payment be? .......................................................................5

**Deciding What to Do**...........................................................................................6

   How do I weigh my options?.............................................................................6

   What is the best path for me? ..........................................................................7

   How do I get a payment if I am a class member?...................................................8

   Do I have a lawyer in this lawsuit? .....................................................................8

   Do I have to pay the lawyers in this lawsuit? ........................................................8

**Opting Out**.......................................................................................................9

   What if I don't want to be part of this settlement?.................................................9

   How do I opt out? .........................................................................................9

**Objecting** ........................................................................................................9

   What if I disagree with the settlement?...............................................................9

**Key Resources** ................................................................................................10

   How do I get more information?.......................................................................10

# About This Notice

## Why did I get this notice?

A class action counterclaim was filed, *Greene v. Carolina Lease Management Group, LLC.,* brought on behalf of people who entered rent-to-own contracts with Carolina Lease Management Group (CLMG) and from whom CLMG tried to collect money. **You received this notice because you may be a member of the group of people affected, called the "class."** This notice gives you a summary of the terms of the proposed agreement, explains what rights class members have, and helps class members make decisions about what action to take.

## What do I do next?

Read this notice to understand the settlement and to determine if you are a class member. Then, decide which of these actions you want to take:

| Options | What each option means: |
|---|---|
| **Do Nothing (or advise of payment info)** | You will receive a check at the address where you received this notice. You will be bound by the settlement. If you'd like payment in another form, you can submit that information on the website. |
| **Opt Out** | Get no payment. Allows you to bring another lawsuit against Carolina Lease Management Group about the same issues. |
| **Object** | Tell the Court why you don't like the settlement. |

Read on to understand the specifics of the settlement and what each choice would mean for you.

## What are the most important dates?

Your deadline to object or opt out: **[date]**
Settlement approval hearing: **[date]**

3

# Learning About the Lawsuit

## What is this lawsuit about?

When Carolina Lease Management Group, LLC sued Charles Greene to recover a shed he was buying under a rent-to-own agreement, he filed a class counterclaim asserting that Carolina Lease Management Group, LLC, violated North Carolina laws regarding how much they could charge on his and similar agreements.

Carolina Lease Management Group denies that it did anything wrong.

### Where can I learn more?
You can get a complete copy of the proposed settlement and other key documents in this lawsuit at:
[website]

## Why is there a settlement in this lawsuit?

In April 2025, the parties agreed to settle, which means they have reached an agreement to resolve the lawsuit. Both sides want to avoid the cost and risk of continuing the case in court.

The settlement is for Mr. Greene and all members of the settlement class. The Court has not decided this case in favor of either side.

### What is a class action settlement?
A class action settlement is an agreement between the parties to resolve and end the case. Settlements can provide money to class members and changes to the practices that caused the harm.

## What happens next in this lawsuit?

The Court will hold a Fairness Hearing to decide whether to approve the proposed settlement. The hearing will be held at:

**Where:** Jones County Courthouse, Superior Court, at 101 Market Street, Trenton, North Carolina, 28585.

**When:** [time] on [date].

The Court has directed the parties to send you this notice about the

4

proposed settlement. Because the settlement of a class action decides the rights of all members of the proposed class, the Court must give final approval to the settlement before it can take effect. Payments will only be made if the Court approves the settlement.

You do not have to attend the hearing, but you may at your own expense. You may also ask the Court for permission to speak and express your opinion about the settlement. If the Court does not approve the settlement, it will not take effect and the lawsuit will continue. The date of the hearing may change without further notice to members of the class. To learn more and confirm the hearing date, go to [website].

# Learning About the Settlement

## What does the settlement provide?

Carolina Lease Management Group has agreed to pay $[dollar amount] into a settlement fund. This money will be divided among the class members and will also be used to pay for costs and lawyer fees approved by the Court, and for the cost of administering this settlement. Members of the settlement class will "release" their claims as part of the settlement, which means they cannot sue Carolina Lease Management Group for the same issues and legal violations raised in this lawsuit. The full terms of the release can be found [here].

The settlement also requires Carolina Lease Management Group to stop all debt collection and lawsuits on class member accounts related to this case and to cancel any judgments on these accounts.

The settlement also provides that the Court will be asked to approve payments of $10,000 to Charles Greene, who brought this lawsuit, to compensate him for his work on the case.  This payment is called a "service payment."

If there is money left over after all payments are made, it will be distributed in accordance with G.S. § 1-267.10.

## How much will my payment be?

5

Your payment amount will depend on the following factors:

- The amount you paid to CLMG between April 8, 2017, and March 9, 2018, on the rent-to-own contract.

- The amounts that other class members paid to CLMG during those same dates, on their rent-to-own contracts.

- The amount of the lawyer fees, costs, and service payments approved by the Court.

# Deciding What to Do

## How do I weigh my options?

You have three options. You can do nothing and stay in the settlement, you can opt out of the settlement, or you can object to the settlement. This chart shows how your rights are affected by each option:

|  | Do nothing | Opt out | Object |
|---|---|---|---|
| **Can I receive settlement money if I . . .** | YES | NO | YES |
| **Am I bound by the terms of this lawsuit if I . . .** | YES | NO | YES |
| **Can I pursue my own case if I . . .** | NO | YES | NO |
| **Will the class lawyers represent me if I . . .** | YES | NO | NO |

6

## What is the best path for me?



*You can object to the settlement AND receive payment.*

## How do I get a payment if I am a class member?

If you wish to receive a check mailed to the address where you received the postcard letting you know about this settlement, you can do nothing. If you wish to receive a payment by some other method, you can make that request on [website] by [date].

## Do I have a lawyer in this lawsuit?

In a class action, the court appoints lawyers to work on the case and represent the interests of all the class members. For this settlement, the Court has appointed the following lawyers.

**Your lawyers:** Adrian Lapas, Lapas Offices, PLLC and Charles Delbaum and Jennifer Wagner, National Consumer Law Center. These are the lawyers who negotiated this settlement on your behalf.

If you want to be represented by your own lawyer, you may hire one at your own expense.

## Do I have to pay the lawyers in this lawsuit?

Lawyers' fees and costs will be paid from the Settlement Fund. **You will not have to pay the lawyers directly.**

To date, your lawyers have not been paid any money for their work or the expenses they have paid for the case. To pay for some of their time and risk in bringing this case without any guarantee of payment unless they were successful, your lawyers will request, as part of the final approval of this Settlement, that the Court approve a payment of up to $[dollar amount] total in attorneys' fees plus the reimbursement of out-of-pocket expenses.

Lawyers' fees and expenses will only be awarded if approved by the Court as a fair and reasonable amount.  You have the right to object to the lawyers' fees even if you think the settlement terms are fair.

# Opting Out

## What if I don't want to be part of this settlement?

You can opt out. If you do, you will not receive payment and cannot object to the settlement. However, you will not be bound or affected by anything that happens in this lawsuit and may be able to file your own case.

## How do I opt out?

To opt out of the settlement, you must complete the opt out form available here [link to form] and mail it by [date] to the Settlement Administrator at:

[Settlement Administrator]
[Street address]
[City, State, Zip Code]
[Phone Number]

Be sure to include your name, address, telephone number, and signature.

# Objecting

## What if I disagree with the settlement?

If you disagree with any part of the settlement (including the lawyers' fees) but don't want to opt out, you may object. You must give reasons why you think the Court should not approve the settlement and say whether your objection applies to just you, a part of the class, or the entire class. The Court will consider your views. The Court can only approve or deny the settlement — it cannot change the terms of the settlement. You may, but don't have to, hire your own lawyer to help you.

To object, you must mail your letter to the Clerk of Court. Your letter

9

must:

(1) be postmarked or filed by [date];
(2) include the case name and number: *Greene v. Carolina Lease Management Group, LLC*, 21 CvS 134;
(3) include your full name, address and telephone number, and email address (if you have one);
(4) state the reasons for your objection;
(5) say whether you or your lawyer intend to appear at the final approval hearing and your lawyer's name;
(6) be signed by you.

Mail the letter to:

Jones County Clerk of Superior Court
Attn: Civil Division
Post Office Box 280
Trenton, NC 28585

# Key Resources

## How do I get more information?

This notice is a summary of the proposed settlement. The complete settlement with all its terms can be found [here]. To get a copy of the settlement agreement or get answers to your questions:

- contact the Settlement Administrator (information below)

- visit the case website at [website]

| Resource | Contact Information |
|---|---|
| **Case website** | [website] |
| **Settlement Administrator** | [Settlement Administrator]<br>[Street address]<br>[City, State, Zip Code]<br>[Phone Number] |
| **Your Lawyers** | Adrian M. Lapas |

|  | Lapas Law Offices, PLLC<br>P.O. Box 10688<br>Goldsboro, NC 27532<br><br>Charles Delbaum<br>Jennifer Wagner<br>National Consumer Law Center<br>7 Winthrop Square<br>Boston, MA 02110 |
|---|---|



Superior Court for Jones County, North Carolina
*Greene v. Carolina Lease Management Group, LLC.*
Case No. 21 CvS 134



# Class Action Notice

### Authorized by the Jones County (NC) Superior Court



Did you enter a rent-to-own agreement for a storage building & Carolina Lease Management Group tried to collect from you on or after April 8, 2017, and before March 10, 2018?

There is a $[amount] settlement of a lawsuit.

You may be entitled to money.



To be part of this settlement, you do not need to do anything.

You can visit [website] to learn more.

**Key things to know:**

- This is an important legal document.
- If you take no action, any ruling from the court will apply to you, and you will not be able to sue Carolina Lease Management Group, LLC about the same issues.
- If you have questions or need assistance, please call [phone number]
- You can learn more at [website] or by scanning the QR code.

# Court-Approved Legal Notice



This is an important notice about a class action lawsuit.

<<MAIL ID>>

<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

Exhibit D

Exemplar for *Greene* RTO Agreement



**3454**

# Carolina Lease Management Group, LLC

H ~~[redacted]~~
Teleph ~~[redacted]~~
Fa: ~~[redacted]~~

## Rental Purchase Agreement and Disclosure Statement (48 month)

This agreement (Pending final approval by Carolina Lease Management Group, LLC's Home Office located in Halls, TN, that all prices & payments contained herein are correct) made and entered into on this ____ day of _____, (a copy of which has been furnished to Consumer as evidenced by Consumer's signature as it appears below), by and between Carolina Lease Management Group, LLC, (or it's successors or assigns) having its principal place of business at 2726 Vior Rd, Halls, TN 38040 in Lauderdale County Tennessee, hereinafter referred to as "Lessor" and

(Name) _____ whose address is (Street/Route) _____
(City) _____ (County) _____ (State) ____
(Zip Code) _____ hereinafter referred to as "Consumer."

## Witnesseth:

1. For and in consideration of mutual covenants and agreements hereinafter set forth, Lessor hereby leases to Consumer and Consumer hereby leases from Lessor that certain portable warehouse and equipment described in paragraph 2 (a) set out below.

2. The following information is hereby disclosed to the Consumer pursuant to State Laws and are terms and conditions of this agreement.

(a) The property to be leased, the subject of this agreement, is described as follows: ☒ New  ☐ Used

(b) The total pre-tax cost of the leased property is $ _____ + Sales Tax

(c) The property is owned by Carolina Lease Management Group, LLC.

(d) The term of this agreement is for one month.

(e) Consumer may renew this agreement for consecutive terms of one month by making rental payments in advance for each additional month consumer wishes to rent the property.

(f) The rental payment is $ _____ + Sales Tax (sales tax subject to change) = _____ per month and is due on the **15 th** day of each succeeding month. If Consumer makes 48 monthly payments for a total cost of $ _____ and otherwise complies with this agreement, Consumer will acquire ownership of the rented property. At any time after Consumer has made the first rental payment Consumer may purchase the rented property for the total pre-tax cost of $ _____ + Sales Tax less 50% of all the rental payments Consumer has made (exclusive of taxes, reinstatement, and other charges.)

(g) Consumer will not own the property until the Consumer has made the number of payments and the total of payments necessary to acquire ownership.

(h) The total payments does not include other charges such as late payment, default, pick-up or reinstatement fees, and Consumer should read this contract for an explanation of these charges.

(I) Consumer is responsible for the fair market value of the property if it is lost, or stolen or damaged or destroyed.

(j) Consumer is responsible for maintaining the property while it is leased.

(k) Consumer shall not permit the leased property to be altered for the construction of shelves, addition of equipment and accessories or the placing of signs thereon and shall not permit the leased property to be tied to or otherwise affixed to any real estate in such a manner that the same cannot be removed without damage to the leased property.

(l) Consumer agrees not to, in any way, restrict the Lessor, its agents and/or independent contractors from access to the leased property. Consumer specifically grants to Lessor, its agents and/or independent contractors specific right of entry onto the Consumer's property, and waives any and all claims of wrongful entry onto the Consumer's property, during the initial delivery of said rental property and during the repossession of such leased property, whether such repossession is at the request of Consumer or caused by Consumer's default.

3. At the time of the execution of this agreement, the Consumer shall pay to the to Lessor a security deposit in the amount of $ _____ to be held by Lessor as security for the performance of all terms of this agreement and including, but not limited to, the payment or a redelivery charge. Consumer: _____

_____

Pink: (Customer Copy)

Revised 11/15/11
Page 1 of 3 Pages
Audit #46150106

Such deposit (or such part thereof as has not been applied to remedy defaults of the Consumer) shall be refunded, without interest, only on the expiration of the term of this lease, if Consumer has not been late on rental payments for more than 3 times, and if all obligations of the Customer have been performed or discharged and Consumer exercises option to purchase. Lessor may from time to time use the proceeds of the deposits to apply towards any breach by Consumer of the terms of this lease, and in the event of such application upon demand to the Lessor, the consumer shall restore the deposit to its original amount.

4.   Consumer may terminate this agreement without penalty by voluntarily surrendering the rented property upon expiration of any lease term. In that event, Consumer agrees to return the rented property to Lessor in the same condition it was on this date, normal wear and tear excepted and all payments shall be deemed fair rental value.

5.   In the event of termination by Consumer, Consumer will still owe Lessor any past-due rental payments. If Consumer fails to make a timely rental payment, which otherwise would effectuate a termination of this agreement, Consumer shall have the right to reinstate the agreement without losing any rights or options by payment of all past-due rental charges, the reasonable cost of pick-up, redelivery, and refurbishing, and any applicable late fee within five (5) days of the renewal date.

6.   If Consumer, at the request of Lessor or its agent, has returned or voluntarily surrendered the rented property to Lessor, in the event Consumer has paid not less than 60% of the amount called for under this contract, to obtain ownership, the reinstatement period shall be a term for thirty (30) days after the date of the return of the property. In the event that Consumer has paid not less than 80% of the amount called for under the contract to obtain ownership, the reinstatement period shall be extended to a total of sixty (60) days after the date of the return of the property.

7.   The rented property shall be kept at the address shown above. It may not be moved from that address without the written consent of Lessor which consent shall not be unreasonably withheld.

8.   Consumer may not assign any of Consumer's rights under this contract to any third party without the written consent of Lessor which consent shall not be unreasonably withheld.

9.   Lessor shall have the right to examine and inspect the rented property at all reasonable times.

10.   Notwithstanding anything contained in this agreement to the contrary, the lessor shall not be liable to the Consumer or to any other person, firm, or corporation by reason of the loss of, damage, or destruction is due to negligence of the Lessor, its agent, servants or employees. In the event, and whether or not such loss damage or destruction for the property kept in the leased premises is due the negligence of the Lessor, its agent, servants or employees, or otherwise the liability of the Lessor shall not exceed the value of the portable warehouse in question. In this regard, the Consumer warrants and guarantees to the Lessor that no property other than at the sole peril of the Consumer. The Consumer assumes full responsibility for all contents in the building, and agrees to not hold the Lessor, its employees, or its agents, liable in any way for damages, destruction or loss of any kind to any property stored inside the building which is incurred during the act and/or process of repossessing the building.

11.   Notice is hereby given to any holder of this instrument or any interest therein that to the extent this instrument may be deemed to be a consumer credit contract, the rights of such holder, if any, are subject to all claims and defenses which the debtor could assert against the seller of goods and services obtained pursuant there to, but with recovery by the debtor being limited to the amount paid by the debtor hereunder.

12.   Consumer agrees to promptly remove all of consumer's personal belongings and property at the termination of this agreement, whether such termination is caused by Consumer's default, or by lapse of time, and Lessor may elect that any personal property not removed at such termination by Consumer is deemed abandoned by Consumer and same shall become the property of the Lessor without any payment or offset thereto; If Lessor shall not so elect, the Lessor may remove such property from the leased premises and store same at Consumer's risk and expense.

13.   In the event the Lessor shall incur costs and expenses in enforcing the terms of the agreement because of the breach thereof by the Consumer or by the agents, servants, or employees of the Consumer, the Lessor shall recover from and the Consumer shall pay to lessor, all of the Lessor's cost and expenses by reason thereof, including but not limited to Lessor's reasonable attorney's fees. In the event Consumer defaults in complying with the terms of this Lease and Lessor proceeds to repossess the building, and Consumer pays the amount in arrears after Lessor has made the trip to repossess same, then Consumer shall pay Lessor in addition to payments in arrears all expenses pertaining to said trip.

14.   The parties agree that the Consumer has examined the leased property, knows the condition thereof, and has agreed to lease the same in "as is" condition and that the Lessor has made no representations, warranties, or promises of any kind or nature, either expressed or implied, as to the condition, quality, suitability, or fitness or purpose of the leased property.

Consumer:



Pink: (Customer Copy)

Page 2 of 3 Pages

Audit #46150107

3454

15. Consumer agrees that the laws of the State of Tennessee, the home state of Lessor, shall govern this contract in all respects, and the Consumer further agrees to submit to the jurisdiction of Courts of Tennessee, including but not necessarily limited to the Courts of Lauderdale County, Tennessee, the site of the home office of the Lessor.

16. This agreement sets forth the parties' entire agreement and may not be changed except in paper writing signed by both parties.

17. By executing this agreement, Consumer agrees that:

(a) Consumer has read and understands this agreement.
(b) Consumer has been given a signed and legible copy with all blanks filled in.
(c) Consumer has received the rented property in good condition.
(d) Consumer hereby acknowledges the Lessor maintains the right to assign this contract to a third party and further agrees to remit rental payments to such party if so assigned.

18. In the event of default, consumer / lessee will be liable for a $15.00 per month late charge plus any applicable sales tax, and all costs of collection including collection agency fees, reasonable attorney fees and court costs.

IN WITNESS WHEREOF, the parties have hereunto affixed their signatures as of the day and date first above written.

LESSOR:

BY: _____
  (For Home Office Use Only)

| CONSUMER: | CO-CONSUMER: |
|---|---|
| X _____ | X _____ |
| SSN _____ | SSN _____ |
| Driver's License # _____ | Driver's License # _____ |
| Home Phone _____ | Home Phone _____ |
| Cell Phone _____ | Cell Phone _____ |
| Employer _____ | Employer _____ |
| Work Phone _____ | Work Phone _____ |
| Own or Rent Home _____ | Own or Rent Home _____ |
| Name / Phone # of Landlord ____ | Name / Phone # of Landlord ____ |

ASSIGNMENT (For Office Use Only)

> Carolina Lease Management Group, LLC has assigned all of it's rights, title and interest in this agreement to Iberia Bank FSB and no other assignment of this agreement will be effective without the express written consent of Iberia Bank FSB.

Seller assigns this contract on _____, _____, to _____ in accordance with the seller's assignment appearing below. Assignment is with recourse and subject to a separate agreement.

By _____ Title _____ (Seller)

Seller sells and assigns to _____ its successors and assigns, all rights, title and interest in this retail installment contract. Seller gives assignee full power, either in its own or in seller's name, to take all legal or other actions which seller could have taken under this contract.

By _____

Pink: (Customer Copy)

Page 3 of 3 Pages
Audit #46150108